1

2

3

4

5

6

7

8

The Honorable Robert S. Lasnik

9
10

# UNITED STATES DISTRICT COURT,
## WESTERN DISTRICT OF WASHINGTON

11

12

13

14

15

16

17

NOAH WICK on behalf of himself and all others similarly situated,

*Plaintiff*,

v.

TWILIO INC.,

Defendant.

Civil Action No. 2:16-cv-00914 RSL

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**NOTE ON MOTION CALENDAR:**
**August 12, 2016**

18

**[ORAL ARGUMENT REQUESTED]**

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION TO DISMISS
Case No.  2:16-cv-00914

BADGLEY MULLINS TURNER, PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

TWILIO'S OFFERINGS ..................................................................................................... 3

SUMMARY OF PLAINTIFF'S ALLEGATIONS ............................................................. 4

ARGUMENT ....................................................................................................................... 6

I.    PLAINTIFF LACKS ARTICLE III STANDING AND HIS CLAIMS SHOULD
      BE DISMISSED UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1)........... 6

      A.    Plaintiff's Complaint Alleges No Cognizable Injury..................................... 6

      B.    Plaintiff Fails To Plead Any Injury Caused By Twilio .................................. 9

      C.    Plaintiff Fails To Show That Any Alleged Injury Can Be Redressed By A
            Favorable Decision ......................................................................................... 9

II.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST TWILIO .................................. 10

      A.    Legal Standard For Dismissal Under Rule 12(b)(6) ..................................... 10

      B.    Plaintiff Does Not Allege That Twilio Initiated Any Text Messages Or Calls ........... 10

            1.    The FCC Has Defined What It Means to Be an "Initiator" and Twilio Does
                  Not Fall within That Definition ..................................................... 11

            2.    Federal Courts Have Upheld the FCC's View That Cloud-Based Platform
                  Providers Are Not "Initiators" Under the TCPA ....................... 12

            3.    Plaintiff Does Not—and Cannot—Plead That Twilio Is an "Initiator."................ 13

      C.    Plaintiff Has Not Plausibly Alleged That Twilio Used An Automatic
            Telephone Dialing System And Therefore Twilio is Immune From Liability
            Under the TCPA .............................................................................. 14

III.  EVEN IF PLAINTIFF COULD SUFFICIENTLY PLEAD FACTS TO SUPPORT
      APPLICATION OF THE TCPA, AS A MATTER OF LAW PLAINTIFF'S
      RELEASE OF HIS TELEPHONE NUMBER ESTABLISHED CONSENT FOR
      THE ONE TEXT MESSAGE HE ALLEGES HE RECEIVED .............................. 15

IV.   PLAINTIFF'S CEMA CLAIM SHOULD BE DISMISSED BECAUSE HE HAS
      NOT ALLEGED THAT THE TEXT MESSAGE HE RECEIVED WAS A
      COMMERCIAL COMMUNICATION ................................................. 17

      A.    Plaintiff Has Not Sufficiently Plead That The Text Message or Call Were
            "Unsolicited Commercial Solicitations" As Is Required By Washington Law........... 17

      B.    Plaintiff's Claims Under CEMA Should Be Dismissed Because There Is No
            Private Right of Action Under the Statute ................................................ 18

V.    PLAINTIFF FAILS TO SUFFICIENTLY PLEAD A CLAIM UNDER THE
      WASHINGTON CPA, AND THEREFORE HIS CPA CLAIM SHOULD BE

# TABLE OF CONTENTS
**(continued)**

Page

DISMISSED ..................................................................................................................20

CONCLUSION..............................................................................................................22

DEFENDANT'S MOTION TO DISMISS
Case No.  2:16-cv-00914

ii

BADGLEY MULLINS TURNER, PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................7, 9

5

6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...........................................................................................................9

7

8

*Behnke v. Ahrens*,
294 P.3d 729 (Wash. Ct. App. 2012) ...............................................................................21

9

10

Blake v. Federal Way Cycle Center,
698 P.2d 578 (Wash. Ct. App. 1985) ...............................................................................21

11

12

*Booth v. Appstack, Inc.*,
No. C13-1533JLR, 2016 WL 3030256 (W.D. Wash. May 25, 2016) ................................8

13

14

*Chesbro v. Best Buy Stores, L.P.*,
705 F.3d 913 (9th Cir. 2012) ...........................................................................................17

15

16

*Clark v. Avatar Techs. PHL, Inc.*,
CIV No. H-13-2777, 2014 WL 309079 (S.D. Tex. Jan. 28, 2014) ..................................11

17

18

*Couser v. Pre-paid Legal Services, Inc.*,
994 F. Supp. 2d 1100 (S.D. Cal. 2014) ...........................................................................10

19

20

*Faulkner v. ADT Sec. Servs., Inc.*,
706 F.3d 1017 (9th Cir. 2013) ...........................................................................................8

21

22

*Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles*,
148 Wash. 2d 224 (2002) .................................................................................................19

23

24

*Gragg v. Orange Cab Co.*,
145 F. Supp. 3d 1046, 2015 WL 6870609 (W.D. Wash. 2015) ..........................17, 18, 19, 20

25

26

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
719 P.2d 531 (Wash. 1986) (en banc) .............................................................................20

27

28

*Hickey v. Voxernet LLC*,
887 F. Supp. 2d 1125 (W.D. Wash. 2012) ................................................................17, 18

1

## TABLE OF AUTHORITIES
### (continued)

2

Page(s)

3

4

*Hollingsworth v. Perry*,
    133 S. Ct. 2652 (2013)...................................................................................................6

5

6

*Ikuseghan v. MultiCare Health Sys.*,
    No. C14-5539 BHS, 2015 WL 4600818 (W.D. Wash. July 29, 2015).....................................7

7

8

*Kauffman v. Callfire, Inc.*,
    141 F. Supp. 3d 1044, 1048 (S.D. Cal. Oct. 7, 2015)..................................................10, 12, 13

9

10

*LaCourt v. Specific Media, Inc.*,
    No. SACV 10-1256...........................................................................................................7

11

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)........................................................................................................6

12

13

*Luna v. Schac, LLC*,
    CIV NO. 14-cv-607-HRL, 2015 WL 4941781 (N.D. Cal. Aug. 19, 2015).......................14, 15

14

15

*McKenna v. WhisperText*,
    No. 14-cv-424, 2015 WL 5264750 (N.D. Cal. Sept. 9, 2015)...........................................11, 12

16

17

*McLenan-Kenny v. Wa Dept. of Labor & Indus.*,
    No. C13-6026 RBL, 2014 WL 1648501 (W.D. Wa. Apr. 24, 2014)........................................8

18

19

*Meier v. U.S.*,
    310 Fed. App'x 976 (9th Cir. 2009) ...................................................................................8

20

21

*Mendez v. C-Two Group, Inc.*,
    CIV No. C-13-5914-EMC, Order Granting Defendant MobileStorm's, Inc. ..........................10

22

*Novak v. United States*,
    795 F.3d 1012 (2015).......................................................................................................9

23

24

*Payton v. Kale Realty, LLC*,
    2016 WL 703869 (N.D. Ill. Feb. 22, 2016) ......................................................................12

25

26

*Pinkard v. Wal-Mart Stores, Inc.*,
    No. 3:12-cv-02902-CLS, 2012 WL 5511039 (N.D. Ala. Nov. 9, 2012) .................................16

27

28

*Rinky Dink, Inc. v. Elec. Merch. Sys.*,
    Civ. No. 13-1347-JCC, 2015 WL 778065 (W.D. Wash. Feb. 24, 2015)...........................10, 13

DEFENDANT'S MOTION TO DISMISS
Case No.  2:16-cv-00914

iv

BADGLEY MULLINS TURNER, PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566

# TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

*Roberts v. PayPal, Inc.*,
  621 Fed. App'x 478 (9th Cir. 2015) ....................................................15

*Satterfield v. Simon and Schuster, Inc.*,
  569 F.3d 946 (9th Cir. 2009) ............................................................10

*Saunders v. NCO Fin. Sys.*,
  910 F. Supp. 2d 464 (E.D.N.Y. 2012) ...............................................16

*Sherman v. Yahoo! Inc.*,
  997 F. Supp. 2d 1129 (S.D. Cal. 2014) .............................................15

*Smith v. Securus Techs., Inc.*,
  2015 WL 4636696 (D. Minn. Aug. 4, 2015) ...........................10, 11, 12

*Sorrel v. Eagle Healthcare, Inc.*,
  38 P.3d 1024 (Wash. Ct. App. 2002) .................................................20

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016), *as revised* (May 24, 2016) ..........................6, 8

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ..........................................................10

*State ex rel. Evergreen Freedom Found. v. Wash. Educ. Ass'n*,
  140 Wash. 2d 615 (2000) ................................................................19

*State v. LG Elecs., Inc.*,
  185 Wash. App. 123 (2014) ..............................................................19

*Stephens v. Omni Ins. Co.*,
  159 P.3d 10 (Wash. Ct. App. 2007) ..................................................20

*Susan B. Anthony List v. Driehaus*,
  134 S. Ct. 2334 (2014) ......................................................................6

*Van Patten v. Vertical Fitness Grp.*,
  LLC, 22 F. Supp. 3d 1069, 1078 (S.D. Cal. 2014) ............................16

*Washington Envtl. Council v. Bellon*,
  732 F.3d 1131 (9th Cir. 2013) ............................................................9

BADGLEY MULLINS TURNER, PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*White Tail Park, Inc. v. Stroube*,
413 F.3d 451 (4th Cir. 2005) ........................................................................6

STATUTES & CONSTITUTIONAL PROVISIONS

CEMA ................................................................................................*passim*

Consumer Protection Act ....................................................................*passim*

RCW 19.190.030(1) ..........................................................................19

RCW 19.190.080 ..............................................................................20

RCW 19.190.090(1) ..........................................................................20

47 U.S.C. § 227 (Telephone Consumer Protection Act) ........................1, 10

U.S. Const., art. III, § 2 .......................................................................6

Wash. Final Bill Rep., 1998 Reg. Sess. H.B. 2752 (Apr. 6, 1998) ............19

Wash. Final Bill Rep., 2003 Reg. Sess. H.B. 2007 (June 27, 2003) ...........19

Wash. Rev. Code § 19.86.920 .............................................................21

Wash. Rev. Code § 19.190.010(5) ........................................................17

Wash. Rev. Code § 19.190.040(1) ........................................................18

Wash. Rev. Code § 19.190.060(1) (2016) ..............................................17

Washington Consumer Protection Act ...............................................1, 20

Washington State Commercial Electronic Mail Act ..........................1, 16, 17

OTHER AUTHORITIES

25 David K. DeWolf, Keller W. Allen & Darlene Barrier Caruso, Wash. Prac.
Contract Law And Practice § 18:310.08 (3d ed. 2015) ...........................21

Fed. R. Civ. P. 12(b)(1) ..................................................................5, 8

Fed. R. Civ. P. 12(b)(6) ...............................................................5, 9, 16

BADGLEY MULLINS TURNER, PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566

# TABLE OF AUTHORITIES
**(continued)**

Page(s)

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act
    of 1991*, 7 FCC Rcd. 8752 (1992)...................................................................................6, 12, 15

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act
    of 1991*, *Report and Order*, 18 FCC Rcd. 14014 (July 3, 2003) .............................................11

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act
    of 1991*, 27 FCC Rcd. 15391 (2012).......................................................................................14

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act
    of 1991*, CG Docket No. 02-278, Declaratory Ruling and Order, 30 FCC Rcd.
    7961 (rel. Jul. 10, 2015) ................................................................................................11, 12, 14

Order, *Wright v. Lyft, Inc.*, No. 2:14-cv-00421 MJP (W.D. Wash. Apr. 15, 2016),
    ECF No. 63 ........................................................................................................................17, 18

DEFENDANT'S MOTION TO DISMISS
Case No.  2:16-cv-00914

BADGLEY MULLINS TURNER, PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566

## **INTRODUCTION**

On February 12, 2016, Noah Wick ("Plaintiff") accessed the "Crevalor" website, www.crevalor.com, which offers a pre-workout supplement boasting to be a "powerful thermogenic" that leads to "explosive workouts" and "better hormone production." Plaintiff accessed the Crevalor website and submitted his name, address, and cellular phone number, hoping to obtain a free sample of the Crevalor product. After submitting his personal information to Crevalor, Plaintiff received a text message stating: "Noah, Your order at Crevalor is incomplete and about to expire. Complete your order by visiting http://hlth.co/xDoXEZ." The text did not require him to take any further action, and Plaintiff does not claim to have received any additional texts, calls, or other communications regarding Crevalor. Plaintiff does allege that he subsequently received a call from a telemarketer, but he offers no information whatsoever about the call, who initiated it, or its subject matter.

Plaintiff claims that the Crevalor text message he received came from a number listed in some "reverse white pages lookup" as associated with Twilio Inc. ("Twilio" or "Defendant"), and on that basis he brings this lawsuit against Twilio. Plaintiff fails to plead any facts about what specific search database he used or how exactly he determined the number was associated with Twilio. Moreover, Plaintiff offers not one other fact regarding any interaction he had with Twilio. Yet he intends to bring a mammoth class action based on this one text he received—a text which on its face appears to be from Crevalor and was received only after Plaintiff voluntarily submitted his personal information and cell phone number to Crevalor.com—and one phone call made by an unidentified party using an unidentified phone number with absolutely no association—reverse lookup or otherwise—with Twilio. Inexplicably, Plaintiff brings no action against Crevalor, the apparent source of his complaint.

Plaintiff alleges that Twilio, a cloud communications company based in San Francisco, California, violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), Washington State Commercial Electronic Mail Act ("CEMA"), and Washington Consumer Protection Act ("CPA"), but he does not plead sufficient facts to state any claim for which relief could be granted. The TCPA restricts telephone solicitations using automated telephone

DEFENDANT'S MOTION TO DISMISS
Case No.  2:16-cv-00914

1

BADGLEY MULLINS TURNER, PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566

equipment.  To bring a successful claim under the TCPA, Plaintiff must show:  (1) Defendant *made* or was the *initiator* of the communications at issue—mere *transmission* is not actionable under the TCPA; (2) Defendant used an automatic telephone dialing system ("ATDS" or "auto-dialer") to make the communications; and (3) Plaintiff did not solicit or consent to the received communications.  Plaintiff has not, and cannot, sufficiently plead any of these requirements. Unsurprisingly, he has not adequately alleged that Twilio was the "initiator" of the calls that he received, because Twilio does not, as a matter of law, "make" or "initiate" any calls, texts, or other electronic communications; its customers do.  The Federal Communications Commission's ("FCC") 2015 *TCPA Declaratory Ruling*, discussed *infra* at Section II.C., made clear that cloud-based software providers do not make or initiate calls when third parties use the platforms to do so.

Here, Twilio does not control the content, recipients, or timing of the communications made by its customers or third parties.  And Twilio does not have nor does it offer an ATDS; third parties aiming to use such technology must themselves write software code to create such functionality.  Finally, even if Plaintiff could plead that Twilio was an "initiator" or "auto-dialer"—which he cannot—the only communication that Plaintiff plausibly pleads that has any connection to Twilio is the single Crevalor text allegedly sent to Plaintiff seeking follow-up information after he voluntarily released his phone number.  He consented to that alleged text.

Plaintiff's claims under CEMA and CPA also fail, because he has not sufficiently pleaded that the text was an unsolicited "commercial" communication, that Twilio engaged in an unfair practice, or that he was actually injured by the text.

Plaintiff, having failed to allege any facts sufficient to support a plausible finding of liability against Twilio, impermissibly turns to a broad stroke recitation of the elements of a TCPA claim to plead his case.  Plaintiff draws far-reaching assumptions and speculative conclusions from Twilio's website in the hopes of making something stick in the absence of particular details surrounding what *actually* happened to him.  But Plaintiff does not have the law on his side, and he fails to plead facts sufficient to take this case outside the realm of squarely controlling FCC and federal case precedent.  To the extent Plaintiff has indeed suffered any harm as a result of the text

DEFENDANT'S MOTION TO DISMISS
Case No.  2:16-cv-00914

2

BADGLEY MULLINS TURNER, PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566

1  message and call he received, which seems very unlikely, he is undoubtedly suing the wrong party.

2  Plaintiff's case should be dismissed with prejudice.

3  <center>**TWILIO'S OFFERINGS**</center>

4  As Plaintiff alleges, Twilio is a software company that "offers to its **clients** the ability to

5  **initiate**" texts and calls to cell phones via a computer program.  Twilio provides an application

6  program interface ("API"): a set of protocols and tools for building software applications, that

7  enable third-party software developers to write software code which in turn allows them to create

8  applications to make and receive calls, videos, and text messages.  Twilio only provides its

9  products to a pre-determined group of users—software developers—and not to the general public.

10  As Twilio's website makes clear, its API offers what are best described as programming "tools,"

11  which are not sold in a "ready for use" format.  Rather, Twilio's customers, the software

12  developers, and programmers, must design and implement their individualized computer coding

13  and data to tailor the basic API tools to their specific needs and preferences.  Twilio offers the

14  building blocks for communications, but the third-party developers give their applications life.

15  Plaintiff characterizes Twilio as a "robo-caller" or "text blaster," but this is a very unfair

16  and disingenuous portrayal of the company and its services.  As discussed in Section II.B., *infra*

17  at 10-14, Twilio cannot and does not control all of the communications that are initiated using its

18  software.  And as Plaintiff admits, texts and calls made using Twilio's platform are transmitted

19  over third party servers.  Compl. ¶ 38.  Although Plaintiff selectively plucks several quotes from

20  the Twilio website to weave into the conjectures in his complaint, he fails to mention the sections

21  of the website that discuss Twilio's clients—Uber, Coca Cola, Airbnb, and Nordstrom, among

22  others—and their ground-breaking uses of Twilio's APIs to communicate with their consumers in

23  a rapidly changing and data-intensive world.  For example, Uber's software developers have used

24  the tools of the Twilio API to create a platform by which Uber can make millions of text and cell

25  phone communications between Uber, its drivers, and riders about up-to-date status of drive times

26  and ride requests. See *https://customers.twilio.com/208/uber/*.  Airbnb enables private residents to

27  rapidly communicate with prospective renters about booking requests and lodging that best suits

28  their needs.  *See https://customers.twilio.com/214/airbnb/*.  Though Twilio's API gives third party

1   users the instrument through which they can smoothly coordinate communications, Twilio is

2   certainly not controlling, designing, or initiating the texts or calls made by users like Uber,

3   AirBNB, or its other customers.  As Twilio tells prospective users on its website, the platform will

4   "Give **your** web and mobile apps the power to exchange messages of any variety," and messaging

5   notifications can be designed to send alerts, notifications, etc., in a manner "depending on how

6   each user would like to be notified."  The Twilio platform must be programmed and enlivened by

7   clients to reach their desired recipients in the preferred time and method.

8   <u>**SUMMARY OF PLAINTIFF'S ALLEGATIONS**</u>

9   Plaintiff has failed to allege facts sufficient to support a legal claim.  Even if he could

10   establish the veracity of each item asserted in the Complaint, the alleged facts fail to demonstrate

11   a violation of his statutory rights.  In short, Plaintiff asserts that Twilio violated the TCPA and

12   Washington state law when he received "one or two unsolicited calls and a text message initiated

13   from Twilio, Inc.'s cloud-based API service."  Compl. ¶ 38.

14   First, Plaintiff asserts that on February 12, 2016, he accessed the website

15   www.crevalor.com, which marketed a pre-workout supplement.  Compl. ¶ 38.  After accessing the

16   website, Plaintiff entered his personal information—name, address, and cell phone number—into

17   the webpage in the hopes of obtaining a free sample of the product.  Compl. ¶ 38.  He claims that

18   he then received from Crevalor a follow-up text that stated, "Noah, Your order at Crevalor is

19   incomplete and about to expire.  Complete your order by visiting htt://hlth.co/xDoXEZ."  Compl.

20   ¶ 39.  Plaintiff contends that the number from which the follow-up text message originated was

21   associated with Twilio in a "reverse white page look-up."  Compl. ¶ 40.  He alleges no other details

22   about how this "look up" or any other link to Twilio.  Further, Plaintiff does not plead any facts

23   that describe who "made" or "initiated" the Crevalor text message, nor any information about how

24   the content of the message was drafted, whether or not ATDS was used in the communication, or

25   what role Twilio played, if any, in the transmission of the message.

26   Next, Plaintiff claims that he received an "unsolicited telephone call from a telemarketer"

27   about "a free product" that Plaintiff was told "he had to order . . . immediately[.]"  Compl. ¶ 42.

28   Plaintiff does not plead any facts about the specific identity of the caller, the telephone number

DEFENDANT'S MOTION TO DISMISS          4
Case No.  2:16-cv-00914

BADGLEY MULLINS TURNER, PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566

that made the call, the type of product that was discussed, whether or not the call was made using an auto-dialer, nor any other information regarding the technology or design of the call.  He does not state that the call was in any way related to Crevalor.  Further, Plaintiff does not allege that Twilio was involved, in any capacity, in the making of the phone call.  He does not even allege that the call came from a number associated with Twilio.  Because Plaintiff has not made any allegation to link the telephone call to Twilio in any way, it does not need to be addressed further.

Plaintiff attempts to mask these deficiencies by prosecuting his complaint against Twilio's website.  He cherry-picks snippets from the website in an effort to make general, threadbare allegations of the elements of a TCPA claim.  He broadly claims that Twilio initiates all of its users' calls, determines the numbers that will receive texts, creates the text messages themselves, and generates the list of numbers to be dialed.  Further, he similarly speculates without any facts that Twilio's APIs may auto-generate lists of recipient phone numbers for its customers.  Compl. ¶¶ 21-37.  Unsurprisingly, however, these bold claims are not taken from quotes on the website, nor can they be derived from Plaintiff's misunderstood concepts of computer programming that he colors in the Complaint in the hopes of evading the legal precedent that stands in his way.

First, Plaintiff's manipulation of the language on Twilio's website is not relevant.  In his complaint, as stated above, he provides no facts surrounding the text and call that he alleges he actually received.  Other than pleading that he received a text from a number associated with Twilio in an otherwise undisclosed "reverse lookup directory," he provides no facts whatsoever linking Twilio to Plaintiff and the two communications raised in his complaint.  Plaintiff's piecemeal wordsmithing of Twilio's website represents exactly the kind of hypothetical allegations and preferred assumptions, not based on actual fact, that Rule 12(b)(6) prohibits.  But even if true, Plaintiff's tailored interpretations of Twilio's website cannot negate the fact that his Complaint, on its face, makes clear that Twilio is not an "initiator" of the communications but "offers **its clients the ability to initiate** millions of text messages" and is thus not liable under the TCPA Compl. ¶ 8 (emphasis added).  Accordingly, this case should be dismissed.

DEFENDANT'S MOTION TO DISMISS                    5
Case No.  2:16-cv-00914

BADGLEY MULLINS TURNER, PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566

1

## ARGUMENT

2

## I. PLAINTIFF LACKS ARTICLE III STANDING AND HIS CLAIMS SHOULD BE DISMISSED UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1).

3

4       This Court lacks jurisdiction over Plaintiff's claim and his Complaint should be dismissed.

5   "Article III of the Constitution confines the judicial power of federal courts to deciding actual

6   'Cases' or 'Controversies.'" *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013) (quoting U.S.

7   Const., art. III, § 2). One "essential and unchanging part of the case-or-controversy requirement

8   of Article III" is the requirement that a plaintiff has standing to sue. *Lujan v. Defs. of Wildlife*, 504

9   U.S. 555, 560 (1992). Because the standing requirement is jurisdictional, a standing challenge is

10  properly raised in a Rule 12(b)(1) motion to dismiss. *White Tail Park, Inc. v. Stroube*, 413 F.3d

11  451, 459 (4th Cir. 2005). "To establish Article III standing, a plaintiff must show (1) an 'injury in

12  fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and

13  (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony*

14  *List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting *Lujan*, 504 U.S. at 560–61).

15      To qualify as "concrete," an injury "must actually exist"; it must be "'real and not

16  abstract.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), *as revised* (May 24, 2016).

17  "Article III standing requires a concrete injury even in the context of a statutory violation," like

18  the ones Plaintiff alleges here. *Id.* Although Congress can statutorily identify and elevate

19  intangible harms to create a controversy where none existed before, this "does not mean that a

20  plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a

21  statutory right and purports to authorize that person to sue to vindicate that right." *Id.* Bare

22  procedural violations and conclusory allegations that a statute was violated are therefore

23  insufficient to satisfy the injury-in-fact requirement of Article III. *Id.* Here, Plaintiff fails to satisfy

24  his Article III burden.

25  ### A.   Plaintiff's Fails to Allege Cognizable Injury

26      As an initial matter, Plaintiff has failed to allege any injury at all under the TCPA, which

27  is fatal to his claim of Article III standing. The FCC has made clear that "persons who knowingly

28  release their phone number have consented to be called at the number which they have given,

absent instructions to the contrary." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8769 ¶ 31 (1992).  Plaintiff voluntarily provided his cell phone number when he accessed the Crevalor website on February 12, 2016 in order to obtain a free sample of Crevalor.  Compl. ¶ 38.  Thus, as a matter of law, Plaintiff expressly consented to be contacted about his Crevalor order.  Because Plaintiff consented to this type of communication by voluntarily releasing his phone number to Crevalor, Plaintiff has failed to state an injury under the TCPA as a matter of law.

Even if Plaintiff had alleged an actual violation of the TCPA, his failure to allege actual harm under the statute forecloses Article III standing.  Although "a violation of the TCPA may serve as a concrete injury for Article III standing," plaintiffs must plead actual harm.  *Ikuseghan v. MultiCare Health Sys.*, No. C14-5539 BHS, 2015 WL 4600818, at *2 (W.D. Wash. July 29, 2015).  Here, Plaintiff has not done so.  Plaintiff mechanically pleads four injuries unrelated to the text message at issue here as his basis for standing:  (1) economic injury caused by having to pay per text message or call or having a usage allocation deduction from his cell phone plan for each text or call; (2) a trespass on Plaintiff's right to use his property without interference during the text message; (3) an invasion of Plaintiff's privacy interest; and (4) the time wasted reading the text message.  Compl. ¶¶ 59-62.  Plaintiff has failed, however, to plead these injuries with sufficient specificity to establish Article III standing.

First, regarding economic injury, the Complaint does not contain a single allegation that his cell phone plan requires him to pay per text or call, or that his plan deducts from his usage allocation for each call or text message.  Without allegations that his ability to use his own cell phone plan was actually diminished, or that he was required to spend additional money as a result of the single text message, Plaintiff has failed to plead that he suffered a cognizable economic harm.  Instead, he pleads only "threadbare recitals of the elements of a [TCPA] cause of action," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), which are insufficient to survive this motion.

Second and third, Plaintiff's allegations of interference with the use of his property and wasted time are *de minimis* and thus are insufficient to confer Article III standing.  *See, e.g., LaCourt v. Specific Media, Inc.*, No. SACV 10-1256 GW JCGX, 2011 WL 1661532, at *5 (C.D.

DEFENDANT'S MOTION TO DISMISS
Case No.  2:16-cv-00914

7

BADGLEY MULLINS TURNER, PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566

Cal. Apr. 28, 2011) (where plaintiffs alleged that the installation of a program diminished their computers' functionality, holding that "maybe Plaintiffs have alleged some *de minimis* injury, but probably not one that would give rise to Article III standing").  This case is not an example of "massive" or "widespread" robocalls; Plaintiff has pleaded only one text message sent in response to an inquiry he initiated.  *See, e.g., Booth v. Appstack, Inc.*, No. C13-1533JLR, 2016 WL 3030256, at *5 (W.D. Wash. May 25, 2016).  And Plaintiff has failed to allege how the receipt of a text could disrupt the usage of his cellular device.  Plaintiff was not forced to read or respond to the message, and his phone remained fully functional while the text was being received.  His allegations do not establish Article III standing.

Fourth, Plaintiff has not and cannot plead an invasion of his privacy interest because his inquiry initiated the single text at issue in this case.  Before finding an invasion of privacy, courts require a showing that the plaintiff had a legitimate expectation of privacy.  *See, e.g., Meier v. U.S.*, 310 Fed. App'x 976, 979 (9th Cir. 2009) (holding that plaintiff failed to establish an invasion of privacy where he had "no reasonable expectation of privacy"); *McLenan-Kenny v. Wa Dept. of Labor & Indus.*, No. C13-6026 RBL, 2014 WL 1648501, at *3 (W.D. Wa. Apr. 24, 2014) (requiring plaintiff to show "a legitimate and reasonable expectation of privacy" to establish an invasion of privacy claim).  Here, Plaintiff has not alleged that he had any legitimate expectation of privacy in his cell phone number.  Indeed, by entering his cell phone number and requesting additional information, Plaintiff provided *express consent* to be contacted.  Compl. ¶ 38.  *See, e.g., Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013) (requiring a showing of lack of consent before finding a privacy violation).  Plaintiff therefore has failed to plead any injury to his privacy interest because he invited the communication at issue in this case.

Because none of Plaintiff's allegations satisfy Article III's injury-in-fact requirement, his Complaint must be dismissed under Rule 12(b)(1).  Without an actual injury, Plaintiff alleges nothing more than a bare violation of the TCPA, which the *Spokeo* Court squarely held to be insufficient to survive Article III.  136 S. Ct. at 1549 ("Article III standing requires a concrete injury even in the context of a statutory violation").  *Spokeo* accordingly requires dismissal of Plaintiff's claims.

**B.      Plaintiff Fails To Plead Twilio Caused Any Alleged Injury**

Plaintiff also has not sufficiently pleaded that Twilio caused his alleged injuries, and his Complaint should be dismissed for a lack of Article III standing on that basis alone.  The Complaint does not sufficiently plead causation with respect to the text message.  Plaintiff's only claim is that some "reverse lookup" associated the number with Twilio.  To name only a few of the flaws in Plaintiff's fractured chain of causation:  (1) Plaintiff does not specify how Twilio was involved in the SMS; (2) he does not allege how the text was sent, who clicked the send button, or who gave approval to send it; (3) he does not allege whether the text was sent using ATDS; (4) He does not allege any relationship between Twilio and Crevalor; and (5) he does not allege that Twilio determined the content of the text message.  Instead, Plaintiff attempts to prosecute his claim against statements he self-servingly extracts from Twilio's website.  But in so doing Plaintiff fails to allege how any of that relates to the specific text at issue here.  Compl. ¶¶ 21-37.  For these reasons, too, Plaintiff has failed to allege facts sufficient to support a causal connection between Twilio and the text message he allegedly received.  *Novak v. United States*, 795 F.3d 1012, 1018 (9th Cir. 2015).

**C.      Plaintiff Fails To Allege Redressability**

Because Plaintiff has failed to plead both a concrete injury and a causal link between that alleged injury and Twilio's conduct, he necessarily has not satisfied Article III's redressability requirement.  For a plaintiff to sufficiently plead redressability, he must show a "connection between the alleged injury and requested judicial relief."  *Washington Envtl. Council v. Bellon*, 732 F.3d 1131, 1146 (9th Cir. 2013).  Here, Plaintiff requests relief in the form of a declaratory judgment that Twilio violated the law, equitable relief enjoining Twilio's allegedly unlawful conduct, and monetary damages.  Compl., at p. 21.  But because Plaintiff has failed to plead that Twilio caused him any cognizable injury, Plaintiff's requested relief cannot remedy his non-existent injuries.  His Complaint should accordingly be dismissed for lack of Article III standing.

BADGLEY MULLINS TURNER, PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566

## II. PLAINTIFF FAILS TO STATE A CLAIM AGAINST TWILIO

### A. Legal Standard For Dismissal Under Rule 12(b)(6).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's factual allegations must "give fair notice," "enable the [defendant] to defend itself effectively," and plead sufficient details to ensure that it is "not unfair to require the [defendant] to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *see Smith v. Securus Techs., Inc.*, 2015 WL 4636696 (D. Minn. Aug. 4, 2015) (dismissing plaintiffs' case because they did "not specifically allege that the [defendant's] system somehow selected and dialed [the phone numbers] by some automated process" as required by the TCPA. Plaintiff has not satisfied his burden here.

### B. Plaintiff Does Not Allege That Twilio Initiated Any Text Messages Or Calls

Plaintiff's apparent theory of the case is that any entity remotely related to the transmission of a text message or call, no matter how passive that involvement, may be held liable under the TCPA. However, this interpretation runs directly counter to the express language of the TCPA, FCC rulings, and the opinions of numerous federal courts.

As courts have consistently held, the TCPA was only "intended to 'apply to the persons *initiating* the telephone call or sending the message and . . . not to the [party] that transmits the call or messages and that is not the originator or controller of the content of the call or message.'" *See* 47 U.S.C. § 227(b)(1)(A) ("It shall be unlawful for any person . . . to ***make*** any call . . . .") (emphasis added); *see also Rinky Dink, Inc. v. Elec. Merch. Sys.*, Civ. No. 13-1347-JCC, 2015 WL 778065, *4 (W.D. Wash. Feb. 24, 2015) (citing *Couser v. Pre-paid Legal Services, Inc.*, 994 F. Supp. 2d 1100, 1104 (S.D. Cal. 2014)); *Satterfield v. Simon and Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("[U]sers of [telecommunications] services, not the carriers providing the services, [are] held liable"); *Kauffman v. Callfire, Inc.*, 141 F. Supp. 3d 1044, 1048 (S.D. Cal. Oct. 7, 2015) (internet-based transmitters are not liable where their customers "must create their own telephone number contact lists . . . and select when they initiate their own messages").

DEFENDANT'S MOTION TO DISMISS                    10
Case No.  2:16-cv-00914

BADGLEY MULLINS TURNER, PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566

At the motion to dismiss phase, courts should reject a plaintiff's TCPA action where the defendant as a matter of law is not an initiator of the communications at issue. *See Mendez v. C-Two Group, Inc.*, CIV No. C-13-5914-EMC, Order Granting Defendant MobileStorm's, Inc.'s Motion to Dismiss (N.D. Cal. Apr. 21, 2014) (dismissing an action against software provider because plaintiff failed to plausibly allege that defendant controlled the initiation of its customers' messages); *Smith v. Securus Technologies, Inc.*, 20150 WL 4636696 (D. Minn. Aug. 4, 2015) (dismissing the case where defendant provided services that enabled prison inmates to make telephone calls, but plaintiffs did not allege that defendant selected call recipients or dialed their numbers by an automated process); *McKenna v. WhisperText*, No. 14-cv-424, 2015 WL 5264750 (N.D. Cal. Sept. 9, 2015); *Clark v. Avatar Techs. PHL, Inc.*, CIV No. H-13-2777, 2014 WL 309079 (S.D. Tex. Jan. 28, 2014). Here, Twilio offers a cloud-based communications platform that allows third parties to transmit voice, text, and video messages through software applications. Twilio does not itself initiate calls or text messages and in no way controls the content, recipients, or timing of the communications. Therefore, Twilio is not an "initiator" of its users' text messages or calls and thus cannot be subject to liability for alleged violations under the TCPA.

### 1. The FCC Has Defined What It Means to Be an "Initiator" and Twilio Does Not Fall within That Definition.

As a communications platform, Twilio's practices are regulated by the Federal Communications Commission ("FCC"). Enacted in 1991 before the advent of SMS text messaging, the TCPA originally prohibited only unsolicited phone calls and fax transmissions. The FCC subsequently extended the TCPA's definition of "calls" to include text messaging. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952-954 (9th Cir. 2009) (citing *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14014, 14115 (July 3, 2003)). Just last year, the FCC clarified that companies providing cloud based services that transmit others' texts are not liable for TCPA violations because they do not generally "make" calls. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Declaratory Ruling and Order, 30 FCC Rcd. 7961 (rel. Jul. 10, 2015) ("*TCPA Declaratory Ruling*").

DEFENDANT'S MOTION TO DISMISS
Case No. 2:16-cv-00914

11

BADGLEY MULLINS TURNER, PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566

In that 2015 ruling, the FCC reaffirmed that "Congress . . . put the responsibility for compliance with the [TCPA] *directly* on the party that 'makes' or 'initiates' automated and prerecorded message calls." *Id.* at 7979, ¶ 29.  Under the law, a software platform provider "does not make or initiate a text when [its customer] merely uses the [software]" to initiate text messages that the *customer or user controls. Id.* at 7978, ¶25.  The FCC explained that a software application provider, like Twilio, is not an "initiator" where "the app user determines whether to send the . . . text messages" and the platform provider "*does not control* the recipients, timing, or content" of the messages." *Id.*   In other words, when a provider like Twilio "exercises no discernible involvement in deciding whether, when, or to whom [a message] is sent, or what [the message] says," there is no TCPA liability. *Id.* at 7981, ¶ 32.  The FCC went further when confirming that cloud-based service providers are not "initiators":

[W]e conclude that the app user's actions and choices effectively program the cloud-based dialer to such an extent that he or she is so involved in the making of the call as to be deemed the initiator of the call.  [The software provider] is not the maker or initiator of the . . . text messages because it is not programming its cloud-based dialer to dial any call, but 'merely has some role, however minor, in the causal chain that result in the making of a telephone call.

*Id.* (emphasis added) (citations omitted).

### 2. Federal Courts Have Upheld the FCC's View that Cloud-Based Platform Providers Are not "Initiators" Under the TCPA.

Following the FCC's clear definition of TCPA call and message "initiation" in 2015, federal courts have consistently upheld that definition.  Citing the 2015 ruling, courts have repeatedly concluded that software application providers cannot be held responsible for unlawful messaging and robo-calls made by the applications' subscribers except in the unusual circumstances where the underlying service provider actually controls the content, timing, and recipients of its messages.

In *Kauffman*, the court thoroughly discussed the FCC's 2015 ruling and determined that the defendant Callfire, the provider of an internet-based communication platform, was not an "initiator" when it "required its users to take affirmative steps to determine whether, when, and to whom they would send text messages" and its customers had to "create their own telephone contact lists." 2015 WL 778065 at *1048.  Similarly, in *Payton v. Kale Realty, LLC*, the court applied the

DEFENDANT'S MOTION TO DISMISS
Case No.  2:16-cv-00914

12

BADGLEY MULLINS TURNER, PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566

FCC's analysis to hold that defendant VoiceShot "did not have any role in creating the content of the text message allegedly received by plaintiff," and VoiceShot required its customers to "specify the telephone numbers to which the message will be transmitted."  2016 WL 703869, *5-6 (N.D. Ill. Feb. 22, 2016); *see also Securus*, 2015 WL 4636696; *McKenna*, 2015 WL 5264750.  This precedent makes clear that Plaintiff has not sufficiently pleaded facts to support the conclusion that Twilio initiated the text message in question.  Indeed, all Mr. Wick has alleged is that he received one text regarding his Crevalor order, and that he found that telephone number to be associated with Twilio in some "reverse lookup" directory.

### 3. Plaintiff Does Not—and Cannot—Plead That Twilio Is an "Initiator."

Like the numerous other service providers discussed above that have been deemed immune from TCPA liability by the FCC and federal courts, Twilio is merely the provider of a communications transmission application, and mere transmission is not actionable under the TCPA.  And Plaintiff cannot be permitted to sue every entity in the call flow in the hopes of surviving a motion to dismiss and sorting it all out later after costly discovery.

As discussed above, *supra* at 1, Plaintiff pleads only that the phone number from which the text originated was associated with Twilio in some "reverse lookup" database.  He pleads absolutely no facts connecting Twilio to the call he allegedly received from the "telemarketer." He pleads no factual allegations to suggest that Twilio had any involvement in "selecting the content, timing, and recipients" of the message or call, as is required by law to support TCPA liability. *Kauffman*, 141 F. Supp. 3d at 1050.  In the absence of pleadings showing "a high degree of involvement" in the making of a call, or "actual notice of an illegal use and failure to take steps to prevent [illegal] transmissions"—of which Plaintiff here pleads none—service providers are not deemed to have initiated the messages. *Rinky Dink*, 2015 WL 778065 at *7 (citation omitted).

Indeed, even if construing the Complaint in the light most favorable to Plaintiff, he admits that Twilio's interface "**permits its customers** to programmatically **make**" the calls and texts. Compl. ¶ 20 (emphasis added).  And though Plaintiff splices and mischaracterizes quotes from Twilio's website in the hopes of bootstrapping Twilio's involvement in the transmission of texts and calls, the facts, even if taken as true, do not support a conclusion that Twilio controls its

DEFENDANT'S MOTION TO DISMISS
Case No.  2:16-cv-00914

13

BADGLEY MULLINS TURNER, PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566

customers' communications.  For example, Plaintiff repeatedly emphasizes that Twilio will help customers "find exactly the right person to **help you** build the Twilio solution you need," and Twilio "**allows its customers**" to "'send SMS as fast as **you like**[.]'"  Compl. ¶ 31-37 (emphasis added).  The users of Twilio's application platforms thus have the sole control over content, recipients, and timing of messages, and Plaintiff's complaint does not dispute that.  Twilio's customers—software developers—must affirmatively write software to meet their individualized messaging preferences and execute transmissions to use Twilio at all.  Accordingly, Plaintiff's other lofty accusations about Twilio's potential programming capabilities and speculative assumptions on ways that "numbers *may* be generated" are not relevant.  Compl. ¶¶ 31-37.  And they are certainly not relevant to the single text message here, which was received by Plaintiff after he voluntarily provided Crevalor his phone number.  Thus, because Plaintiff does not plead that Twilio was an "initiator" of the communications, his Complaint cannot survive this motion.

### C.   Plaintiff Has Not Plausibly Alleged That Twilio Used An ATDS And Therefore Twilio is Immune From Liability Under the TCPA

In addition to failing to plead that Twilio initiated the text and call in question, Plaintiff also fails to plead facts showing Twilio's platform, or the communications he received, utilized an ATDS.  Only a single text is presented in this case—a text Plaintiff received after he submitted his number to Crevalor.  In the its 2015 ruling, the FCC reaffirmed that "the basic functions of an autodialer are to '**dial** numbers **without human intervention**' *and* to 'dial thousands of numbers in a short period of time.'"  *TCPA Declaratory Ruling* at 7974, ¶ 17 (emphasis added) (citations omitted).  A single text provides no basis for alleging the use of an ATDS.  Therefore, because Plaintiff does not plead bulk dialing, he has not pleaded ATDS as a matter of law.

But even if Plaintiff had alleged bulk dialing, that allegation alone would still not be sufficient to constitute ATDS.  The TCPA only covers "equipment that has the specified capacity to generate numbers and dial them *without human intervention*."  27 FCC Rcd. 15391, 15392, n. 5 (2012) (emphasis added); *see also Glauser*, 2015 WL 475111 at *6 (the "capacity to dial numbers without human intervention is required" for TCPA liability).  And case law confirms that where a communication application's subscribers cannot *initiate* messages except through their own

DEFENDANT'S MOTION TO DISMISS
Case No.  2:16-cv-00914

14

BADGLEY MULLINS TURNER, PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566

human intervention, the application platforms are not ATDS as a matter of law. *See Luna v. Schac, LLC*, CIV NO. 14-cv-607-HRL, 2015 WL 4941781, *4 (N.D. Cal. Aug. 19, 2015) (holding that defendant CallFire's web-based telephone service was not an ATDS because its subscribers had to take several affirmative "human" actions, including "transferring of the telephone number into the CallFire database, drafting the message, determining the timing of the message, and clicking 'send' on the website to transmit the message to Plaintiff."). Here, there is nothing in the Complaint that could plausibly suggest an ATDS was used to send Plaintiff the alleged text and call at issue. As described above, Twilio provides its customers with access to API that *are not* immediately ready for use; software programmers must use the tools provided and incorporate specific code and data for individualized use. Substantial human intervention is therefore necessary before even beginning to transmit any messages using Twilio's platform.

And as discussed in Section I.B, *supra* at 8-9, Plaintiff has pleaded no facts to suggest that Twilio initiated either the text or call. As such—not an "initiator" of texts or phone calls—Twilio cannot plausibly be considered a user of an ATDS for the message or call in question. *Luna*, 2015 WL 4941781, at *4. A third party is needed to transfer the desired recipient phone number(s) into a database, draft the message, and choose when to transmit the message. These are all "human actions" that must accompany the initial tools Twilio offers through its platform. Therefore, because initiating a text is only actionable under the TCPA if it is sent via an ATDS, and Plaintiff failed to plead any facts sufficient to suggest that the text and call in question were sent via an ATDS, his claims against Twilio should be dismissed.

**III.   EVEN IF PLAINTIFF COULD SUFFICIENTLY PLEAD FACTS TO SUPPORT APPLICATION OF THE TCPA, AS A MATTER OF LAW PLAINTIFF'S RELEASE OF HIS TELEPHONE NUMBER ESTABLISHED CONSENT FOR THE ONE TEXT MESSAGE HE ALLEGES HE RECEIVED**

Plaintiff's TCPA challenge is foreclosed by the fact that he provided express consent to receive the text message from Twilio. The FCC has stated in no uncertain terms that "persons who knowingly release their phone number have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752,

DEFENDANT'S MOTION TO DISMISS                    15
Case No.  2:16-cv-00914

BADGLEY MULLINS TURNER, PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566

8769 ¶ 31 (1992).  And "federal courts have consistently concluded that when a customer provides a company his or her phone number in connection with a transaction, he or she consents to receiving calls about that transaction."  *Sherman v. Yahoo! Inc.*, 997 F. Supp. 2d 1129, 1133 (S.D. Cal. 2014); *see also Roberts v. PayPal, Inc.*, 621 Fed. App'x 478, 479 (9th Cir. 2015) (affirming district court's conclusion that the plaintiff expressly consented to receiving texts from PayPal by providing his cellular number while accessing the PayPal online payment website); *Saunders v. NCO Fin. Sys.*, 910 F. Supp. 2d 464, 467 (E.D.N.Y. 2012) ("[T]he authorities are almost unanimous that voluntarily furnishing a cell phone number to a vendor or other contractual counterparty constitutes express consent."); *Van Patten v. Vertical Fitness Grp.*, LLC, 22 F. Supp. 3d 1069, 1078 (S.D. Cal. 2014) (finding that plaintiff "consented to receiving the texts at issue when he provided his phone number upon joining the gym"); *Pinkard v. Wal-Mart Stores, Inc.*, No. 3:12-cv-02902-CLS, 2012 WL 5511039, at *5 (N.D. Ala. Nov. 9, 2012) (stating that the plaintiff's providing her cellular telephone number to defendant was "clear and unmistakable consent to be contacted at that number" and "[t]o hold otherwise would contradict the overwhelming weight of social practice" because "distributing one's telephone number is an invitation to be called, especially when the number is given at another's request").

Here, Plaintiff voluntarily provided his cell phone number when he accessed the Crevalor website on February 12, 2016 to obtain a free sample of "Crevalor," a pre-workout supplement. Compl. ¶ 38.  Thus, as a matter of law, Plaintiff expressly consented to be contacted about that free sample.  As discussed in Section I.B., *supra* at 8-9, Plaintiff does not allege that the telemarketing voice call he received came from Twilio; he alleges only that he received one text message from a number assigned to Twilio.  Plaintiff alleges the text informed him that his "order at Crevalor is incomplete and about to expire."  Compl. ¶ 39.  The alleged text Plaintiff describes was therefore made under the circumstances and in the context of which Plaintiff voluntarily provided his phone number—*i.e.*, obtaining a free sample of Crevalor.  Plaintiff's own factual allegations, which must be accepted as true for the purposes of this Rule 12(b)(6) motion, thus provide a complete defense.  On this basis alone, Plaintiff's Complaint should be dismissed in its entirety.

1
2

**IV.    PLAINTIFF'S CEMA CLAIM SHOULD BE DISMISSED BECAUSE HE HAS NOT ALLEGED THAT THE TEXT HE RECEIVED WAS A COMMERCIAL COMMUNICATION**

3
4
5
6
7
8
9
10

Plaintiff's allegations similarly fail to state a claim under Washington's Commercial Electronic Mail Act ("CEMA").  CEMA provides that "[n]o person conducting business in the state may initiate or assist in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident for cellular telephone or pager service . . . ." Wash. Rev. Code § 19.190.060(1) (2016).  CEMA requires that Plaintiff's allegations include sufficient pleadings of fact to show that the text message was "commercial."  However, Plaintiff has not sufficiently alleged that the text message he received was a "commercial" communication. Therefore his CEMA claim must be dismissed.

11

**A.    Plaintiff Has Not Sufficiently Pleaded That The Text Message or Call Were "Unsolicited Commercial Solicitations" As Is Required By Washington Law**

12
13
14
15
16
17
18
19
20
21
22
23
24
25

CEMA only applies to "commercial" communications.  Wash. Rev. Code § 19.190.060(1) (2016).  Under Washington law, "commercial" means that the text must be "sent to promote real property, goods, or services for sale or lease."  *Gragg v. Orange Cab Co.* ("*Gragg IV*"), 145 F. Supp. 3d 1046, 2015 WL 6870609, at *1 (W.D. Wash. 2015) (quoting Wash. Rev. Code § 19.190.010(5)).  The test is whether, by a common-sense reading of the text, the communication would be understood as "intend[ing] to offer property, goods, or services for sale either during the [communication], or in the future."  *Id.* (quoting *Chesbro v. Best Buy Stores*, L.P., 705 F.3d 913, 918 (9th Cir. 2012)).  Further, according to Washington law, an electronic text message is never deemed "commercial" if the property, goods, or services promoted are "free."  *See Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1132–33 (W.D. Wash. 2012) (explaining that a text message advertisement to download an application was not "commercial" for purposes of CEMA because the download was free and the plaintiff did not otherwise allege that the app download was a "sale"); Order, *Wrigh v. Lyft, Inc.*, No. 14-CV-0042, (W.D. Wash. Apr. 15, 2015), ECF No. 63 at 10–11 (explaining that, in *Hickey*, "there was no *sale* of a product or services to promote").

26
27
28

Here, the specific text message that Plaintiff alleges he received from the number assigned to Twilio was not an "electronic commercial text message" within the meaning of Wash. Rev.

DEFENDANT'S MOTION TO DISMISS
Case No.  2:16-cv-00914

17

BADGLEY MULLINS TURNER, PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566

Code § 19.190.060(1).  First, based on its face and a "common sense reading" of the text message, it cannot be interpreted as an intent to offer goods or services "for sale."  The informational text does not describe any specific products, services, prices, promotional offers or other solicitiations.  It stated: "Noah, Your order at Crevalor is incomplete and about to expire. Complete your order by visiting http://hlth.co/xDoXEZ."  Compl. ¶ 39.  The text is plainly a follow-up to "an order" that "is incomplete."  Second, the text was "not commercial" because it was dealing with a free product.  As Plaintiff has stated, he received the text message because he had given his "name, address, and cell phone number" to receive a "**free sample**" of a pre-workout supplement, and the text message itself was a reminder to complete his order (for the free sample). *See* Compl. ¶ 38.  Because this text message is not "commercial" as a matter of law, *see Hickey*, 887 F. Supp. 2d at 1132; *Wright*, No. 14-CV-0042, at 10–11, Plaintiff does not state a claim upon which relief can be granted under CEMA.

**B.   Plaintiff's Claims Under CEMA Should Be Dismissed Because There Is No Private Right of Action Under the Statute**

        Plaintiff's claim for damages under CEMA should be dismissed because the Supreme Court of Washington is likely to agree with this Court in holding that there is no private right of action under the CEMA.  In *Gragg IV*, this Court for the first time determined that a plaintiff may only obtain injunctive relief under CEMA, as opposed to monetary damages.  2015 WL 6870609, at *5 ("Applying the normal rules of statutory construction, the Court finds that plaintiff may bring a claim for injunctive relief under CEMA, but he may not recover damages under that statute.").  Shortly thereafter, however, the court stayed the proceedings pending the Supreme Court of Washington's consideration of: (1) whether CEMA provides a plaintiff with a private right of action for damages for a violation of the statute; AND (2) whether CEMA's liquidated damages provision, Wash. Rev. Code § 19.190.040(1), *per se* establishes the fourth and fifth elements of a CPA claim (causation and injury),  *See* Order Denying Mot. for Certification Under § 1292(b) and Certifying Issues to Wash. S. Ct., *Gragg v. Orange Cab Co.*, No. C12-0576RSL (W.D. Wash. April 22, 2016).  The Supreme Court of Washington is currently considering whether CEMA even provides a private right under which Plaintiff can pursue his claims.

But the text and history of CEMA clearly show that this Court was correct in holding that CEMA provides only a limited right to injunctive relief, and the Washington Supreme Court is likely to agree.  In resolving a dispute regarding statutory construction, Washington courts seek "to execute the intent of the Legislature, which must be primarily determined from the language of the statute itself. When words in a statute are plain and unambiguous, this Court is required to assume the Legislature meant what it said and apply the statute as written." *State ex rel. Evergreen Freedom Found. v. Wash. Educ. Ass'n*, 140 Wash. 2d 615, 630–31 (2000). "The first role of a court is to examine the language of a statute while adhering to the Legislature's intent and purpose in enacting it." *Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles*, 148 Wash. 2d 224, 239–40 (2002).  In seeking the legislature's intent, courts consider "the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole," giving effect to all of the language wherever possible. *State v. LG Elecs., Inc.*, 185 Wash. App. 123, 132 (2014).

When the Washington state legislature first passed CEMA in 1998, the statute did not contain any language authorizing a private right of action directly under the statute.  Instead, the legislature provided that a claim for a violation of CEMA could be pursued under the CPA.  RCW 19.190.030(1).  The text of the original CEMA statute—and its legislative history—both show that the legislature equated sending an unlawful email with a violation of the CPA.  RCW 19.190.030(1); Wash. Final Bill Rep., 1998 Reg. Sess. H.B. 2752 (Apr. 6, 1998) ("[A] violation of the Consumer Protection Act occurs when a sender" sends an unlawful email message.).  Therefore, as this court correctly concluded in *Gragg IV*, "in the absence of any language creating a private right of action under CEMA and in light of the statutory and legislative declarations that a violation of CEMA is a violation of the CPA, the original enactment cannot reasonably be construed as giving rise to a cause of action under CEMA."  145 F. Supp. at 1051.

Similarly, when the legislature enacted the commercial text message provisions of CEMA in 2003, it did not provide for a direct cause of action.  In summarizing the new legislation, the Final Bill Report states that violation of the text message provisions is a violation of the CPA, which shows that the legislature again intended for plaintiffs to pursue claims for violations of

1    CEMA through the private right of action available under the CPA, and not under CEMA itself.

2    *See* Wash. Final Bill Rep., 2003 Reg. Sess. H.B. 2007 (June 27, 2003).

3           In 2005, however, when the statute was amended to include a prohibition against phishing,

4    the legislature included—for the first time in the statute's history—an explicit private right of

5    action under CEMA.  The amendments stated:  "A person who is injured under this chapter may

6    bring a civil action in the superior court to enjoin further violations . . . .  A person who seeks

7    damages under this subsection may only bring an action against a person or entity that directly

8    violates RCW 19.190.080 [the phishing prohibition]." RCW 19.190.090(1).

9           As this Court reasoned in *Gragg IV*, the legislature's explicit creation of a direct cause of

10   action in the 2005 amendments shows that the "legislature obviously knew how to create a private

11   right of action under CEMA and chose to limit that action to injunctive relief when the wrongful

12   conduct involved commercial emails and texts." *Gragg IV*, 145 F. Supp. at 1052.  Because the

13   2005 amendments created the only direct cause of action available under the statute, and the

14   damage remedy under those amendments is expressly limited to phishing violations, the normal

15   rules of statutory construction reveal that a plaintiff may not recover damages for non-phishing

16   violations under CEMA.  This court should accordingly reject Plaintiff's request for damages

17   under CEMA and dismiss his claim as unavailable under the statute.

18   **V.     PLAINTIFF FAILS TO PLEAD A CLAIM UNDER THE WASHINGTON CPA**

19          Plaintiff also fails to make a claim upon which relief can be granted under the Washington

20   Consumer Protection Act, because he does not allege that Twilio engaged in an "unfair" act or

21   practice, and he does not sufficiently plead that he suffered injury to his business or property as a

22   result of the communications he received.  To successfully bring a private CPA action, plaintiffs

23   are required to show, among other things, that: "(1) That the defendant engaged in an unfair or

24   deceptive act or practice; (2) it caused injury to the plaintiff; and (3) the injury was to his business

25   or property." *Sorrel v. Eagle Healthcare, Inc.*, 38 P.3d 1024, 1028 (Wash. Ct. App. 2002) (citing

26   *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986)

27   (en banc)); *id.* ("Failure to satisfy even one of the elements is fatal to a CPA claim.").  Importantly,

28   "[t]he concerns that typically underlie the issue of 'standing' are already addressed by these

DEFENDANT'S MOTION TO DISMISS                         20
Case No.  2:16-cv-00914

elements, particularly the limitations imposed by the need to prove injury and public interest impact." *Stephens v. Omni Ins. Co.*, 159 P.3d 10, 23 (Wash. Ct. App. 2007), *aff'd sub nom. Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885 (Wash. 2009) (en banc).

First, Plaintiff has not alleged that Twilio engaged in an "unfair or deceptive" practice. In the absence of state law defining the term "unfair," Washington courts look to federal law for guidance. *See* 25 David K. DeWolf, Keller W. Allen & Darlene Barrier Caruso, Wash. Prac., Contract Law And Practice § 18:310.08 (3d ed. 2015) (courts are to "be guided by final decisions of the federal courts and final orders of the federal trade commission interpreting the various federal statutes" (quoting Wash. Rev. Code § 19.86.920)). In *Blake v. Federal Way Cycle Center*, 698 P.2d 578 (Wash. Ct. App. 1985), the court's decision was informed by FTC pronouncements that had been cited with approval by the federal courts, as well as the FTC's 1980 Policy Statement. *See id.* at 583. Accordingly, to sufficiently plead "unfair" practice, plaintiffs must satisfy a factual, objective standard, so as to "prevent every consumer complaint from becoming a triable violation of the act." *See Behnke v. Ahrens*, 294 P.3d 729, 736 (Wash. Ct. App. 2012).

Here, Plaintiff has not sufficiently alleged that Twilio engaged in an "unfair practice." First, as repeated throughout this brief, the only fact Plaintiff has directly alleged against Twilio, in connection with the actual communications in question, is that one text message came from a number associated with Twilio in some database. Plaintiff fails to allege any other factual details about the nature of the text message or call in question. His misunderstandings of Twilio's services and attacks portraying Twilio as a "robo-caller" or "text-blaster," without more, and in light of the fact that Twilio does not initiate messages or calls, are certainly insufficient to allege "unfair" practices. Permitting such a suit to go forward would do exactly what the Washington hopes to avoid, allowing "every consumer complaint" to turn into "a triable violation of the act." *Id.* If the present pleadings were sufficient to go forward in litigation, any person who received a text from a user of Twilio's platform would be able to walk into court with the hope of bringing a class action, as here. For example, any Uber rider who received a communication from an Uber driver about departure, arrival times, etc., would have an argument under the CPA. Again, Twilio provides cloud-based software that enables its users to craft applications for specialized

communications according to their design.  Nothing in Plaintiff's allegations regarding his receipt of the "Crevalor" text message suggests "unfair" practices on the part of Twilio.

Finally, as discussed above, *see supra* Section I, Plaintiff has not pleaded injury caused by the text.  Failing to show "unfair practices" or injury, Plaintiff's CPA claim should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, the Twilio Inc. respectfully request that the Court grant this Motion to Dismiss Plaintiff's Complaint in its entirety.

Dated:  July 15, 2016                      Respectfully submitted,

/s/  Duncan C. Turner
Duncan C. Turner, WSBA #20957
BADGLEY-MULLINS LAW GROUP PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
Telephone: (206) 621-6566
Facsimile: (206) 621-9686

Michael B. Hazzard (pro hac vice)
James W. Uthmeier (pro hac vice)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC  20001-2113
Telephone: (202) 879-3829
Facsimile: (202) 626-1700
Counsel for Defendant,
TWILIO INC.

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2016, I served a copy of the foregoing on the following parties via ECF filing:

Mark A. Griffin
Karin B. Swope
Keller Rohrback, LLP
1201 Third Avenue, Suite 3200
Seattle, WA 98101

June P. Hoidal
Zimmerman Reed, LLP
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55401

*/s/ Duncan C. Turner*
WSBA #20597

DEFENDANT'S MOTION TO DISMISS
Case No.  2:16-cv-00914

23

BADGLEY MULLINS TURNER, PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566