1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON**

9

10   NOAH WICK on behalf of himself and all othe
similarly situated,

Civil Action No. 2:16-cv-00914

11                    *Plaintiff*,

12            v.

13   TWILIO INC.,

14                    Defendant.

**DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED
COMPLAINT**

**NOTE ON MOTION CALENDAR:**
**September 16, 2016**

15

16

17

18

19            **[ORAL ARGUMENT REQUESTED]**

20

21

22

23

24

25

26

27

28

Bradley Mullins Turner, Pllc
19929 Ballinger Way Ne, Suite 200
Seattle, WA 98155
Tel 206.621.6566

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

TWILIO'S OFFERINGS ............................................................................................3

SUMMARY OF PLAINTIFF'S ALLEGATIONS .....................................................5

ARGUMENT ..............................................................................................................7

I.    PLAINTIFF LACKS ARTICLE III STANDING AND HIS CLAIMS SHOULD BE DISMISSED UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1) .................7

    A.    Plaintiff's Fails to Allege Cognizable Injury .........................................................8

    B.    Plaintiff Fails To Plead Twilio Caused Any Alleged Injury.................................10

    C.    Plaintiff Fails To Allege Redressability.................................................................11

II.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST TWILIO ...................................11

    A.    Legal Standard For Dismissal Under Rule 12(b)(6) .............................................11

    B.    Plaintiff Does Not Allege That Twilio Initiated Any Text Messages Or Calls .....12

          1.    The FCC Has Defined What It Means to Be an "Initiator" and Twilio Does Not Fall within That Definition .......................................................13

          2.    Federal Courts Have Upheld the FCC's View that Cloud-Based Platform Providers Are not "Initiators" Under the TCPA .......................................14

          3.    Plaintiff Does Not—and Cannot—Plead That Twilio Is an "Initiator" .....15

    C.    Plaintiff Has Not Plausibly Alleged That Twilio Used An ATDS And Therefore Twilio is Immune From Liability Under the TCPA.............................16

III.    EVEN IF PLAINTIFF COULD SUFFICIENTLY PLEAD FACTS TO SUPPORT APPLICATION OF THE TCPA, AS A MATTER OF LAW PLAINTIFF'S RELEASE OF HIS TELEPHONE NUMBER ESTABLISHED CONSENT FOR THE ONE TEXT MESSAGE HE ALLEGES HE RECEIVED…………………………….. 17

IV.    PLAINTIFF'S CEMA CLAIM SHOULD BE DISMISSED BECAUSE HE HAS NOT ALLEGED THAT THE TEXT HE RECEIVED WAS A COMMERCIAL COMMUNICATION....................................................................................................19

    A.    Plaintiff Has Not Sufficiently Pleaded That The Text Message or Call Were "Unsolicited Commercial Solicitations" As Is Required By Washington Law.....19

    B.    Plaintiff's Claims Under CEMA Should Be Dismissed Because There Is No Private Right of Action Under the Statute ...........................................................20

V.    PLAINTIFF FAILS TO PLEAD A CLAIM UNDER THE WASHINGTON CPA .........23

CONCLUSION..........................................................................................................24

DEFENDANT'S MOTION TO DISMISS
CASE NO.  2:16-CV-00914

i

BRADLEY MULLINS TURNER, PLLC
19929 BALLINGER WAY NE, SUITE 200
SEATTLE, WA 98155
TEL 206.621.6566

## TABLE OF AUTHORITIES

**Page**

CASES

*Aderhold v. Car2go N.A., LLC,*
No. C13-489RAJ, 2014 WL 794802 (W.D. Wash. Feb. 27, 2014)........................................18

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).............................................................................................................9, 11

*Baird v. Sabre Inc.,*
995 F. Supp. 2d 1100 ............................................................................................................18

*Behnke v. Ahrens,*
294 P.3d 729 (Wash. Ct. App. 2012)......................................................................................24

*Blake v. Federal Way Cycle Center,*
698 P.2d 578 (Wash. Ct. App. 1985)......................................................................................23

*Booth v. Appstack, Inc.,*
No. C13-1533JLR, 2016 WL 3030256 (W.D. Wash. May 25, 2016) ....................................10

*Clark v. Avatar Techs. PHL, Inc.,*
CIV No. H-13-2777, 2014 WL 309079 (S.D. Tex. Jan. 28, 2014).........................................13

*Faulkner v. ADT Sec. Servs., Inc.,*
706 F.3d 1017 (9th Cir. 2013) ................................................................................................9

*Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles,*
148 Wash. 2d 224 (2002).......................................................................................................21

*Gragg v. Orange Cab Co.,*
145 F. Supp. 3d 1046, 2015 WL 6870609 (W.D. Wash. 2015) ..................................19, 22, 23

*Gragg v. Orange Cab Co.,*
No. C12-0576RSL (W.D. Wash. April 22, 2016) ...................................................................19

*Hickey v. Voxernet LLC,*
887 F. Supp. 2d 1125 (W.D. Wash. 2012)..............................................................................20

*Hollingsworth v. Perry,*
133 S. Ct. 2652 (2013).............................................................................................................7

DEFENDANT'S MOTION TO DISMISS
CASE NO.  2:16-CV-00914

ii

BRADLEY MULLINS TURNER, PLLC
19929 BALLINGER WAY NE, SUITE 200
SEATTLE, WA 98155
TEL 206.621.6566

*Ikuseghan v. MultiCare Health Sys.*,
   No. C14-5539 BHS, 2015 WL 4600818 (W.D. Wash. July 29, 2015) .................................8

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
   7 FCC Rcd. 8752 (1992) ...............................................................................................8, 17

*Kauffman v. Callfire, Inc.*,
   141 F. Supp. 3d 1044, 1048 (S.D. Cal. Oct. 7, 2015) ...........................................12, 15

*LaCourt v. Specific Media, Inc.*,
   No. SACV 10-1256 ..........................................................................................................9

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .........................................................................................................7

*Luna v. Schac, LLC*,
   CIV NO. 14-cv-607-HRL, 2015 WL 4941781 (N.D. Cal. Aug. 19, 2015) ...............16, 17

*McKenna v. WhisperText*,
   No. 14-cv-424, 2015 WL 5264750 (N.D. Cal. Sept. 9, 2015) ...........................12, 14

*McLenan-Kenny v. Wa Dept. of Labor & Indus.*,
   No. C13-6026 RBL, 2014 WL 1648501 (W.D. Wa. Apr. 24, 2014) ...............................9

*Meier v. U.S.*,
   310 Fed. App'x 976 (9th Cir. 2009) ...............................................................................9

*Mendez v. C-Two Group, Inc.*,
   CIV No. C-13-5914-EMC, Order Granting Defendant MobileStorm's, Inc. .....................12

*Novak v. United States*,
   795 F.3d 1012 (9th Cir. 2015) .......................................................................................11

*Pinkard v. Wal-Mart Stores, Inc.*,
   No. 3:12-cv-02902-CLS, 2012 WL 5511039 (N.D. Ala. Nov. 9, 2012) .......................18

*Rinky Dink, Inc. v. Elec. Merch. Sys.*,
   Civ. No. 13-1347-JCC, 2015 WL 778065 (W.D. Wash. Feb. 24, 2015) .................12, 15

*Roberts v. PayPal, Inc.*,
   621 Fed. App'x 478 (9th Cir. 2015) .............................................................................18

*Romero v. Dep't Stores Nat'l Bank*,
   No.: 15-CV-193-CAB-MDD, 2016 WL 4184099 (S.D. Cal. Aug. 5, 2016) ...............9, 10

BRADLEY MULLINS TURNER, PLLC
19929 BALLINGER WAY NE, SUITE 200
SEATTLE, WA 98155
TEL 206.621.6566

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
    CG Docket No. 02-278, Declaratory Ruling ........................................................13

*Satterfield v. Simon and Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) ....................................................................12, 13

*Saunders v. NCO Fin. Sys.*,
    910 F. Supp. 2d 464 (E.D.N.Y. 2012) ............................................................18

*Sherman v. Yahoo! Inc.*,
    997 F. Supp. 2d 1129 (S.D. Cal. 2014)...........................................................18

*Smith v. Securus Techs., Inc.*,
    2015 WL 4636696 (D. Minn. Aug. 4, 2015) .............................................12, 14

*Sorrel v. Eagle Healthcare, Inc.*,
    38 P.3d 1024 (Wash. Ct. App. 2002)................................................................23

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016), *as revised* (May 24, 2016)......................................7, 10

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ..........................................................................11

*State ex rel. Evergreen Freedom Found. v. Wash. Educ. Ass'n*,
    140 Wash. 2d 615 (2000).................................................................................21

*State v. LG Elecs., Inc.*,
    185 Wash. App. 123 (2014)..............................................................................21

*Stephens v. Omni Ins. Co.*,
    159 P.3d 10 (Wash. Ct. App. 2007), *aff'd sub nom. Panag v. Farmers Ins. Co. of Wash.*,
    204 P.3d 885 (Wash. 2009) (en banc)..............................................................23

*Susan B. Anthony List v. Driehaus*,
    134 S. Ct. 2334 (2014).......................................................................................7

*Van Patten v. Vertical Fitness Grp.*,
    LLC, 22 F. Supp. 3d 1069, 1078 (S.D. Cal. 2014) ..........................................18

*Washington Envtl. Council v. Bellon*,
    732 F.3d 1131 (9th Cir. 2013) ..........................................................................11

*White Tail Park, Inc. v. Stroube*,
    413 F.3d 451 (4th Cir. 2005) ..............................................................................7

BRADLEY MULLINS TURNER, PLLC
19929 BALLINGER WAY NE, SUITE 200
SEATTLE, WA 98155
TEL 206.621.6566

*Wright v. Lyft, Inc.*,
 No. 14-CV-0042 (W.D. Wash. Apr. 15, 2015), ECF No. 63 at 10–11....................................20

STATUTES

Washington Consumer Protection Act, Revised Code of Washington §19.86.020 .............. passim

Telephone Consumer Protection Act, 47 U.S.C. § 227 ........................................................ passim

25 David K. DeWolf, Keller W. Allen & Darlene Barrier Caruso, Wash. Prac., Contract Law
 And Practice § 18:310.08 (3d ed. 2015) .................................................................................23

Washington's Commercial Electronic Mail Act, Revised Code of Washington Title 19,
 Chapter 19.190 (§§ 19.190.010 - 19.190.110)................................................................. passim

OTHER AUTHORITIES

FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1)........................................................................7, 10

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) .....................................................................6, 11, 19

Order, 30 FCC Rcd. 7961 (rel. Jul. 10, 2015)...........................................................2, 13, 14, 16

27 FCC Rcd. 15391 (2012).....................................................................................................16

http://hlth.co/xDoXEZ ......................................................................................................1, 5, 20

https://customers.twilio.com/208/uber/...................................................................................4

https://customers.twilio.com/214/airbnb/ ...............................................................................4

http://www.crevalor.com ......................................................................................................1, 5

DEFENDANT'S MOTION TO DISMISS
CASE NO.  2:16-CV-00914

v

BRADLEY MULLINS TURNER, PLLC
19929 BALLINGER WAY NE, SUITE 200
SEATTLE, WA 98155
TEL 206.621.6566

## **INTRODUCTION**

On February 12, 2016, Noah Wick ("Plaintiff") accessed the "Crevalor" website, www.crevalor.com, which offers a pre-workout supplement boasting to be a "powerful thermogenic" that leads to "explosive workouts." Plaintiff accessed the Crevalor website and submitted his name, address, and cellular phone number, hoping to obtain a free sample of the Crevalor product. After submitting his personal information to Crevalor, Plaintiff received a text message stating: "Noah, Your order at Crevalor is incomplete and about to expire. Complete your order by visiting http://hlth.co/xDoXEZ." The text did not require him to take any further action, and Plaintiff does not claim to have received any additional texts, calls, or other communications regarding Crevalor. Plaintiff alleges that he subsequently received a call from a telemarketer, but he offers no information about the call, who initiated it, or its subject matter.

Plaintiff claims that the Crevalor text he received came from a number listed in some "reverse white pages look-up" as associated with Twilio Inc. ("Twilio" or "Defendant"), and on that basis he brings this suit against Twilio. Plaintiff fails to plead any facts about what specific search database he used or how exactly he determined the number was associated with Twilio. Moreover, Plaintiff offers no facts regarding any interaction he had with Twilio. Yet he intends to bring a mammoth class action based on this one text—a text which on its face appears to be from Crevalor and was received only after he voluntarily submitted his personal information and cell number to Crevalor.com—and one call made by an unidentified party using an unidentified phone number with absolutely no association—reverse lookup or otherwise—to Twilio. Inexplicably, Plaintiff brings no action against Crevalor, the apparent source of his complaint.

Plaintiff alleges that Twilio, a cloud communications company, violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), Washington State Commercial Electronic Mail Act ("CEMA"), and Washington Consumer Protection Act ("CPA"), but he does not plead sufficient

DEFENDANT'S MOTION TO DISMISS
CASE NO.  2:16-CV-00914

1

BRADLEY MULLINS TURNER, PLLC
19929 BALLINGER WAY NE, SUITE 200
SEATTLE, WA 98155
TEL 206.621.6566

facts to support these claims.  To bring a successful TCPA claim, Plaintiff must show:  (1) Defendant *made* or was the *initiator* of the communications at issue—mere *transmission* is not actionable under the TCPA; (2) Defendant used an automatic telephone dialing system ("ATDS" or "auto-dialer") to make the communications; and (3) Plaintiff did not solicit or consent to the received communications. Plaintiff has not, and cannot, sufficiently plead any of these requirements.  Unsurprisingly, he has not adequately alleged that Twilio was the "initiator" of the text that he received, because Twilio does not, as a matter of law, "make" or "initiate" any communications; its customers (and its customer's customers) do.   The Federal Communications Commission's ("FCC") 2015 *TCPA Declaratory Ruling*, discussed *infra* at Section II.C., made clear that cloud-based software providers do not make or initiate calls when third parties use the platforms to do so.

Here, Twilio does not control the content, recipients, or timing of the communications made by its customers or third parties.  And Twilio does not have nor does it offer an ATDS; third parties aiming to use such technology must themselves write software code to create such functionality. Finally, even if Plaintiff could plead that Twilio was an "initiator" or "auto-dialer"—which he has not and cannot plead—the only communication that Plaintiff plausibly pleads has any connection to Twilio is the single Crevalor text allegedly sent to Plaintiff seeking follow-up information after he voluntarily released his number.  He consented to that alleged text.

Plaintiff's claims under CEMA and CPA also fail, because he has not sufficiently pleaded that the text was an unsolicited "commercial" communication, that Twilio engaged in an unfair practice, or that he was actually injured by the text.

Plaintiff, having failed to allege any facts sufficient to support a plausible finding of liability against Twilio, impermissibly turns to a broad stroke recitation of the elements of a TCPA claim to plead his case.  He draws far-reaching assumptions and speculative conclusions from Twilio's website in the hopes of making something stick in the absence of particular details surrounding what

DEFENDANT'S MOTION TO DISMISS
CASE NO.  2:16-CV-00914

2

BRADLEY MULLINS TURNER, PLLC
19929 BALLINGER WAY NE, SUITE 200
SEATTLE, WA 98155
TEL 206.621.6566

*actually* happened to him.  But Plaintiff does not have the law on his side, and he fails to plead facts sufficient to take this case outside the realm of squarely controlling FCC and federal case precedent. To the extent Plaintiff has suffered any harm as a result of the text and call he received, which seems very unlikely, he is undoubtedly suing the wrong party.

Following Twilio's initial Motion to Dismiss, Plaintiff attempted to salvage this lawsuit by amending his Complaint, but his amendments consist only of more narrowly selected cut-and paste extractions from Twilio's website and speculative opinions of Twilio's services taken from unreliable internet blogs written by unidentified authors.  These additions are not relevant to this Plaintiff's accounts, and they cannot overcome the factual and legal hurdles that stand in his way.  Notably, Plaintiff's amended Complaint, filed subsequent to his receipt of initial disclosures, brings no new claims against Crevalor or any other third party that may have utilized Twilio's application tools in connection with Plaintiff's phone number.  Indeed, Plaintiff's Amended Complaint reveals that he conducted no new investigation to determine who actually initiated the text that he received. Plaintiff's irrelevant website snippets and blog excerpts serve only to highlight the conclusory nature of his claims, and his case should be dismissed with prejudice.

## TWILIO'S OFFERINGS

As Plaintiff alleges, Twilio is a software company that "offers to its **clients** the ability to **initiate**" texts and calls to cell phones via a computer program.  Twilio provides an application program interface ("API"): a set of protocols and tools for building software applications, that enable third-party software developers to write software code which in turn allows them to create applications to make and receive calls, videos, and text messages.  Twilio only provides its products to a pre-determined group of users—software developers—and not to the general public.  As Twilio's website makes clear, its API offers what are best described as programming "tools," which are not sold in a "ready for use" format.  Rather, Twilio's customers, the software developers, and

DEFENDANT'S MOTION TO DISMISS
CASE NO.  2:16-CV-00914

3

BRADLEY MULLINS TURNER, PLLC
19929 BALLINGER WAY NE, SUITE 200
SEATTLE, WA 98155
TEL 206.621.6566

programmers, must design and implement their individualized computer coding and data to tailor the basic API tools to their specific needs and preferences.  Twilio offers the building blocks for communications, but the third-party developers give their application life.

Plaintiff describes Twilio as a "robo-calling service" and "automated messaging service," but these allegations constitute a blatant mischaracterization of the company and its services.  First Am. Compl. ¶5.  As discussed in Section II.B., *infra*, Twilio cannot and does not control all of the communications that are initiated using its software.  And as Plaintiff admits, texts and calls made using Twilio's platform are transmitted over third party servers.  *Id*.  Although Plaintiff selectively plucks several quotes from the Twilio website to weave into the conjectures in his First Amended Complaint, he fails to mention the sections of the website that discuss Twilio's clients—Uber, Coca Cola, Airbnb, and Nordstrom, among others—and their ground-breaking uses of Twilio's APIs to communicate with their consumers in a rapidly changing and data-intensive world.  For example, Uber's software developers have used the tools of the Twilio API to create a platform by which Uber can make millions of text and cell phone communications between Uber, its drivers, and riders about up-to-date status of drive times and ride requests. See *https://customers.twilio.com/208/uber/*.  Airbnb enables private residents to rapidly communicate with prospective renters about booking requests and lodging that best suits their needs.  *See https://customers.twilio.com/214/airbnb/*.  Though Twilio's API gives third party users the instrument through which they can smoothly coordinate communications, Twilio is certainly not controlling, designing, or initiating the texts or calls made by users like Uber, AirBNB, or its other customers.  As Twilio tells prospective users on its website, the platform will "Give **your** web and mobile apps the power to exchange messages of any variety," and messaging notifications can be designed to send alerts, notifications, etc. in a manner "depending on how each user would like to be notified."  The Twilio platform must be programmed and enlivened by clients to reach their desired recipients in the preferred time and method.

DEFENDANT'S MOTION TO DISMISS                    4
CASE NO.  2:16-CV-00914

BRADLEY MULLINS TURNER, PLLC
19929 BALLINGER WAY NE, SUITE 200
SEATTLE, WA 98155
TEL 206.621.6566

## SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff fails to allege facts sufficient to support a claim. Even if he could establish the veracity of each assertion in the Complaint, the allegations fail to demonstrate a violation of his statutory rights. In short, he asserts that Twilio violated the TCPA and Washington law when he received "one or two unsolicited calls and a text initiated by Twilio." First Am. Compl. ¶ 14.

First, Plaintiff asserts that on February 12, 2016, he accessed the website www.crevalor.com, which marketed a pre-workout supplement. First Am. Compl. ¶ 38. After accessing the website, Plaintiff entered his personal information—name, address, and cell phone number—into the webpage in the hopes of obtaining a free sample of the product. *Id*. He claims that he then received from Crevalor a follow-up text that stated, "Noah, Your order at Crevalor is incomplete and about to expire. Complete your order by visiting http://hlth.co/xDoXEZ." First Am. Compl. ¶ 39. Plaintiff contends that the number from which the follow-up text message originated was associated with Twilio in a "reverse white pages look-up." First Am. Compl. ¶ 40. He alleges no other details about how this "look-up" or any other information links the phone number to Twilio. Critically, Plaintiff does not plead any facts that describe who "made" or "initiated" the Crevalor text message, nor does he provide any information about how the content of the message was drafted, whether or not an ATDS was used in the communication, or what role Twilio played, if any, in the transmission of the message.

Next, Plaintiff claims that he received an "unsolicited telephone call" about "a free product" that Plaintiff was told "he had to order . . . immediately." First Am. Compl. ¶ 41. Plaintiff does not plead any facts about the identity of the caller, the telephone number that made the call, the type of product that was discussed, whether or not the call was made using an ATDS, or any other information regarding the technology or design of the call. He does not state that the call was in any way related to Crevalor. Plaintiff does not allege that Twilio was involved, in any capacity, in the making of the call. He does not even allege that the call came from a number associated with Twilio.

Because Plaintiff has not made any allegation that could link the telephone call to Twilio in any way, any claim based upon this telephone call should fail.

Plaintiff attempts to mask these deficiencies in his pleadings by prosecuting his complaint against Twilio's website.  He cherry-picks the website in an effort to make general, threadbare allegations of a TCPA claim's elements.  He broadly claims that Twilio initiates every one of its users' calls, determines the numbers that will receive texts, creates the texts themselves, and generates the list of numbers to be dialed.  Further, he similarly speculates without any facts that Twilio's APIs may auto-generate lists of recipient phone numbers for customers.  First Am. Compl. ¶¶ 18-37.  These bald claims are not taken from quotes on a website.  Indeed, Plaintiff's assertions constitute nothing more than his own flawed theory of computer programming.

First, Plaintiff's manipulation of the language on Twilio's website is not relevant.  In his complaint, as stated above, he provides no facts surrounding the text and call that he alleges he actually received.  Other than pleading that he received a text from a number associated with Twilio in an otherwise undisclosed "reverse white pages look-up," he provides no facts linking Twilio to Plaintiff and the text or call.  First Am. Compl. ¶ 40.  Plaintiff's piecemeal wordsmithing of the website represents exactly the kind of hypothetical allegations and preferred assumptions, not based on actual fact, that Rule 12(b)(6) prohibits.  But even if true, his tailored interpretations of the website cannot negate the fact that his First Amended Complaint, on its face, makes clear that Twilio is not an "initiator" of the communications.  Indeed, Plaintiff admits that Twilio's client program "enables **[its[ customers** to upload message text . . . to be used in an automated message campaign," and Twilio thus is not itself liable under the TCPA.  First Am. Compl. ¶ 19 (emphasis added). Accordingly, this case should be dismissed.

DEFENDANT'S MOTION TO DISMISS
CASE NO.  2:16-CV-00914

6

BRADLEY MULLINS TURNER, PLLC
19929 BALLINGER WAY NE, SUITE 200
SEATTLE, WA 98155
TEL 206.621.6566

1

## **ARGUMENT**

2

**I.    PLAINTIFF LACKS ARTICLE III STANDING AND HIS CLAIMS SHOULD BE DISMISSED UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1)**

3

4        This Court lacks jurisdiction over Plaintiff's claim.  "Article III of the Constitution confines

5    the judicial power of federal courts to deciding actual 'Cases' or 'Controversies.'"  *Hollingsworth v.*

6    *Perry*, 133 S. Ct. 2652, 2661 (2013) (quoting U.S. Const., art. III, § 2).  One "essential and

7    unchanging part of the case-or-controversy requirement of Article III" is the requirement that a

8    plaintiff has standing to sue.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  Because the

9    standing requirement is jurisdictional, a standing challenge is properly raised in a Rule 12(b)(1)

10   motion to dismiss.  *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005).  "To establish

11   Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection

12   between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be

13   redressed by a favorable decision.'"  *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014)

14   (quoting *Lujan*, 504 U.S. at 560–61).

15        To qualify as "concrete," an injury "must actually exist"; it must be "'real and not abstract.'"

16   *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), *as revised* (May 24, 2016).  "Article III

17   standing requires a concrete injury even in the context of a statutory violation," like the ones Plaintiff

18   alleges here.  *Id.*  Although Congress can statutorily identify and elevate intangible harms to create a

19   controversy, this "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement

20   whenever a statute grants a person a statutory right and purports to authorize that person to sue to

21   vindicate that right."  *Id.*  Bare procedural violations and conclusory allegations that a statute was

22   violated are therefore insufficient to satisfy the injury-in-fact requirement of Article III.  *Id.*  Here,

23   Plaintiff fails to satisfy his Article III burden.

24

25

26

27

28

### A.      Plaintiff's Fails to Allege Cognizable Injury

As an initial matter, Plaintiff has failed to allege injury, which is fatal to his claim of Article III standing.  The FCC has made clear that "persons who knowingly release their phone number have consented to be called at the number which they have given, absent instructions to the contrary."  *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8769 ¶ 31 (1992).  Plaintiff voluntarily provided his number when he accessed the Crevalor website to obtain a free sample. First Am. Compl. ¶ 38.  Thus, as a matter of law, Plaintiff expressly consented to be contacted about his Crevalor order, and he has failed to state a claim under the TCPA.

Even if Plaintiff had alleged an actual violation of the TCPA, his failure to allege actual harm under the statute forecloses Article III standing.  Although "a violation of the TCPA may serve as a concrete injury for Article III standing," plaintiffs must plead actual harm.  *Ikuseghan v. MultiCare Health Sys.*, No. C14-5539 BHS, 2015 WL 4600818, at *2 (W.D. Wash. July 29, 2015).  Here, Plaintiff has not done so.  Plaintiff mechanically pleads five injuries as his basis for standing:  (1) economic injury caused by having to pay per text or call or having a usage allocation deduction from his cell phone plan for each text or call; (2) a trespass on Plaintiff's right to use his property without interference during the receipt of the text; (3) an invasion of Plaintiff's privacy and seclusion; (4) the time wasted addressing, reading, and answering the text; and (5) the risk of personal injury due to the interruption and distraction of receiving the text. First Am. Compl. ¶¶ 59-62.  Plaintiff has failed, however, to plead these injuries with sufficient specificity to establish Article III standing.

First, the Amended Complaint does not contain a single allegation that Plaintiff's cell phone plan requires him to pay per text or call, or that his plan deducts from his usage allocation for each call or text message.  Without allegations that his ability to use his own cell phone plan was actually diminished, or that he was required to spend additional money as a result of the text he allegedly received, Plaintiff has failed to plead that he suffered a cognizable economic harm.  Instead, he pleads

DEFENDANT'S MOTION TO DISMISS
CASE NO.  2:16-CV-00914

8

BRADLEY MULLINS TURNER, PLLC
19929 BALLINGER WAY NE, SUITE 200
SEATTLE, WA 98155
TEL 206.621.6566

only "threadbare recitals of the elements of a [TCPA] cause of action," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), which are insufficient to survive this motion.

Second and third, Plaintiff's allegations of interference with the use of his property and invasion of his privacy are not concrete injuries for the purpose of Article III standing. "Invasion of privacy and trespass to chattels are torts, not injuries in and of themselves. Injury is merely an element of these claims." Moreover, with respect to a claim of trespass. . ., the injury or damage must be with respect to the plaintiff's interest in the personal property, not to the plaintiff herself." *Romero v. Dep't Stores Nat'l Bank*, No.: 15-CV-193-CAB-MDD, 2016 WL 4184099, at *4 (S.D. Cal. Aug. 5, 2016). Here, Plaintiff does not allege that the alleged text message caused any damage to his cell phone. His allegations therefore do not establish Article III standing.

The alleged injury to Plaintiff's privacy interest alternatively fails because his inquiry initiated the single text at issue in this case. Before finding an invasion of privacy, courts require a showing that the plaintiff had a legitimate expectation of privacy. *See, e.g., Meier v. U.S.*, 310 Fed. App'x 976, 979 (9th Cir. 2009) (holding that plaintiff failed to establish an invasion of privacy where he had "no reasonable expectation of privacy"); *McLenan-Kenny v. Wa Dept. of Labor & Indus.*, No. C13-6026 RBL, 2014 WL 1648501, at *3 (W.D. Wa. Apr. 24, 2014) (same). Here, Plaintiff has not alleged that he had any legitimate expectation of privacy in his cell number. Indeed, by entering his cell number and seeking follow-up by Crevalor, Plaintiff provided *express consent* to be contacted. First Am. Compl. ¶ 38. *See, e.g., Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013) (requiring a showing of lack of consent before finding a privacy violation). Plaintiff therefore has failed to plead injury to his privacy interest because he invited the communication at issue in this case.

Fourth, any time allegedly wasted by Plaintiff while addressing the single text message at issue in this case is *de minimis* and thus is insufficient to confer Article III standing. *See, e.g., LaCourt v. Specific Media, Inc.*, No. SACV 10-1256 GW JCGX, 2011 WL 1661532, at *5 (C.D. Cal.

Apr. 28, 2011) (where plaintiffs alleged that the installation of a program diminished their computers' functionality, holding that "maybe Plaintiffs have alleged some *de minimis* injury, but probably not one that would give rise to Article III standing").   This case is not an example of "massive" or "widespread" calling; Plaintiff has pleaded only one text sent in response to an inquiry he initiated. *See, e.g., Booth v. Appstack, Inc.*, No. C13-1533JLR, 2016 WL 3030256, at *5 (W.D. Wash. May 25, 2016).   And Plaintiff has failed to allege how the receipt of a text could disrupt the usage of his mobile device.   Plaintiff was not forced to read or respond to the message, and his phone remained fully functional while the text was being received.

Finally, Plaintiff's claim that he was put at risk of personal injury due to the interruption and distraction caused by the text message does not satisfy Article III's injury requirement.   Crucially, Plaintiff does not connect his claimed increased risk of personal injury with the use of an ATDS to send the text message. *Romero*, 2016 WL 4184099, at *5.   "Put differently, Plaintiff does not offer any evidence demonstrating that [the] use of an ATDS to [text his] number caused [him a] greater [risk of personal injury] than [he] would have suffered had the [texts he received] been [sent] manually, which would not have violated the TCPA." *Id.*   Therefore, Plaintiff did not suffer a factual injury traceable to a TCPA violation, and he thus lacks Article III standing.   Without an actual injury, Plaintiff alleges nothing more than a bare violation of the TCPA, and his Amended Complaint must be dismissed under Rule 12(b)(1). *Spokeo,* 136 S. Ct. at 1549   ("Article III standing requires a concrete injury even in the context of a statutory violation").

## B.     Plaintiff Fails To Plead Twilio Caused Any Alleged Injury

Plaintiff also has not sufficiently pleaded that Twilio caused his alleged injuries, and his First Amended Complaint should be dismissed for a lack of Article III standing on that basis alone. Fatally, the Amended Complaint does not plead causation with respect to the text message. Plaintiff's only claim is that some "reverse white pages look-up" associated the number with Twilio.

DEFENDANT'S MOTION TO DISMISS                   10
CASE NO.  2:16-CV-00914

BRADLEY MULLINS TURNER, PLLC
19929 BALLINGER WAY NE, SUITE 200
SEATTLE, WA 98155
TEL 206.621.6566

To name only a few of the flaws in Plaintiff's fractured chain of causation:  (1) Plaintiff does not specify any Twilio involvement; (2) he does not allege how the text was sent; (3) he does not allege whether the text was sent using an ATDS; (4) he does not allege any relationship between Twilio and Crevalor; and (5) he does not allege that Twilio determined the content of the text.  Instead, Plaintiff strings together self-serving extracts from Twilio's website, but none of them connect Twilio to the specific text at issue here.  First Am. Compl. ¶¶ 18-37.  Plaintiff has failed to allege facts sufficient to support a causal connection between Twilio and the text he allegedly received.  *Novak v. United States*, 795 F.3d 1012, 1018 (9th Cir. 2015).

### C.     Plaintiff Fails To Allege Redressability

Because Plaintiff has failed to plead both an injury and a causal link between that injury and Twilio's conduct, he necessarily has not satisfied Article III's redressability requirement.   To sufficiently plead redressability, Plaintiff must show a "connection between the alleged injury and requested judicial relief."  *Washington Envtl. Council v. Bellon*, 732 F.3d 1131, 1146 (9th Cir. 2013).  Here, Plaintiff requests relief in the form of a declaratory judgment that Twilio violated the law, equitable relief enjoining Twilio's allegedly unlawful conduct, and monetary damages.  First Am. Compl., at p. 22.  But because Plaintiff has failed to plead that Twilio caused him any cognizable injury, his requested relief cannot remedy his non-existent injuries.

## II.     PLAINTIFF FAILS TO STATE A CLAIM AGAINST TWILIO

### A.     Legal Standard For Dismissal Under Rule 12(b)(6)

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Plaintiff's factual allegations must "give fair notice," "enable the [defendant] to defend itself effectively," and plead sufficient details to ensure that it is "not unfair to require the [defendant] to be subjected to the expense of discovery and continued litigation."  *Starr v. Baca*, 652 F.3d 1202, 1216

(9th Cir. 2011); *see Smith v. Securus Techs., Inc.*, 2015 WL 4636696 (D. Minn. Aug. 4, 2015) (dismissing complaint that did "not specifically allege that the [defendant's] system somehow selected and dialed [the phone numbers] by some automated process"). Plaintiff's attempt to salvage this lawsuit by amendment consists of nothing more than additional mischaracterizations of Twilo's website, which further reinforces the conclusory nature of his claims.

### B.  Plaintiff Does Not Allege That Twilio Initiated Any Text Messages Or Calls

Plaintiff's apparent theory of the case is that any entity remotely related to the transmission of a text or call may be held liable under the TCPA. Plainiff is wrong. The TCPA was only "intended to 'apply to the persons *initiating* the telephone call or sending the message and . . . not to the [party] that transmits the call or messages and that is not the originator or controller of the content of the call or message.'" *See* 47 U.S.C. § 227(b)(1)(A) ("It shall be unlawful for any person . . . to ***make*** any call . . ..") (emphasis added); *see also Rinky Dink, Inc. v. Elec. Merch. Sys.*, Civ. No. 13-1347-JCC, 2015 WL 778065, *4 (W.D. Wash. Feb. 24, 2015) (citing *Couser v. Pre-paid Legal Services, Inc.*, 994 F. Supp. 2d 1100, 1104 (S.D. Cal. 2014)); *Satterfield v. Simon and Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("[U]sers of [telecommunications] services, not the carriers providing the services, [are] held liable"); *Kauffman v. Callfire, Inc.*, 141 F. Supp. 3d 1044, 1048 (S.D. Cal. Oct. 7, 2015).

At the motion to dismiss phase, courts reject a plaintiff's TCPA action where the defendant is not an initiator of the communications at issue as a matter of law. *See Mendez v. C-Two Group, Inc.*, CIV No. C-13-5914-EMC, Order Granting Defendant MobileStorm's, Inc.'s Motion to Dismiss (N.D. Cal. Apr. 21, 2014) (dismissing action against software provider because plaintiff failed to allege that defendant controlled the initiation of its customers' messages); *Smith v. Securus Technologies, Inc.*, 20150 WL 4636696 (D. Minn. Aug. 4, 2015) (dismissing case where defendant provided services that enabled prison inmates to make phone calls, but plaintiffs did not allege that defendant selected call recipients or dialed numbers by an automated process); *McKenna v. WhisperText*, No. 14-cv-424,

---

DEFENDANT'S MOTION TO DISMISS
CASE NO.  2:16-CV-00914

12

BRADLEY MULLINS TURNER, PLLC
19929 BALLINGER WAY NE, SUITE 200
SEATTLE, WA 98155
TEL 206.621.6566

2015 WL 5264750 (N.D. Cal. Sept. 9, 2015); *Clark v. Avatar Techs. PHL, Inc.*, CIV No. H-13-2777, 2014 WL 309079 (S.D. Tex. Jan. 28, 2014).   Here, Twilio offers a cloud-based communications platform that allows third parties to transmit voice, text, and video messages through software applications.   Twilio does not itself initiate calls or text messages and in no way controls the content, recipients, or timing of the communications.   Therefore, Twilio is not an "initiator" of its users' text messages or calls and thus cannot be subject to liability for alleged violations under the TCPA.

### 1.   The FCC Has Defined What It Means to Be an "Initiator" and Twilio Does Not Fall within That Definition

As a communications platform, Twilio's practices are regulated by the Federal Communications Commission ("FCC").   Enacted in 1991 before the advent of SMS text messaging, the TCPA originally prohibited only unsolicited phone calls and fax transmissions.   The FCC subsequently extended the TCPA's definition of "calls" to include text messaging.   *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952-954 (9th Cir. 2009) (citing *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14014, 14115 (July 3, 2003)).   Just last year, the FCC clarified that companies providing cloud based services that transmit others' texts are not liable for TCPA violations because they do not generally "make" calls.   See *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Declaratory Ruling and Order, 30 FCC Rcd. 7961 (rel. Jul. 10, 2015) ("*TCPA Declaratory Ruling*").

In that 2015 ruling, the FCC reaffirmed that "Congress . . . put the responsibility for compliance with the [TCPA] *directly* on the party that 'makes' or 'initiates' automated and prerecorded message calls."   *Id.* at 7979, ¶ 29.   Under the law, a software platform provider "does not make or initiate a text when [its customer] merely uses the [software]" to initiate text messages that the *customer or user controls.   Id.* at 7978, ¶25.   The FCC explained that a software application provider, like Twilio, is not an "initiator" where "the app user determines whether to send the . . . text

messages" and the platform provider "*does not control* the recipients, timing, or content" of the messages." *Id.*  In other words, when a provider like Twilio "exercises no discernible involvement in deciding whether, when, or to whom [a message] is sent, or what [the message] says," there is no TCPA liability.  *Id.* at 7981, ¶ 32.  The FCC further stated:

> [T]he app user's actions and choices effectively program the cloud-based dialer to such an extent that he or she is so involved in the making of the call as to be deemed the initiator of the call.  [The provider] is not the maker or initiator of the . . . text messages because it is not programming its cloud-based dialer to dial any call, but 'merely has some role, however minor, in the causal chain that result in the making of a telephone call.

*Id.* (emphasis added) (citations omitted).

## 2. Federal Courts Have Upheld the FCC's View that Cloud-Based Platform Providers Are not "Initiators" Under the TCPA

Following the FCC's clear definition of TCPA call and message "initiation" in 2015, federal courts have consistently upheld that definition.  Citing the 2015 ruling, courts have repeatedly concluded that software application providers cannot be held responsible for unlawful messaging made by the applications' subscribers except in the unusual circumstances where the underlying service provider actually controls the content, timing, and recipients of its messages.

In *Kauffman*, the court thoroughly discussed the FCC's 2015 ruling and determined that the defendant Callfire, the provider of an internet-based communication platform, was not an "initiator" when it "required its users to take affirmative steps to determine whether, when, and to whom they would send text messages" and its customers had to "create their own telephone contact lists."  2015 WL 778065 at *1048.  Similarly, in *Payton v. Kale Realty, LLC*, the court applied the FCC's analysis to hold that defendant VoiceShot "did not have any role in creating the content of the text message allegedly received by plaintiff," and VoiceShot required its customers to "specify the telephone numbers to which the message will be transmitted."  2016 WL 703869, *5-6 (N.D. Ill. Feb. 22, 2016); *see also Securus*, 2015 WL 4636696; *McKenna*, 2015 WL 5264750.  This precedent makes clear that Plaintiff has not sufficiently pleaded facts to support the conclusion that Twilio initiated the text

message in question.  Indeed, Plaintiff alleges only that he received one text regarding his Crevalor order, and that some "reverse look-up" directory associated the phone number with Twilio.

### 3.    Plaintiff Does Not—and Cannot—Plead That Twilio Is an "Initiator"

Like the numerous other service providers discussed above that have been deemed immune from TCPA liability by the FCC and federal courts, Twilio is merely the provider of a communications transmission application, and mere transmission is not actionable under the TCPA. And Plaintiff cannot be permitted to sue every entity in the call flow in the hopes of surviving a motion to dismiss and sorting it all out later after costly discovery.

As discussed above, *supra* at 1, Plaintiff pleads only that the phone number from which the text originated was associated with Twilio in some "reverse white pages look-up" database.  He pleads absolutely no facts connecting Twilio to the call he allegedly received.  He pleads no factual allegations to suggest that Twilio had any involvement in "selecting the content, timing, and recipients" of the message or call, as is required by law to support TCPA liability.  *Kauffman*, 141 F. Supp. 3d at 1050.  In the absence of pleadings showing "a high degree of involvement" in the making of a call, or "actual notice of an illegal use and failure to take steps to prevent [illegal] transmissions"—of which Plaintiff here pleads none—service providers are not deemed to have initiated the messages.  *Rinky Dink*, 2015 WL 778065 at *7 (citation omitted).

Indeed, Plaintiff splices and mischaracterizes quotes from Twilio's website in the hopes of implicating Twilio in the transmission of texts and calls, but the facts, even if taken as true, do not support a conclusion that Twilio controls its customers' communications—let alone the single text from Crevalor to Plaintiff.  For example, Plaintiff repeatedly emphasizes that Twilio will help customers "find exactly the right person to **help you** build the Twilio solution you need," and Twilio "**allows its customers**" to "send SMS as fast as **you like**."  First Am. Compl. ¶¶ 28, 33 (emphasis added).  The users of Twilio's application platforms thus have sole control over content, recipients,

DEFENDANT'S MOTION TO DISMISS
CASE NO.  2:16-CV-00914

15

BRADLEY MULLINS TURNER, PLLC
19929 BALLINGER WAY NE, SUITE 200
SEATTLE, WA 98155
TEL 206.621.6566

and timing of messages; Plaintiff's Amended Complaint does not dispute this fact.   Twilio's customers—software developers—must affirmatively write software to meet their individualized messaging preferences and execute transmissions to use Twilio at all.   Accordingly, Plaintiff's other accusations about Twilio's potential programming capabilities and speculative assumptions on ways that "numbers *may* be generated" are not relevant.   First Am. Compl. ¶34.   And these allegations certainly are not relevant to the single text message alleged here, which was received by Plaintiff after he voluntarily provided Crevalor with his phone number.   Thus, because Plaintiff does not plead that Twilio was an "initiator" of the communications, his Amended Complaint cannot survive this motion.

### C.   Plaintiff Has Not Plausibly Alleged That Twilio Used An ATDS And Therefore Twilio is Immune From Liability Under the TCPA

In addition to failing to plead that Twilio initiated the text and call in question, Plaintiff also fails to plead facts showing the communications he received utilized an ATDS.   Only one text is presented in this case—a text Plaintiff received after he submitted his number to Crevalor.   In the its 2015 ruling, the FCC reaffirmed that "the basic functions of an autodialer are to '**dial** numbers **without human intervention**' *and* to 'dial thousands of numbers in a short period of time.'"   *TCPA Declaratory Ruling* at 7974, ¶ 17 (emphasis added) (citations omitted).   A single text provides no basis for alleging use of an ATDS.   Plaintiff's claim fails.

But even if Plaintiff had alleged bulk dialing, that allegation alone would still not be sufficient to constitute ATDS.   The TCPA covers only "equipment that has the specified capacity to generate numbers and dial them *without human intervention*."   27 FCC Rcd. 15391, 15392, n. 5 (2012) (emphasis added); *see also Glauser*, 2015 WL 475111 at *6 (the "capacity to dial numbers without human intervention is required" for TCPA liability).   And case law confirms that where a communication application's subscribers cannot *initiate* messages except through their own human intervention, the application platforms are not ATDS as a matter of law.   *See Luna v. Schac, LLC*, CIV NO. 14-cv-607-HRL, 2015 WL 4941781, *4 (N.D. Cal. Aug. 19, 2015) (holding that defendant

CallFire's web-based telephone service was not an ATDS because its subscribers had to take several affirmative "human" actions, including "transferring of the telephone number into the CallFire database, drafting the message, determining the timing of the message, and clicking 'send' on the website to transmit the message to Plaintiff"). Here, there is nothing in the Amended Complaint that could plausibly suggest an ATDS was used to send Plaintiff the alleged text and call at issue. As described above, Twilio provides its customers with access to API that *are not* immediately ready for use; software programmers must use the tools provided and incorporate specific code and data for individualized use. Substantial human intervention is therefore necessary before even beginning to transmit any messages using Twilio's platform.

And as discussed in Section I.B, *supra*, Plaintiff has pleaded no facts to suggest that Twilio initiated either the text or call. Because Twilio is not an initiator of calls or texts, it cannot plausibly be considered a user of an ATDS. *Luna*, 2015 WL 4941781, at *4. A third party is needed to transfer the desired recipient phone number(s) into a database, draft the message, and choose when to transmit the message. These are all "human actions" that must accompany the initial tools Twilio offers through its platform. Therefore, because initiating a text is only actionable under the TCPA if it is sent via an ATDS, and Plaintiff failed to plead any facts sufficient to suggest that the text and call in question were sent via an ATDS, his claims against Twilio should be dismissed.

## III. EVEN IF PLAINTIFF COULD SUFFICIENTLY PLEAD FACTS TO SUPPORT APPLICATION OF THE TCPA, AS A MATTER OF LAW PLAINTIFF'S RELEASE OF HIS TELEPHONE NUMBER ESTABLISHED CONSENT FOR THE ONE TEXT MESSAGE HE ALLEGES HE RECEIVED

Plaintiff's TCPA challenge is alternatively foreclosed by the fact that he provided express consent to receive the text in this case. The FCC has stated in no uncertain terms that "persons who knowingly release their phone number have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8769 ¶

BRADLEY MULLINS TURNER, PLLC
19929 BALLINGER WAY NE, SUITE 200
SEATTLE, WA 98155
TEL 206.621.6566

31 (1992). And "federal courts have consistently concluded that when a customer provides a company his or her phone number in connection with a transaction, he or she consents to receiving calls about that transaction." *Sherman v. Yahoo! Inc.*, 997 F. Supp. 2d 1129, 1133 (S.D. Cal. 2014); *see also Roberts v. PayPal, Inc.*, 621 Fed. App'x 478, 479 (9th Cir. 2015) (affirming conclusion that the plaintiff expressly consented to receiving texts from PayPal by providing his cellular number while accessing the PayPal website); *Saunders v. NCO Fin. Sys.*, 910 F. Supp. 2d 464, 467 (E.D.N.Y. 2012) ("[T]he authorities are almost unanimous that voluntarily furnishing a cell phone number to a vendor or other contractual counterparty constitutes express consent."); *Van Patten v. Vertical Fitness Grp.*, LLC, 22 F. Supp. 3d 1069, 1078 (S.D. Cal. 2014) (finding that plaintiff "consented to receiving the texts at issue when he provided his phone number upon joining the gym"); *Pinkard v. Wal-Mart Stores, Inc.*, No. 3:12-cv-02902-CLS, 2012 WL 5511039, at *5 (N.D. Ala. Nov. 9, 2012) (stating that the plaintiff's providing her telephone number was "clear and unmistakable consent to be contacted at that number" and "[t]o hold otherwise would contradict the overwhelming weight of social practice").

Here, Plaintiff voluntarily provided his cell number when he accessed the Crevalor website on February 12, 2016 to obtain a free sample of "Crevalor." First Am. Compl. ¶ 38. Thus, as a matter of law, Plaintiff expressly consented to be contacted about that free sample. Plaintiff alleges that he "did not expect to, and did not provide prior express written consent to, receive this text message." First Am. Compl. 40. But the overwhelming weight of legal authority confirms that as a matter of law Plaintiff's voluntarily provision of his cell number constituted express consent to receive the text at issue in this case. *See, e.g., Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100, 1107 (finding that the plaintiff "knowingly release[d]" her cell number to an airline and thus had "consented to be contacted on her cell phone about flight-related matters"); *Aderhold v. Car2go N.A., LLC*, No. C13-489RAJ, 2014 WL 794802, at *8 (W.D. Wash. Feb. 27, 2014) (stating that "[e]ven if [defendant] had made no

DEFENDANT'S MOTION TO DISMISS
CASE NO.  2:16-CV-00914

18

BRADLEY MULLINS TURNER, PLLC
19929 BALLINGER WAY NE, SUITE 200
SEATTLE, WA 98155
TEL 206.621.6566

disclosures at all about the purposes for which it would use [plaintiff's] cellular number, it defies logic to contend that he did not consent to be contacted regarding his membership application").

And as discussed in Section I.B., *supra*, Plaintiff does not allege that the voice call he received came from Twilio; he alleges only that he received one text message from a number assigned to Twilio. Plaintiff alleges the text informed him that his "order at Crevalor is incomplete and about to expire." First Am. Compl. ¶ 39. The alleged text Plaintiff describes was therefore made after Plaintiff voluntarily provided his phone number and in response to his attempt to obtain a free sample of Crevalor. Plaintiff's own factual allegations, which must be accepted as true for the purposes of this Rule 12(b)(6) motion, thus provide a complete defense. On this basis alone, Plaintiff's Amended Complaint should be dismissed in its entirety.

## IV. PLAINTIFF'S CEMA CLAIM SHOULD BE DISMISSED BECAUSE DOES NOT ALLEGE THAT THE TEXT WAS A COMMERCIAL COMMUNICATION

Plaintiff's allegations similarly fail to state a claim under Washington's Commercial Electronic Mail Act ("CEMA"). CEMA provides that "[n]o person conducting business in the state may initiate or assist in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident for cellular telephone or pager service . . . ." Wash. Rev. Code § 19.190.060(1) (2016). CEMA requires that Plaintiff's allegations include sufficient pleadings of fact to show that the text was a "commercial" communication. He has not sufficiently alleged a commercial communication therefore his CEMA claim must be dismissed.

### A. Plaintiff Has Not Sufficiently Pleaded That The Text Message or Call Were "Unsolicited Commercial Solicitations" As Is Required By Washington Law

CEMA only applies to "commercial" communications. Wash. Rev. Code § 19.190.060(1) (2016). Under Washington law, "commercial" means that the text must be "sent to promote real property, goods, or services for sale or lease." *Gragg v. Orange Cab Co.* ("*Gragg IV*"), 145 F. Supp. 3d 1046, 2015 WL 6870609, at *1 (W.D. Wash. 2015) (quoting Wash. Rev. Code § 19.190.010(5)).

DEFENDANT'S MOTION TO DISMISS
CASE NO.  2:16-CV-00914

19

BRADLEY MULLINS TURNER, PLLC
19929 BALLINGER WAY NE, SUITE 200
SEATTLE, WA 98155
TEL 206.621.6566

The test is whether the text would be understood as "intend[ing] to offer property, goods, or services for sale either during the [communication], or in the future." *Id.* (quoting *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).   Under Washington law, an text is never deemed "commercial" if the property, goods, or services promoted are "free."   *See Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1132–33 (W.D. Wash. 2012) (explaining that a text advertisement to download an application was not "commercial" for purposes of CEMA because the download was free); Order, *Wright v. Lyft, Inc.*, No. 14-CV-0042, (W.D. Wash. Apr. 15, 2015), ECF No. 63 at 10–11 (explaining that, in *Hickey*, "there was no *sale* of a product or services to promote").

Here, the specific text message that Plaintiff alleges he received from the number assigned to Twilio was not an "electronic commercial text message" within the meaning of Wash. Rev. Code § 19.190.060(1).  First, based on its face and a "common sense reading" of the text message, it cannot be interpreted as an intent to offer goods or services "for sale."   The informational text does not describe any specific products, services, prices, promotional offers or other solicitations.  It stated: "Noah, Your order at Crevalor is incomplete and about to expire. Complete your order by visiting http://hlth.co/xDoXEZ."  First Am. Compl. ¶ 39.  The text is plainly a follow-up to "an order" that "is incomplete."  Second, the text was "not commercial" because it was dealing with a free product.  As Plaintiff has stated, he received the text message because he had given his "name, address, and cell phone number" to receive a "**free sample**" of a pre-workout supplement, and the text message itself was a reminder to complete his order (for the free sample).  *See* First Am. Compl. ¶ 38.  Because this text message is not "commercial" as a matter of law, *see Hickey*, 887 F. Supp. 2d at 1132; *Wright*, No. 14-CV-0042, at 10–11, Plaintiff does not state a claim upon which relief can be granted under CEMA.

### B.   Plaintiff's Claims Under CEMA Should Be Dismissed Because There Is No Private Right of Action Under the Statute

Plaintiff's claim for damages under CEMA should be dismissed because the Washington Supreme Court is likely to agree with this Court that there is no private right of action under the

statute.  In *Gragg IV*, this Court determined that a plaintiff may obtain only injunctive relief under CEMA, not monetary damages.  2015 WL 6870609, at *5 ("[T]he Court finds that plaintiff may bring a claim for injunctive relief under CEMA, but he may not recover damages under that statute."). Shortly thereafter, however, the court stayed the proceedings pending the Washington Supreme Court's consideration of: (1) whether CEMA provides a private right of action for damages for a violation of the statute; AND (2) whether CEMA's liquidated damages provision, Wash. Rev. Code § 19.190.040(1), *per se* establishes the fourth and fifth elements of a CPA claim (causation and injury), *See* Order Denying Mot. for Certification Under § 1292(b) and Certifying Issues to Wash. S. Ct., *Gragg v. Orange Cab Co.*, No. C12-0576RSL (W.D. Wash. April 22, 2016).  The state supreme court is currently considering whether CEMA even provides a private right of action like plaintiff alleges.

But CEMA's text and history show that this Court was correct: the statute provides only a limited right to injunctive relief.  And the Washington Supreme Court is likely to agree.  In resolving disputes of statutory construction, Washington courts seek "to execute the Legislature's intent, which must be primarily determined from the language of the statute itself. When a statute's words are plain and unambiguous, this Court is required to assume the Legislature meant what it said and apply the statute as written."  *State ex rel. Evergreen Freedom Found. v. Wash. Educ. Ass'n*, 140 Wash. 2d 615, 630–31 (2000). "The first role of a court is to examine the language of a statute while adhering to the Legislature's intent and purpose in enacting it."  *Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles*, 148 Wash. 2d 224, 239–40 (2002).  In deriving the legislature's intent, courts consider "the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *State v. LG Elecs., Inc.*, 185 Wash. App. 123, 132 (2014).

When the Washington state legislature first passed CEMA in 1998, the statute did not contain any language authorizing a private right of action directly under the statute.  Instead, the legislature

21

provided that a claim for a violation of CEMA could be pursued under the CPA.  RCW 19.190.030(1).  The text of the original CEMA statute—and its legislative history—both show that the legislature equated sending an unlawful email with a violation of the CPA.  RCW 19.190.030(1); Wash. Final Bill Rep., 1998 Reg. Sess. H.B. 2752 (Apr. 6, 1998) ("[A] violation of the Consumer Protection Act occurs when a sender" sends an unlawful email message.).  Therefore, as this court correctly concluded in *Gragg IV*, "in the absence of any language creating a private right of action under CEMA and in light of the statutory and legislative declarations that a violation of CEMA is a violation of the CPA, the original enactment cannot reasonably be construed as giving rise to a cause of action under CEMA."  145 F. Supp. at 1051.

Similarly, when the legislature enacted the commercial text message provisions of CEMA in 2003, it did not provide for a direct cause of action.  In summarizing the new legislation, the Final Bill Report states that violation of the text message provisions is a violation of the CPA, which shows that the legislature again intended for plaintiffs to pursue claims for violations of CEMA through the private right of action available under the CPA, and not under CEMA itself.  *See* Wash. Final Bill Rep., 2003 Reg. Sess. H.B. 2007 (June 27, 2003).

In 2005, however, when the statute was amended to include a prohibition against phishing, the legislature included—for the first time in the statute's history—an explicit private right of action under CEMA.  The amendments stated:  "A person who is injured under this chapter may bring a civil action in the superior court to enjoin further violations . . . .  A person who seeks damages under this subsection may only bring an action against a person or entity that directly violates RCW 19.190.080 [the phishing prohibition]." RCW 19.190.090(1).

The legislature's explicit creation of a direct cause of action in these amendments shows that the "legislature obviously knew how to create a private right of action under CEMA and chose to limit that action to injunctive relief when the wrongful conduct involved commercial emails and texts."

DEFENDANT'S MOTION TO DISMISS
CASE NO.  2:16-CV-00914

22

BRADLEY MULLINS TURNER, PLLC
19929 BALLINGER WAY NE, SUITE 200
SEATTLE, WA 98155
TEL 206.621.6566

*Gragg IV*, 145 F. Supp. at 1052.  And because the damage remedy under the 2005 amendments is expressly limited to phishing violations, the normal rules of statutory construction confirm that a plaintiff may not recover damages for non-phishing violations under CEMA.  This court should accordingly reject Plaintiff's request for damages under CEMA and dismiss his claim.

## V.      PLAINTIFF FAILS TO PLEAD A CLAIM UNDER THE WASHINGTON CPA

Plaintiff also fails to state a claim under the Washington Consumer Protection Act, because he does not allege that Twilio engaged in an "unfair" act or practice, and he does not sufficiently plead that he suffered injury to his business or property as a result of the communications he received.  To successfully bring a private CPA action, plaintiffs are required to show, among other things, that: "(1) That the defendant engaged in an unfair or deceptive act or practice; (2) it caused injury to the plaintiff; and (3) the injury was to his business or property."  *Sorrel v. Eagle Healthcare, Inc.*, 38 P.3d 1024, 1028 (Wash. Ct. App. 2002) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986) (en banc)); *id.* ("Failure to satisfy even one of the elements is fatal to a CPA claim.").  Importantly, "[t]he concerns that typically underlie the issue of 'standing' are already addressed by these elements, particularly the limitations imposed by the need to prove injury and public interest impact."  *Stephens v. Omni Ins. Co.*, 159 P.3d 10, 23 (Wash. Ct. App. 2007), *aff'd sub nom. Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885 (Wash. 2009) (en banc).

First, Plaintiff has not alleged that Twilio engaged in an "unfair or deceptive" practice.  In the absence of state law defining the term "unfair," Washington courts look to federal law for guidance.  *See* 25 David K. DeWolf, Keller W. Allen & Darlene Barrier Caruso, Wash. Prac., Contract Law And Practice § 18:310.08 (3d ed. 2015) (courts are to "be guided by final decisions of the federal courts and final orders of the [FTC] interpreting the various federal statutes").  In *Blake v. Federal Way Cycle Center*, 698 P.2d 578 (Wash. Ct. App. 1985), the court's decision was informed by FTC pronouncements that had been cited with approval by the federal courts, as well as the FTC's 1980

Policy Statement.  *See id.* at 583.  Accordingly, to sufficiently plead "unfair" practice, plaintiffs must satisfy a factual, objective standard, so as to "prevent every consumer complaint from becoming a triable violation of the act."  *See Behnke v. Ahrens*, 294 P.3d 729, 736 (Wash. Ct. App. 2012).

Here, Plaintiff has not sufficiently alleged that Twilio engaged in an "unfair practice."  First, as repeated throughout this brief, the only fact Plaintiff has directly alleged against Twilio, in connection with the actual communications in question, is that one text message came from a number associated with Twilio in some database.  Plaintiff fails to allege any other factual details about the nature of the text message or call in question.  His misunderstandings of Twilio's services and attacks portraying Twilio as a "robo-caller," without more, and particularly in light of the fact that Twilio does not initiate texts or calls, are certainly insufficient to allege "unfair" practices.  Permitting such a suit to go forward would do exactly what Washington hopes to avoid: allowing "every consumer complaint" to turn into "a triable violation of the act."  *Id.*  If these pleadings were sufficient to go forward in litigation, any person who received a text from a user of Twilio's platform would be able to walk into court with the hope of bringing a class action, as here.  For example, any Uber rider who received a communication from an Uber driver about departure, arrival times, etc., would have an argument under the CPA.  Again, Twilio provides cloud-based software that enables its users to craft applications for specialized communications according to their design.  Nothing in Plaintiff's allegations regarding his receipt of the "Crevalor" text suggests "unfair" practices by Twilio.

Finally, as discussed above, *see supra* Section I, Plaintiff has not pleaded injury caused by the text.  Failing to show "unfair practices" or injury, his CPA claim should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, the Twilio Inc. respectfully request that the Court grant this Motion to Dismiss Plaintiff's First Amended Complaint in its entirety.

DEFENDANT'S MOTION TO DISMISS
CASE NO.  2:16-CV-00914

24

BRADLEY MULLINS TURNER, PLLC
19929 BALLINGER WAY NE, SUITE 200
SEATTLE, WA 98155
TEL 206.621.6566

1    Dated:  August 19, 2016                Respectfully submitted,

2                                           */s/  Duncan C. Turner*_____
                                            Duncan C. Turner, WSBA #20957
3                                           BADGLEY-MULLINS LAW GROUP PLLC
                                            19929 Ballinger Way NE, Suite 200
4                                           Shoreline, WA 98155
                                            Telephone: (206) 621-6566
5                                           Facsimile: (206) 621-9686

6                                           Michael B. Hazzard (pro hac vice)
                                            James W. Uthmeier (pro hac vice)
7                                           Kaytlin L. Roholt (pro hac vice)
                                            JONES DAY
8                                           51 Louisiana Avenue, N.W.
                                            Washington, DC  20001-2113
9                                           Telephone: (202) 879-3829
                                            Facsimile: (202) 626-1700
10                                          Counsel for Defendant,
                                            TWILIO INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION TO DISMISS          25          BRADLEY MULLINS TURNER, PLLC
CASE NO.  2:16-CV-00914                              19929 BALLINGER WAY NE, SUITE 200
                                                    SEATTLE, WA 98155
                                                    TEL 206.621.6566

1

2
## CERTIFICATE OF SERVICE

3
   I hereby certify that on this 19th day of August, 2016, I caused the foregoing to be

4
electronically filed with the Clerk of Court using the CM/ECF system, causing it to be served on all

5
registered users.

6
                                                    Respectfully submitted,

7

8
                                        */s/ Duncan C. Turner*
                                        **Duncan C. Turner**, WSBA #20957
9
                                        BADGLEY-MULLINS LAW GROUP PLLC
                                        Ballinger Way NE, Suite 200
10
                                        Shoreline, WA 98155
                                        Telephone: (206) 621-6566
11
                                        Facsimile: (206) 621-9686
                                        Counsel for Defendant,
12
                                        TWILIO INC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION TO DISMISS                    26        BRADLEY MULLINS TURNER, PLLC
CASE NO.  2:16-CV-00914                                   19929 BALLINGER WAY NE, SUITE 200
                                                                 SEATTLE, WA 98155
                                                                 TEL 206.621.6566