UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NOAH WICK on behalf of himself and all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>TWILIO INC.,<br><br>　　　　　　　Defendant. | Case No. C16-00914RSL<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT |

## I. Introduction

This matter comes before the Court on "Defendant's Motion to Dismiss Plaintiff's First Amended Complaint." Dkt. #28. Plaintiff alleges that he received an unsolicited text message and phone call relating to ordering a product from Crevalor. Plaintiff maintains that defendant was involved in initiating or assisting in the transmission of the text and phone call. Plaintiff further alleges that this conduct violates the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, the Washington State Commercial Electronic Mail Act ("CEMA"), RCW 19.190.060, and the Washington Consumer Protection Act ("CPA"), RCW 19.190.060. Plaintiff seeks declaratory, monetary and injunctive relief. Defendant seeks dismissal of all of plaintiff's claims.[1] Defendant makes many arguments for dismissal, including that plaintiff consented to receive the text message and phone call at issue. Because the Court agrees that

---

[1] The Court finds that this matter can be decided on the papers submitted. Plaintiff's request for oral argument is, therefore, DENIED.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS- 1

plaintiff did consent to receiving this text message and phone call, it finds it unnecessary to address defendant's other arguments.

## II. Background

Twilio is a cloud communications company. Plaintiff alleges that Twilio provides robo-calling, automated text messaging, and autodialing services to advertisers. On February 12, 2016, plaintiff accessed the "Crevalor" website, www.crevalor.com, a site that offered a free sample of a pre-workout supplement. In order to receive this free sample, plaintiff submitted his name, address and cell phone number into a form on the website. Plaintiff was then directed to a webpage that provided pricing information. Plaintiff decided against continuing with the order and closed the webpage. Immediately after submitting his information, plaintiff received a text message stating: "Noah, Your order at Crevalor is incomplete and about to expire. Complete your order by visiting http//hlth.co/xDoXEZ." Compl. (Dkt. #22) at ¶ 39. Based on a reverse white pages look-up of this number, plaintiff alleges that this text message originated from a number owned by Twilio. Plaintiff also alleges that he simultaneously received a phone call alerting him that if he wanted the free product, he needed to order it immediately.

## III. Discussion

**A. Pleading Standard**

The question for the Court on a motion to dismiss is whether the facts alleged in the complaint sufficiently state a "plausible" ground for relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

> A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Plausibility requires pleading facts, as opposed to conclusory allegations or the formulaic recitation of elements of a cause of action, and must rise above the mere conceivability or possibility of unlawful conduct that entitles the pleader to relief.

Somers v. Apple, Inc., 729 F.3d 953, 959-60 (9th Cir. 2013) (internal quotation marks and citations omitted). All well-pleaded factual allegations are presumed to be true, with all

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS- 2

reasonable inferences drawn in favor of the non-moving party. In re Fitness Holdings Int'l, Inc., 714 F.3d 1141, 1144-45 (9th Cir. 2013). If the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate. Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1041 (9th Cir. 2010).

**B. Consent under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227**

The TCPA makes it unlawful to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system [ATDS] or an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a . . . cellular telephone . . . ." 47 U.S.C. § 227(b)(1)(A)(iii). A text message constitutes a "call" for the purposes of the TCPA. Saterfield v. Simon & Schuster, Inc., 569 F.3d 946, 954 (9th Cir. 2012). Consent to a text or call, however, serves as "an escape route for a caller who might otherwise face TCPA liability." Aderhold v. Car2go N.A., LLC, No. C13-489RAJ, 2014 WL 794802, at *3 (W.D. Wash. Feb. 27, 2014), aff'd, No. 2-13-cv-00489-RAJ, 2016 WL 4709873 (9th Cir. Sept. 9, 2016). The level of consent required to escape liability depends upon the character of the communication. Daniel v. Five Stars Loyalty, Inc., No. 15-cv-03546-WHO, 2015 WL 7454260, at *3 (N.D. Cal. Nov. 24 2015). A text or call that "includes or introduces an advertisement or constitutes telemarketing" may only be sent with the recipient's "prior express written consent." 47 C.F.R. § 64.1200(a)(2) (2013). All other texts and calls require only "prior express consent," 47 C.F.R. § 64.1200(a)(1) (2013), and the "great weight of authority holds that an individual who knowingly provides her telephone number to another party without limiting instructions has [given] her prior express consent to receive calls at that number from that party." Daniel, 2015 WL 7454260, at * 6; see also Aderhold v. Car2go N.A., LLC, No. 2-13-cv-00489-RAJ, 2016 WL 4709873, at *1 (9th Cir. Sept. 9, 2016) (holding that plaintiff "consented to receiving text messages related to the application process from car2go simply by providing his phone number in the application for membership"); In re Rules & Regs. Implementing the TCPA of 1991, 30 F.C.C. Rcd. 7961, 52 (July 10, 2015) ("[E]xpress consent can be demonstrated by the called party giving prior express oral or written consent or, in the

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS- 3

absence of instructions to the contrary, by giving his or her wireless number to the person initiating the autodialed or prerecorded call.").

The parties disagree as to whether the text and call at issue qualifies as telemarketing. If the text and call do qualify as telemarketing, then defendant did not meet the requisite consent standard because plaintiff did not provide express written consent. If the text and call do not qualify as telemarketing, however, then defendant did meet the consent standard because plaintiff submitted his telephone number to the Crevalor website without limiting instructions. The Court concludes that the communications alleged by plaintiff do not rise to the level of telemarketing. The Federal Communications Commission defines telemarketing as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12) (2013). In Chesbro v. Best Buy Stores, L.P., the Ninth Circuit called for a "common sense" approach to whether a communication amounts to telemarketing. 705 F.3d 913, 918 (2012). The Ninth Circuit concluded that repeated calls reminding plaintiff to redeem Best Buy Reward Zone Points constituted telemarketing where the only use for the points was for future purchases at Best Buy. Id.

In determining whether the communications plaintiff received constitute a common sense understanding of telemarketing, the Court finds three cases persuasive. See Aderhold v. Car2go N.A., LLC, No. C13-489RAJ, 2014 WL 794802, at *3 (W.D. Wash. Feb. 27, 2014) (granting motion for judgment on the pleadings, ruling that plaintiff's pleadings established defendant's affirmative defense to plaintiff's TCPA claim), aff'd, No. 2-13-cv-00489-RAJ, 2016 WL 4709873 (9th Cir. Sept. 9, 2016); Gragg v. Orange Cab Co., Inc., 145 F. Supp. 3d 1046, 1049 (Nov. 9, 2015) (holding that the text portion alerting customer of taxi's dispatch did not violate CEMA and applying case law pertaining to the telemarketing standard under the TCPA); Daniel, 2015 WL 7454260, at *3 (granting defendant's motion to dismiss, holding that the text defendant sent did not constitute telemarketing).

In Aderhold v. Car2go N.A., LLC, plaintiff submitted an on-line registration form for

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS- 4

membership in car2go, at which point he then received an email and a text message about how to complete the registration process. 2014 WL 794802, at *1. The text stated: "Please enter your car2go activation code 145858 into the emailed link. We look forward to welcoming you to car2go." Id. Mr. Aderhold argued that this was a telemarketing text because it directed him to place an activation code into an email that connected to the car2go website, a website that contains promotions for the car2go service. Id. at *9. The court disagreed, reasoning that there was "no indication that the text was intended for anything other than the limited purpose stated in its two sentences: to permit Mr. Aderhold to complete registration." Id. This same analysis applies to the text and call plaintiff received. Both communications reminded plaintiff of the order process that plaintiff initiated when he submitted his information into the Crevalor website. Aderhold differs from the present case in an important respect. Mr. Aderhold submitted a registration form to apply for membership with the car2go service, id., whereas here the plaintiff did not submit a completed order form; plaintiff submitted information into the first page of the process, changed his mind, and chose not complete the order after being redirected to a second webpage. Crevalor, however, had no way of knowing that plaintiff changed his mind. Because the two communications received by plaintiff simply reminded him how to complete the order process that he had initiated, this Court is persuaded that, as in Aderhold, the purpose of these communications was customer service.

Turning next to Gragg v. Orange Cab Co., Inc., the court reaffirmed the reasoning of Aderhold. See 145 F. Supp. 3d at 1049. In Gragg, plaintiff called to order a taxi and received the following text message: "Taxi # 850 dispatched @ 05:20. Smart phone? Book our cabs with Taxi Magic—# 1 Free taxi booking app http://cabs.io/29e1b7d ." The court concluded that the first portion of the text, the dispatch notification, "was a customer service related solely to the consumer transaction he had just initiated. It did not offer or encourage the purchase of any other goods or services." Id. Thus, the court concluded that if the first portion of the text "were unencumbered by the marketing message for Taxi Magic," it would not have been a

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS- 5

"commercial electronic text message" under CEMA.[2] Similarly, the text and call received by plaintiff were also related solely to the consumer transaction he had initiated. Plaintiff admits that he submitted his telephone number and other personal information to receive the free Crevalor product. Plaintiff does not allege that the text or call offered or encouraged the purchase of any product other than the free sample for which plaintiff submitted his information.

Finally, Daniel v. Five Stars Loyalty presents further support for the conclusion that the communications received by plaintiff do not constitute telemarketing. Plaintiff in Daniel had lunch at a Flame Broiler restaurant and asked about the Five Stars consumer rewards program. 2015 WL 7454260, at *1. The cashier informed plaintiff about the program, namely, about how customers earn points for food purchases and about how those points can be used to purchase more food. Id. Plaintiff provided his telephone number and the cashier gave him a plastic Five Stars card. Id. Only minutes later, plaintiff received a text message from Five stars stating: "Welcome to Five Stars, the rewards program of Flame Broiler. Reply with your email to finish registering and get free pts! Txt STOP to unsubscribe." Id. Plaintiff cited Chesbro and argued that the purpose of the text was to encourage the customer to make additional purchases through the rewards program and thus constituted telemarketing. Id. at 4-5. The court disagreed because, in contrast to the plaintiff in Chesbro, the plaintiff in Daniel "received a single text message in direct and immediate response to his inquiry regarding the Five Stars program and to his provision of his telephone number." Id. at 5. This fact pattern is analogous to plaintiff receiving a text message and call immediately upon initiating an order process. It is not telemarketing for

---

[2] Although Gragg involved a CEMA claim, it cited TCPA-related case law such as Chesbro and Aderhold. 145 F. Supp. 3d at 1048-1049. In an earlier order, the court noted the following about the relationship between the TCPA and CEMA:
> The Ninth Circuit found that the TCPA definition was "substantially similar" to its counterpart in [Washington Automatic Dialing and Answering Devices Act] ["WADAD"]. Because the definitions set forth in the WADAD and CEMA are more closely aligned than the related provision of the TCPA, the interpretive rulings under federal law should be applied to both state laws.

Order Granting in Part Motion for Judgment on the Pleadings and Granting Leave to Amend at 7 n.4, No. C12-0576RSL (W. D. Wash. Jan. 17, 2013). The Court reaffirms this reasoning.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS- 6

the service or product provider to inform plaintiff how to complete that process, just as it was not telemarketing for Five Stars to inform Daniel how to finish registering.

Considering the persuasive precedent above, the text message and call received by plaintiff do not constitute telemarketing. Because plaintiff consented to the communications at issue when he submitted his telephone number during the Crevalor order process, plaintiff fails to plead a TCPA violation.

**C. Commercial Electronic Mail Act ("CEMA"), RCW 19.190.060**

CEMA provides that "[n]o person conducting business in the state may initiate or assist in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident for cellular telephone or pager service . . . ." RCW 19.190.060(1). CEMA defines "commercial electronic text message" as a message "sent to promote real property, goods, or services for sale or lease."RCW 19.190.010(3). As noted above, interpretive rulings under the TCPA should be applied to CEMA. The Court applies the same reasoning discussed above to plaintiff's CEMA claim and concludes that the text message was not commercial. Plaintiff has therefore failed to plead a CEMA claim.

**D. Consumer Protection Act ("CPA"), RCW 19.190.060**

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. Plaintiff alleges that Twilio's "practice of transmitting electronic commercial text messages to Plaintiff's cellular phone without Plaintiff's consent is . . . an unfair and/or deceptive practice," Compl. Dkt. #22 at ¶ 95. As discussed above, the text message at issue was sent with plaintiff's consent. Therefore, plaintiff has failed to plead a CPA claim.

**E. Secondary Liability**

Plaintiff's claims for secondary liability under the TCPA, CEMA and CPA fail for the same reason that his claims for primary liability fail; plaintiff consented to the communications he received.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS- 7

**F. Leave to Amend**

If plaintiff believes he can, consistent with his Rule 11 obligations, amend the complaint to remedy the pleading and legal deficiencies identified above, he may file an Amended Complaint within fourteen days of the date of this Order.

## IV. Conclusion

For all of the foregoing reasons, defendant's motion to dismiss (Dkt. # 28) is GRANTED.

Dated this 1st day of November, 2016.

Robert S. Lasnik
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS- 8