UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NOAH WICK, on behalf of himself and all others similarly situated,

Plaintiff,

v.

TWILIO, INC.,

Defendant.

No. 2:16-cv-00914-RSL

**SECOND AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL TELEPHONE CONSUMER PROTECTION ACT; WASHINGTON CONSUMER PROTECTION ACT; AND WASHINGTON COMMERCIAL ELECTRONIC EMAIL ACT**

(JURY TRIAL DEMANDED)

Plaintiff Noah Wick ("Plaintiff"), on behalf of himself and all others similarly situated, brings this action against Defendant Twilio, Inc. ("Defendant" or "Twilio") to recover monetary damages, injunctive relief, and other remedies for violations of federal and state law, specifically the Telephone Consumer Protection Act, 47 U.S.C. § 227; the Washington State Commercial Electronic Mail Act, RCW § 19.190.060; and the Washington Consumer Protection Act, RCW § 19.190.060. Plaintiff makes the following allegations based on the investigation of his counsel and on information and belief, except as to allegations pertaining to Plaintiff individually, which are based on his personal knowledge.

## I. INTRODUCTION

1. In passing the Telephone Consumer Protection Act ("TCPA"), Congress sought to protect consumers from harassing, intrusive, and unwanted robo-calls.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

2. At the time of the TCPA's passage, the majority of illegal robo-calls were made "off-line" using pre-recorded voice messages.[1] In its most recent ruling on the subject, however, the Federal Communications Commission ("FCC") has noted that advertisers seeking to make illegal robo-calls are increasingly using computer programs to initiate calls, and are using SMS[2] text messages, instead of pre-recorded voices messages, to reach cell phone and "smart phone" users.[3]

3. Indeed, according to a recent study by the Pew Research Center, 69% of cellular users who use text messaging receive unwanted text message spam, and "[o]f those texters, 25% face problems with spam/unwanted texts at least weekly."[4]

4. The FCC has made clear, however, that merely moving the process of robo-calling to auto-dialing computer programs, or using automated or pre-recorded text messages instead of a pre-recorded voice, has not placed the practice outside the scope of the TCPA. Indeed, the FCC has recently issued a number of declaratory rulings with respect to the TCPA liability of online services that permit the sending of illegal text messages via computer program.[5]

5. Defendant Twilio is one example of a computer-based robo-calling service and automated text messaging service because it initiates or causes to be initiated tens of millions of text messages and/or calls to cell phone users per month via computer program. It has rendered

---

[1] *See*, e.g., Rules and Regulations Implementing the Telephone Consumer Protection Act, CG Docket No. 02-278, Report and Order, 27 FCC Rcd. 1830 ¶ 1 (2012).

[2] "Short Message Service" or "SMS" describes a message system that allows cell phone subscribers to use their cell phones to send and receive short text messages, usually limited to 120–500 characters.

[3] In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 31 F.C.C. Rcd. 88 (2016).

[4] Jan Lauren Boyles & Lee Raine, Mobile Phone Problems, Pew Research Center (Aug. 2, 2012), http://www.pewinternet.org/2012/08/02/mobile-phone-problems/ (last visited May 4, 2015).

[5] *See*, e.g., In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 F.C.C. Rcd. 7961 (2015).

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

the practice of computer-program-initiated calls and automated text messaging massively scalable by providing call-initiating programs on the company Amazon.com's cloud servers.[6]

6. Twilio's cloud-based robo-calling, automated text messaging, and auto dialing service, which was first launched in 2007 to send prank calls, has, since that time grown to provide its service to hundreds of advertisers, and initiated or caused to be initiated billions of text messages and millions of calls to cell phone users, including Plaintiff, without their express consent, and in violation of the TCPA and Washington law.[7] This lawsuit seeks to hold Twilio liable for its role in initiating or causing to initiate those calls.

## II. JURISDICTION AND VENUE

7. Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1332(d) because all Members of the putative Classes are citizens of different states than Defendant and the aggregate amount in controversy exceeds five million dollars.

8. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Plaintiff Noah Wick resides in this District, Defendant regularly conducts business in interstate trade and commerce in this District, and a substantial part of the events giving rise to the claim, including the receipt of the illegal call and texts in question, occurred within this District.

10. This Court has personal jurisdiction over Defendant because Defendant is present in the State of Washington, such that requiring an appearance does not offend traditional notions of fair play and substantial justice and Defendant's activities described herein were in the flow of interstate commerce and had a substantial effect on interstate commerce.

---

[6] *See*, e.g., Derrick Harris, Why Amazon Will Make or Break Twilio, Gigaom (Mar. 3, 2009), https://gigaom.com/2009/03/03/why-amazon-will-make-or-break-twilio/.

[7] *See*, e.g., Twilio Inc., Programmable SMS, https://www.twilio.com/sms; Jason Kincaid, Twilio: Powerful API for Phone Services That Can Recreate GrandCentral's Core Functional in 15 Lines of Code, TechCrunch (Nov. 20, 2008), http://techcrunch.com/2008/11/20/twilio-powerful-api-for-phone-services-that-can-recreate-grandcentral-in-15-lines-of-code/.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

11. This Court has specific personal jurisdiction over Defendant because Twilio purposefully directed its activities toward this forum by intentionally making calls and/or sending automated text messages to Washington phone numbers, programming software that dials numbers with Washington area codes, and/or facilitating and directing calls and/or text messages to numbers with Washington area codes.

12. This Court also has specific personal jurisdiction over Defendant because Twilio has expressly aimed its conduct at Washington by transmitting calls to numbers with Washington area codes and/or transmitting calls to Washington to numbers with Washington area codes.

13. This Court finally has specific personal jurisdiction over Defendant because Twilio knew that harm caused by its automated calls and/or text messaging services would be suffered in Washington, as it knew or consciously disregarded the fact that it was transmitting calls to Washington numbers in violation of Washington law.

## III. PARTIES

14. Plaintiff is and was at all times alleged herein a citizen of the United States and a citizen of the State of Washington and currently resides in King County, Washington. On or about February 12, 2016, he received one unsolicited call and a text message initiated by Twilio.

15. Defendant Twilio is a Delaware corporation with headquarters in San Francisco, California. Defendant maintains an agent for service of process at CSC Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

## IV. FACTS

16. Twilio is a cloud-based communications company.

17. Twilio offers a variety of products and services, including a cloud-based automated telecommunications platform enabling the sending of automated text messages *en masse* to consumers. Customers of Twilio access the technology platform via an application program interface ("API") that permits them to programmatically create pre-recorded messages that are subsequently and automatically transmitted by Twilio.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**A. How Twilio's System Initiates a Text Message**

18. Twilio's programmatic text messaging service provides their mobile telemarketing customers with an "SMS API" which interfaces to "cloud software" capable of automatically sending "billions of SMS messages" to the cellular telephones of mobile subscribers via "more than 900 global carriers."[8]

19. Twilio's SMS API is accessed by Twilio users through a "client program" that incorporates the SMS API. A client program is a software program used by Twilio's customers incorporating the SMS API software to communicate with Twilio's platform technology. The SMS API incorporated into the client program enables Twilio's telemarketing customers to create message text content or portions of content. Telemarketing customers can then upload and store that content on Twilio's hosted platform. This content is subsequently used by Twilio to automatically and programmatically create, build, copy and initiate any number of SMS messages to be sent to a list of cellular telephone numbers containing that same content—the precise definition of an automated text message program. Other basic functions enabled by the SMS API include the ability to upload the list of cellular telephone numbers to be stored for the automated text messaging program and an automatic means to determine when text messages using the provided content are to be created, built, copied and sent automatically to the stored list of cellular telephone numbers.

20. The message content provided to Twilio via the SMS API, is simply a template for the textual content portion of a message that Twilio automatically and repeatedly copies and builds into each individual text message it automatically initiates to cellular telephones. The message content is a pre-recorded message that is stored in Twilio's system to be subsequently and repeatedly used to automatically create, build, and initiate text messages that are then automatically sent by Twilio *en masse* to cellular telephone subscribers.

---

[8] Twilio Inc., *Programmable SMS*, https://www.twilio.com/sms.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

21. Client programs that incorporate the Twilio SMS API can be written in a number of programming languages, and are extremely simple. The SMS API enables the client program to communicate remotely with Twilio's automated text messaging platform—the platform providing the extensive computational resources needed to automatically create, build and initiate any number of text messages to cellular subscribers *en masse*.

22. Consider the below program written in "C#" (*i.e.*, "C Sharp") provided as an example on Twilio's website:

PHP NODE PYTHON RUBY JAVA .NET (C#)

```
// Download the twilio-csharp library from twilio.com/docs/csharp/install
using System;
using Twilio;

class Example
{
  static void Main(string[] args)
  {
   // Find your Account Sid and Auth Token at twilio.com/user/account
   string AccountSid = "AC5ef872f6da5a21de157d80997a64bd33";
   string AuthToken = "[AuthToken]";
   var twilio = new TwilioRestClient(AccountSid, AuthToken);

   var message = twilio.SendMessage(
     "+14158141829", "+16518675309",
     "Tomorrow's forecast in Financial District, San Francisco is Clear.",
     new string[] { "https://climacons.herokuapp.com/clear.png" } ,
     null
   );
   Console.WriteLine(message.Sid);
  }
}

```

23. The client program primarily does three things. **<u>First</u>**, in the portion of the program source code copied below, it initializes the relevant variables necessary to access Twilio's automatic messaging system (it does this through the code-term "using").

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

```
// Download the twilio-csharp library from twilio.com/docs/csharp/install
using System;
using Twilio;
```

24. **Second**, in the portion of the program copied below, the client program uses only two pieces of information: the Twilio User's ID (denoting the unique client user and identified in the code as the string "AccountSid") and the client's password (identified in the code as the string "AuthToken"). This mechanism essentially authenticates the client and enables access to Twilio's automatic messaging system.

```
// Find your Account Sid and Auth Token at twilio.com/user/account
string AccountSid = "AC5ef872f6da5a21de157d80997a64bd33";
string AuthToken = "[AuthToken]";
var twilio = new TwilioRestClient(AccountSid, AuthToken);
```

25. **Third**, and finally, in the portion of the program copied below, the client program initiates Twilio's automatic messaging system (which is stored on Twilio's cloud-based servers), by sending a list of cellular telephone numbers (here, "14158141829" and "16518675309") and a pre-recorded template message to be transmitted (here, "Tomorrow's forecast in . . . San Francisco is Clear.").[9]

```
var message = twilio.SendMessage(
  "+14158141829", "+16518675309",
  "Tomorrow's forecast in Financial District, San Francisco is Clear.",
  new string[] { "https://climacons.herokuapp.com/clear.png" } ,
  null
);
```

26. The outbound text message is entirely handled by the Twilio cloud-based servers. As Twilio itself describes, when the request, in **step three** above, "is sent to Twilio [it] . . .

[9] This program also includes a "new string [] ("https://climacons.herokuapp.com/clear.png")" command that sends a picture of a sun that is stored on a climacons server. This is not a legally relevant line of the code.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

deliver[s] an SMS to the provided phone number. The server logic determines the weather forecast for San Francisco and sends a related message . . . to the phone number."[10]

27. More specifically, however, the SMS API incorporates a number of functions, entirely separate from the client program discussed above, which are stored on Twilio's cloud-based servers. These programs include: <Queue>[11], which generates a list of numbers to dial; <Dial>[12], which will dial a given phone number; <SMS>[13], which will send a text message; and <Say>[14], which will generate and deliver an automated speech message.[15]

28. Even the small role that the client program has in an automated text message campaign, however, can be outsourced and developed by Twilio's services, in two ways. **First**, Twilio offers a bank of developers, in its **"Developer Gallery,"** that will write the client program as well. As Twilio explains on its website: "with hundreds of developers specializing in nearly every web technology, you can find exactly the right person to help you build the Twilio solution you need."[16] **Second**, Twilio, through its "**Twimlets**" service (intended to be a Twilio version of a "widget") will auto-generate the client program, for non-developer users[17]

---

[10] Twilio, Inc., *SMS API*, https://www.twilio.com/sms/api.

[11] Twilio Documentation for <Queue> is here: https://www.twilio.com/docs/api/twiml/queue.

[12] Twilio Documentation for <Dial> is available here: https://www.twilio.com/docs/api/twiml/dial.

[13] Twilio Documentation for <SMS> is available here: https://www.twilio.com/docs/api/twiml/sms.

[14] Twilio Documentation for <Say> is available here: https://www.twilio.com/docs/api/twiml/say.

[15] This program also includes a "new string [] ("https://climacons.herokuapp.com/clear.png")" command that sends a picture of a sun that is stored on a climacons server. This is not a legally relevant line of the code.

[16] Twilio, Inc., Doing is for Doers, https://www.twilio.com/doers.

[17] Twilio, Inc., Can Twilio https://www.twilio.com/help/faq/twilio-basics/i-cant-code-can-twilio-help-build-my-app-for-me.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## B. Twilio Is So Involved, It Is Deemed to Have Initiated or Caused to Be Initiated the Programmed Text Message

29. Twilio's involvement in a programmed automatic text message goes beyond merely interacting with a client program to define the parameters of the text message, as described above; it also determines what number a message will be sent from, creates the queue of numbers the message will be sent to, automatically assembles the messages into the proper communications protocol, and determines which carrier services a particular cellular telephone number so the message can be sent and properly delivered.

30. Twilio determines and builds into text messages <u>the originating number from which automated text messages are initiated</u>. According to the Twilio website: "Twilio cloud software uses real-time carrier feedback to send SMS messages from phone numbers that won't be filtered or rejected."[18] To do so, messages are sent from a "pool of phone numbers to speed delivery," a service which Twilio "handle[s] . . . for you" with "backend logic."[19] In short, Twilio explains, its "software intelligence automatically select[s] the best source for your message."[20]

31. What's more, Twilio actively shields the true source of calls it initiates. Twilio's "GeoMatch" feature "[a]utomatically select[s] local phone numbers when sending messages globally"[21] and its "Masked Phone Numbers" service "mask[s] personal phone numbers for secure calling and texting."[22]

32. Twilio also <u>creates and builds the actual text message itself</u>. Again, according to the Twilio website, "[d]ifferent devices and carriers don't always treat content the same. Twilio handles . . . message assembly." [23] Twilio will, it explains, "automatically segment and reassemble [certain messages] with no custom code required."[24] In addition, Twilio prepends the appropriate

---

[18] Twilio, Inc., *Programmable SMS*, https://www.twilio.com/sms.
[19] Twilio, Inc., *Programmable SMS*, https://www.twilio.com/sms.
[20] Twilio, Inc., *SMS Coverage*, https://www.twilio.com/sms/coverage.
[21] Twilio, Inc., *SMS Features*, https://www.twilio.com/sms/features.
[22] Twilio, Inc., *Masked Phone Numbers*, https://www.twilio.com/use-cases/masked-phone-numbers.
[23] Twilio, Inc., *Programmable SMS*, https://www.twilio.com/sms.
[24] Twilio, Inc., *SMS Features*, https://www.twilio.com/sms/features.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

originating number to the message to be transmitted, as previously described, appends the appropriate cellular telephone number as the destination address of the message, and properly constructs the entire message, including any required signaling data, in accordance with the standard SMS communications protocol.

33. Finally, Twilio <u>generates the list of numbers **to be dialed**</u>, using the <Queue> program noted above, which Twilio explains allows its customers to "send SMS as fast as you like [because] Twilio automatically queues and sends each message at a rate that keeps you compliant."[25] The term "compliant" refers to automatically transmitting text messages *en masse* to each cellular carrier at a rate that is within contractual maximum thresholds and in such a way that the transmitted messages will not be captured by the carriers' spam filters.

34. However, it is relevant to note, that *unlike* the program described above, the <Queue> program need not receive a pre-generated list of phone numbers; indeed, the list of phone numbers may be generated from a file that contains the entire phone book, or a separate program that auto-generates numbers. Consider, for example, the below code that uses a variable "$recipientPhoneNumber," which can be dynamically filled by the program, instead of using a specific defined list of numbers as was used in the above program:

handleSMS.php

```
<?php

    // create Twilio Rest Client with my credentials
    $client = new TwilioRestClient($accountSid, $authToken);

    // Send a POST to the Twilio REST API's Calls resource, which will start a new call
    // Params: the Phone Number to call, and the URL to handle the call
    $response = $client->sendRequest("/Accounts/$accountSid/Calls", "POST", array(
        "Caller" => "555-867-5309",
        "Called" => $recipientPhoneNumber,
        "Url" => "http://{$_SERVER['HTTP_HOST']}/rick/callHandler.php?roller=$senderPhoneNumber"
    ));

?>
```

35. Considering the totality of the circumstances, Twilio makes, initiates, and/or causes to be initiated calls and text messages within the meaning of the TCPA because: (1) Twilio

[25] Twilio, Inc., *SMS Features*, https://www.twilio.com/sms/features.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

software and servers, not the user, automatically determines what number a text message will come *from;* (2) Twilio software and servers, not the user, automatically generates the list of numbers that a message will be sent *to*; (3) Twilio's software, not the user, automatically *dials* those numbers and/or *sends a text message* to those numbers; (4) Twilio's software and server, not the user, *assembles and constructs the text message itself*; and (5) the only role that the user plays in the process (writing client code to accesses Twilio's API and servers) *is removed by services offered by Twilio itself*, such as the Developer Gallery (which provides a developer that will write code, instead of the user) and Twimlets (which automatically generates for the user, the client code). As such, when considered as a whole, Twilio's platform and related services so limit the role that a user plays in sending a text message, Twilio itself makes, initiates, and/or causes to be initiated the texts within the meaning of the TCPA. This conclusion is made more clear when Twilio's platform and related servers are considered in the context of the goals of the TCPA because the Twilio's SMS API is expressly intended to permit mass text messaging campaigns, which the TCPA was intended to prevent.

36. Twilio acknowledges that its platform technology allows mass text messaging campaigns that violate the TCPA: "Text messages may subject us to potential risks, including liabilities or claims relating to consumer protection laws. For example, the Telephone Consumer Protection Act of 1991 restricts telemarketing and the use of automatic SMS text messages without proper consent. This has resulted in civil claims against the Company and requests for information through third-party subpoenas. The scope and interpretation of the laws that are or may be applicable to the delivery of text messages are continuously evolving and developing. If we do not comply with these laws or regulations or if we become liable under these laws or regulations due to the failure of our customers to comply with these laws by obtaining proper consent, we could face direct liability."[26]

[26] Twilio Inc., Securities and Exchange Commission, Form S-1 Registration Statement at 38.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

37. One industry commentator further noted that Twilio "took to their blog to brag about new apps responsible for sending unsolicited text messages. In a recent blog post, they highlighted [a] Google engineer … for blatantly spamming mobile phones with 18,000+ text messages through the Twilio SMS platform …. Twilio needs to admit there's an SMS spam problem on their platform, stop glorifying it, and take the needed steps to fix it."[27]

Twilio advertises on its website that is requires its clients to use industry standards. *See* https://support.twilio.com/hc/en-us/articles/223182148-Industry-Standards-for-US-Short-Code-Advertisements-and-Opt-in-forms. One such industry standard are the Mobile Market Association's Best Practices Guide, which is provided as a link on the Twilio website. Twilio failed to require its client, Crevalor, to follow these industry standards. Twilio could have required its client to certify that they were not using Twilio's technology to violate federal and state law.

**C. Unsolicited Text Messages Received by Plaintiff**

38. On February 12, 2016, Plaintiff was on the internet and found an advertisement for a free sample of "Crevalor," a pre-workout supplement. When Plaintiff clicked on the advertisement, he was directed to a webpage of the Crevalor, Inc. website, http://www.crevalor.com. Exhibit 1 attached hereto is a copy of a page from that website similar to the one that Plaintiff saw on February 12, 2016. Plaintiff did not intend to purchase a product. Rather, he intended to fill out a form to receive a ***free*** trial bottle. In order to receive the free sample, Plaintiff had to enter his name, address, and cell phone number into a form on the website. After entering in his personal information, Plaintiff clicked the "Rush My Order" button and was redirected to a second webpage, which provided pricing information. On or about February 13, 2016, Plaintiff went back to the Crevalor website and printed out the content of the pricing information on that webpage. Exhibit 2-A attached hereto is that top part of that webpage and Exhibit 2-B is the bottom part of that webpage. The content of Exhibit 2 is what Plaintiff saw on

---

[27] Derek Johnson, *Twilio Continues to Send SMS Spam, Even After Lawsuit*, http://www.tatango.com/blog/twilio-continues-to-send-sms-spam-even-after-lawsuit/ (Apr. 19, 2012).

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

February 12, 2016. As set forth in Exhibit 2, the "Trial Bottle" that required Plaintiff to only pay shipping and handling was listed as "Sold Out" on the webpage. Thus, the offer of a free trial bottle that lead him to the webpage was not available. Since Plaintiff did not intend to purchase a product, the other offers that required a purchase to get an extra bottle, did not interest him. Deciding that he did not want to purchase the product, he closed the webpage. At no time was the Plaintiff made aware that his cellular telephone number would be used for telemarketing purposes, by sending him any automatic text messages.

39. Immediately afterwards, at approximately 1:30 p.m., Plaintiff received a text message that Twilio initiated or caused to be initiated. The message stated, "Noah, Your order at Crevalor is incomplete and about to expire. Complete your order by visiting http://hlth.co/xDoXEZ." However, Plaintiff did not go on the website for the purpose of purchasing a product. He did not change his mind while on the webpage about *purchasing* a product. He did not choose to abort any purchase because he never had an intent to purchase anything in the first place. Rather, he entered the webpage to receive a free "trial bottle," in order to continue to the next webpage, he had to enter his telephone number, and when he turned to the second webpage, he was told that there were no free trial samples available at all. At that point, he closed the webpage.

40. The text and phone call was not for the purpose of customer service, but rather, it was to encourage plaintiff to purchase a product. While the text requested that Plaintiff complete his purchase, in looking at the "context of the transaction," and using common sense, as one must in considering "prior express consent" under the TCPA, Plaintiff experienced a "bait and switch" because no free trial bottle was available. Once Plaintiff entered his phone number, he found out that there were no free trial bottle, and it is clear that the purpose of the text, and phone call were to encourage the Plaintiff to go back to the webpage to purchase a product. The text included a link for this purpose. This is especially true because there were no free samples available to Plaintiff at all. Plaintiff is aware of at least one other person who had a similar experience trying

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

to obtain a free trial bottle. The text Plaintiff received was for the purpose of encouraging the purchase of goods, and therefore, under the definition of telemarketing as provided in 47 C.F.R. § 64.1200(f)(10), it was telemarketing. Plaintiff entered the Crevalor website because it was advertised on a link to the Crevalor website that he could receive a free trial bottle. Plaintiff entered his telephone number to go to the next webpage to click on a free trial bottle. He did not give his telephone number to be solicited to purchase a product, or to complete a purchase which he never started since, in the beginning of the transaction, he was told he could get a free trial bottle.

41. "Telemarketing" means the "initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods or services, which is transmitted to any person." 47 C.F.R. §64.1200(f)(10) (2011).

42. "Advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1).

43. The text Plaintiffs received to "finish his order" constituted telemarketing call because it was made for the purpose of encouraging the purchase of a product. Unlike a situation where a person registers to purchase a service, and then receives a text about that purchase, or a person receives text to complete the registration that he started to purchase a service, Plaintiff never signed up or intended to purchase a product. He was following the advertisement on the website to receive a FREE "trial bottle." Because the text and call from Twilio encouraged Plaintiff to engage in a future *purchasing* activity, which was not his intent or purpose in providing his telephone number, they constituted telemarketing under 47 C.F.R. §64.1200(f)(10).

44. Because the text and call from Twilio discussed the availability of the product, it also constituted "advertising" under 47 C.F.R. § 64.1200(f)(1).

45. Moreover, the text, which included a code to a website address, was trying to draw the customer to explore the Crevalor website, and to try Crevalor's products. The insertion of a link back to the website in a text is for the purpose of promoting the sale of goods or services, i.e. advertising and telemarketing.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

46. Even if the call was a so-called "dual purpose" call, namely it had both a customer-service or informational component and an marketing component, the FCC has determined that such a call is an "unsolicited advertisement." *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14098 (2003); cited with approval in *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012). The text message originated from the telephone number (702) 800-2853. A reverse white pages look-up of this number shows it is owned by "Twilio VoIP" of Las Vegas, Nevada. Accordingly, Plaintiff believes Twilio initiated or caused to be initiated this call. Plaintiff did not expect to, and did not provide prior express written consent to, receive this text message.

47. Simultaneously, Plaintiff received an unsolicited telephone call at approximately 1:35 p.m. The caller stated that she wanted to be able to give a free product, but that Plaintiff needed to order it right now. The caller told Plaintiff he had to order the product immediately. She requested that Plaintiff provide his credit card information which he refused to do. Plaintiff had the impression that this call was made from a "call center" because he could hear other people speaking in the background. Based on his billing records, Plaintiff believed that this telephone call lasted three minutes. He believes it was a telemarketing call, and that the person who called him was using aggressive telemarketing tactics.

48. Plaintiff instructed the caller that he did not order the product, did not intend to purchase the product, and to take his number off of their list. Plaintiff did not expect, and did not provide any prior express written consent, to receive this call. The caller would not take "no" for an answer repeatedly asking Plaintiff for his credit card number. Plaintiff believes that the caller engaged in high pressure sales tactics trying to complete a sale during the course of this 3-minute call.

49. Plaintiff is on the federal "Do Not Call list" and has registered his number on the National Do Not Call Registry.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

50. The "free sample" of Crevalor described above is part of an auto-ship program by which the recipient's credit card is authorized to be charged a fee every month until cancelled by the recipient. In other words, recipients are misled into signing up for an auto-ship program by requesting a "free sample" of Crevalor. The internet is filled with complaints about this practice. *See*, http://www.skinny2fit.com/crevalor/.

## V. CLASS ALLEGATIONS

51. Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

52. Plaintiff brings this action on his own behalf and pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following class (the "National Class"):

> All persons, in the United States, who received an unsolicited SMS text message and/or call initiated by Twilio, Inc.'s API and/or Twilio, Inc. and/or from a Twilio, Inc. owned server.

53. Excluded from the National Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded is any trial judge who may preside over the case.

54. Plaintiff also brings this action on his own behalf and pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following sub-class (the "Washington Class"):

> All Washington residents who received an unsolicited SMS text message and/or call initiated by Twilio, Inc.'s API and/or Twilio, Inc. and/or from a Twilio, Inc.

55. Excluded from the Washington Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded is any trial judge who may preside over the case.

56. Collectively, members of the National Class and Washington Class are referred to as "Class Members."

57. The Members of the Classes are so numerous that joinder of all Members is impracticable. On information and belief, millions of consumers have received unsolicited SMS

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

text message and/or calls initiated by Twilio's API. Disposition of the claims of the proposed Classes in a class action will provide substantial benefits to both the parties and the Court.

58. The rights of each member of the proposed Classes were violated in a similar fashion based upon Defendant's uniform wrongful actions and/or inaction.

59. The following questions of law and fact are common to each proposed Class Member and predominate over questions that may affect individual Class Members:

a. Whether Twilio made, initiated, or caused to be initiated the text messages and/or calls in question, for the purposes of the TCPA;

b. Whether Twilio is a common carrier for the purposes of the TCPA;

c. Whether Twilio makes use of an "automatic telephone dialing system" within the meaning of the TCPA;

d. Whether Twilio violated the TCPA by sending automatic unsolicited text messages and/or making calls to Class Members;

e. Whether Twilio violated Washington state law (for members of the Washington Class only);

f. Whether Twilio intentionally and knowingly violated Washington state law (for members of the Washington Class only);

g. Whether Twilio's conduct in violation of federal law was willful, intentional, or knowing;

h. Whether Twilio is likely to continue unlawful conduct such that an injunction is necessary;

i. Whether the Classes has been damaged and, if so, the extent of such damages; and

j. Whether Plaintiff and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

60. The claims of the individually named Plaintiff are typical of the claims of the Classes and do not conflict with the interests of any other members of the Classes, in that Plaintiff and the other members of the Classes were subjected to the same uniform practices of the Defendant.

61. The individually named Plaintiff will fairly and adequately represent the interests of the Classes. He is committed to the vigorous prosecution of the Classes' claims and has retained

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

attorneys who are qualified to pursue this litigation and have experience in class actions—in particular, TCPA and consumer protection claims.

62. Defendant has acted or refused to act on grounds generally applicable to the proposed Classes, thereby making appropriate equitable relief with respect to the Classes.

63. The prerequisites to maintaining a class action for injunctive relief exist:

a. If injunctive relief is not granted, great harm and irreparable injury to Plaintiff and the members of the Classes will continue; and

b. Plaintiff and the members of the Classes have no adequate remedy at law for the injuries which are threatened to recur, in that, absent action from this Court, Defendant will continue to violate federal and state law, and cause damage to Plaintiff and Class Members.

64. Defendant's actions are generally applicable to the Classes as a whole, and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Classes as a whole.

65. The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Classes, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Plaintiff's counsel, highly experienced in class actions, foresee little difficulty in the management of this case as a class action.

## VI. PLAINTIFF'S AND CLASS MEMBERS' INJURIES

66. Plaintiff and Class Members have been injured by Twilio's unlawful calls and/or text messages to cell phones that violated the TCPA and Washington law.

67. Twilio's text messages and calls caused economic harm to Class Members by requiring them to pay their cell phone providers either for each text message or call and/or incurring a usage allocation deduction to their cell phone plan.

68. Twilio's text messages and calls injured Plaintiff and Class Members by intruding upon and occupying the capacity of their cell phones, depriving them of the use of their cell phones for a period of time. While the unlawful calls and texts were in progress, Twilio trespassed upon

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Plaintiff's and Class Members' right to use their property without interference. For example, during this time, Plaintiff and Class Members could not place an outgoing call/text.

69. Twilio's text messages and calls injured Plaintiff and Class Members by invading their privacy and seclusion, by wasting their time in forcing them to address, read, and answer the unwanted texts and calls, by constituting a nuisance, and by causing the risk of personal injury due to interruption and distraction.

70. The severity of the injuries described above have been amplified by Twilio's use of an autodialer, which enables Twilio to make massive amounts of calls and text messages at low cost and in a short period of time.

## VII. CLAIMS FOR RELIEF

### COUNT I - VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT (47 U.S.C. § 227, *ET SEQ.*) (ON BEHALF OF PLAINTIFF AND THE NATIONAL CLASS)

71. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

72. The TCPA states, in relevant part, that:

> It shall be unlawful...(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice…(iii) to any telephone number assigned to a…cellular telephone….

47 U.S.C. § 227(b)(1).

73. The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

74. Regulations implementing the TCPA define "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1).

75. Regulations implementing the TCPA define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

in, property, goods, or services, which is transmitted to any person." *Id.* § 64.1200(f)(12).

76. Regulations implementing the TCPA provide that no person or entity may "[i]nitiate or cause to be initiated any telephone call that includes or introduces an advertisement or constitutes telemarketing" without the recipient's "prior express written consent." *Id.* §64.1200(a)(2).

77. Prior express written consent is defined as follows:

> an agreement, **in writing**, bearing the signature of the person called that … shall include a **clear and conspicuous disclosure** informing the person signing that:
>
> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

47 C.F.R. § 64.1200(f) (emphases added).

78. The purpose of the text message Plaintiff received was to promote, market, advertise, or encourage the current or future sale of Crevalor products, including the offered product, and to encourage visits to the Crevalor online marketplace, which further promotes, markets, advertises, or encourages the current or future sale of products for purchase. On information and belief, Crevalor is or has been a client or customer of Twilio.

79. Twilio initiated or caused to be initiated calls, including, but not limited to, the call and text message received by Plaintiff to the wireless telephone numbers of Plaintiff and members of the proposed Classes, without their prior express written consent.

80. Specifically, Twilio initiated or caused to be initiated calls and SMS text messages via its Voice and SMS API and from Twilio-owned servers.

81. Moreover, Twilio is so involved in the calls and text messages that it functionally initiates or causes to be initiated the calls/texts because, among other things, it determines who a

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

message will be sent from, creates the queue of the numbers the message will be sent to, and assembles the messages themselves.

82. The calls and text messages sent to Plaintiff and the proposed Class Members were sent using equipment that had the capacity to store telephone numbers retrieved from a database and to dial such numbers, specifically the Twilio APIs and its <Queue> and <Dial> functions. The Twilio APIs can also be programmed to generate and dial random or sequential numbers. By using such equipment, Twilio and its customers were able to effectively send calls and text messages simultaneously to thousands of wireless telephone numbers *en masse* without human intervention.

83. Finally, Twilio knew or should have known that the Twilio API and its servers were being used to violate the TCPA and, indeed, aided in the misuse of its API and servers by shielding the true source of calls and text messages sent without prior express consent.

84. The calls and text messages were made through the use of a short code dialing service and without the prior express written consent of Plaintiff and the proposed Class Members.

85. Defendant's conduct in sending said text messages violates 47 U.S.C. §227(b)(1)(A)(ii).

86. As a result of Defendant's violation, Plaintiff and members of the Classes suffered injuries, including, where applicable, actual damages by, inter alia, having to pay their respective wireless carriers for the calls and text messages and, under 47 U.S.C. §227(b)(3)(B), are each entitled to, inter alia, a minimum of $500 in damages for each violation of the TCPA, and up to $1,500.00 if Defendant's violation of the TCPA is determined to be knowing or willful.

**COUNT II - VIOLATION OF THE WASHINGTON STATE COMMERCIAL ELECTRONIC MAIL ACT (RCW § 19.190.060, ET SEQ.) (ON BEHALF OF PLAINTIFF AND THE WASHINGTON CLASS**

87. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

88. The Washington State Commercial Electronic Mail Act provides, in relevant part, that:

> No person conducting business in the state may initiate or assist in the transmission of an electronic commercial text message to a telephone

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

> number assigned to a Washington resident for cellular telephone or pager service that is equipped with short message capability or any similar capability allowing the transmission of text messages.

Wash. Rev. Code Ann. § 19.190.060(1).

89. At all times material herein, Plaintiff has been entitled to the rights, protections, and benefits provided under the Washington State Commercial Electronic Mail Act ("CEMA") and related Washington statutes.

90. Twilio regularly conducts business in the state of Washington, including but not limited to making text and telephone solicitations to Washington state residents.

91. Twilio initiates or causes to be initiated electronic commercial texts messages to telephone numbers assigned to Washington residents.

92. CEMA defines "commercial electronic text message" as "an electronic text message sent to promote real property, goods, or services for sale or lease." RCW § 19.190.010.

93. The purpose of the text message Plaintiff received was to promote, market, advertise, or encourage the current or future sale of Crevalor products, including the offered product, and to encourage visits to the Crevalor online marketplace, which further promotes, markets, advertises, or encourages the current or future sale of products for purchase.

94. Twilio, on or about February 12, 2016, initiated an electronic commercial text message to Plaintiff's telephone number, which is a telephone number assigned to a Washington resident.

95. Twilio sends electronic commercial texts messages to telephone numbers assigned to Washington residents, including Plaintiff's telephone number.

96. Twilio, on or about February 12, 2016, sent an electronic commercial text message to Plaintiff's telephone number, which is a telephone number assigned to a Washington resident.

97. Plaintiff's cellular phone is equipped with short message capability and can receive and transmit text message.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

98. Pursuant to RCW § 19.190.090, in addition to other relief requested below, Plaintiff seeks an order enjoining Twilio from further violating RCW § 19.190.060.

**COUNT III - VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT (RCW § 19.190.060) (ON BEHALF OF PLAINTIFF AND THE WASHINGTON CLASS)**

99. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

100. At all times material herein, Plaintiff has been entitled to the rights, protections, and benefits provided under the Washington Consumer Protection Act and related Washington statutes.

101. Defendant's practice of transmitting electronic commercial text messages to Plaintiff's cellular phone is a violation of RCW 19.190.060. This violation, by law, is a per se violation of Washington's Consumer Protection Act, RCW 19.86.010, et seq.

102. Defendant's practice of transmitting electronic commercial text messages to Plaintiff's cellular phone without Plaintiff's consent is also an unfair and/or deceptive practice.

103. Defendant's practice of transmitting electronic commercial text messages to Plaintiff's cellular phone is conduct that affects the public interest and is an unfair or deceptive act in trade or commerce and an unfair method of competition for the purpose of applying the Consumer Protection Act, RCW 19.86.010, *et seq*.

104. Defendant conducted these practices in the scope of their trade and in furtherance of the development and preservation of such business services.

105. Defendant's violations of the Consumer Protection Act are intentional, willful, and subject to treble damages under RCW 19.86.010, *et seq.*

106. Plaintiff has suffered injuries, including injuries to his business and/or property, as a direct result of Defendant's numerous violations of RCW 19.86.010, *et seq.*

107. Defendant's practices have caused and, if unabated, will continue to cause incidents, occurrences, and conduct which violate RCW 19.86.010, *et seq.*, and RCW 19.190.010, *et seq.*

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

108. Plaintiff is entitled to recover damages for each of the Defendant's violations of RCW 19.86.010, *et seq.*

109. Plaintiff is further entitled to recover damages for each of the Defendant's violations under RCW 19.190.010, *et seq.*, in amounts set forth by law and otherwise in accord with proof to be provided at trial.

110. Plaintiff will continue to be damaged if Defendant is not compelled to cease and desist its unlawful conduct and its unfair, deceptive, and unlawful practices.

111. Plaintiff is further entitled to all attorneys' fees, costs, and treble damages as allowed by RCW 19.86.010, *et seq.*, and as otherwise permitted by law.

**COUNT IV –SECONDARY LIABILITY**

**(Enterprise, Contributory and Concert of Action Liability)**

112. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

113. As detailed above, Defendant Twilio is directly liable for violation of the Telephone Consumer Protection Act, the Washington State Commercial Electronic Mail Act, and the Washington State Consumer Protection Act but pleads, in the alternative, that Defendant Twilio is also secondarily liable through enterprise liability (by operating a joint venture subject to an express or implied contract), contributory liability and/or concert of action for Crevalor's violations of the Telephone Consumer Protection Act, the Washington State Commercial Electronic Mail Act, and the Washington State Consumer Protection Act on the part of Crevalor.

114. On February 12, 2016, Crevalor, using Twilio's premises and instrumentalities, namely its services, servicers, and software, which constitutes an automatic telephone dialing system, caused or assisted in causing an unsolicited commercial text message to be automatically sent to Plaintiff in violation of the Telephone Consumer Protection Act, the Washington State Commercial Electronic Mail Act, and the Washington State Consumer Protection Act.

115. Defendant Twilio is secondarily liable for Crevalor's illegal conduct because Twilio and Crevalor have a common purpose or common design which was to permit Crevalor to

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

conduct a campaign of automatically sending unsolicited commercial text messages via Twilio's services, servers, and software, which constitute an automatic telephone dialing system. Twilio and Crevalor shared a community of interest. Without Twilio, Crevalor would not be able to initiate any unsolicited text messages or would have had to send far fewer messages at a much slower rate.

116. Twilio is contributorily liable for Crevalor's illegal conduct because Twilio has and had direct control and monitoring of its premises and instrumentalities, namely its software and servers, and facilitated Crevalor's use of those premises and instrumentalities to automatically send unsolicited commercial text messages in violation of state and federal law.

117. Twilio contributed to Crevalor's direct violations by knowingly, or being willfully blind of Crevalor's intention to use Twilio software and servers to conduct a campaign of sending unsolicited commercial text messages.

118. Plaintiff has been injured and damaged as a result of Defendant's actions alleged herein.

119. Plaintiff requests both monetary and injunctive relief pursuant to its causes of action.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment as follows:

A. For an order declaring that this action may be maintained as a class action pursuant to Federal Rules of Civil Procedure Rule 23, and for an order certifying this case as a class action and appointing Plaintiff as representatives of the Classes;

B. A declaration that Defendant's actions, as described herein, violate the law described herein, specifically the TCPA, the Washington State Commercial Electronic Mail Act, and the Washington Consumer Protection Act.

C. An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Classes, including, *inter alia*, an order prohibiting Defendant from

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

engaging in the unlawful acts described above;

D. For judgment for Plaintiff and the Classes on their claims in an amount to be proven at trial, for compensatory damages caused by Defendant's practices; along with statutory damages in the amount of $500 and exemplary damages in the amount of $1,500 to each member of the National Class for each violation, pursuant to 47 U.S.C. §227(b)(3); and treble damages to each member of the Washington Class, pursuant to the Washington Consumer Protection Act;

E. For pre-judgment and post-judgment interest as provided for by law or allowed in equity;

F. For an order awarding Plaintiff and the Classes their attorneys' fees and costs; and

G. Such other and further relief as may appear necessary and appropriate.

## VIII. DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

DATED this 15th day of November, 2016.

KELLER ROHRBACK L.L.P.

By: *s/Mark Griffin*
Mark A. Griffin, WSBA #16296
Karin B. Swope, WSBA #24015
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel: (206) 623-1900
Fax: (206) 623-3384
Email: mgriffin@kellerrohrback.com
Email: kswope@kellerrohrback.com

ZIMMERMAN REED, LLP
June P. Hoidal (*Admitted Pro Hac Vice*)
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 341-0400
Fax: (612)341-0844
Email: June.Hoidal@zimmreed.com

***Attorneys for Plaintiff Noah Wick***