UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

NOAH WICK on behalf of himself and all others similarly situated,

                Plaintiff,

    v.

TWILIO, INC.,

                Defendant.

No. 2:16-cv-00914

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
(16-00914)

**KELLER ROHRBACK L.L.P**.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................... 1

II.    PROCEDURAL BACKGROUND .................................................................. 1

III.   PLAINTIFF HAS ARTICLE III STANDING ............................................. 2

       A.    Plaintiff's Injuries Are Fairly Traceable to Defendant's Conduct...................... 2

       B.    Plaintiff's Injuries Are Likely to Be Redressed by this Court............................. 4

IV.    PLAINTIFF SUFFICIENTLY PLED THE USE OF AN AUTODIALER ................... 4

       A.    Twilio Initiates Calls and Text Messages Within the Meaning of the
             2015 FCC Ruling. ............................................................................ 9

             1.    Twilio Takes the "Steps Necessary" to Physically Place Calls
                   and Initiate Text Messages. .................................................... 9

                   a.    Twilio is Deeply Involved in Placing Calls and Text
                         Messages. .......................................................... 9

                   b.    Twilio Has All Other Characteristics of an "Initiator"
                         Noted in the 2015 FCC Ruling. ................................ 11

             2.    The 2015 FCC Ruling Cited by Defendant Is Distinguishable
                   and Non-Binding. .............................................................. 11

                   a.    Twilio is Distinguishable from YouMail. ................. 12

                   b.    Twilio is Distinguishable from TextMe. .................. 12

             3.    Consideration of the 2015 FCC Ruling Is Premature upon a
                   Motion to Dismiss. ............................................................ 13

       B.    Defendant's Assertion of "Carrier" or "Transmitter" Immunity Is
             Premature and Inapplicable to Twilio's Services. ............................ 13

             1.    Twilio Is Not a Common Carrier or Transmitter. ................. 14

             2.    Even if Twilio is a Common Carrier, It Is Liable for TCPA
                   Violations. ....................................................................... 14

             3.    Whether Twilio Is a Common Carrier Is Premature on a Motion
                   to Dismiss........................................................................ 14

       C.    Twilio "Initiated" a Call or Text Message to Plaintiff Wick............................ 15

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
(16-00914) - i

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

V.    DEFENDANT FAILED TO OBTAIN LEGAL CONSENT FROM PLAINTIFF THAT COMPLIED WITH THE TCPA AND THE 2012 FCC ORDER.................................................................................. 17

VI.   PLAINTIFF'S SAC SUFFICIENTLY ALLEGES A CEMA VIOLATION ............... 20

      A.    The Text Promoting the Purchase of Products Is "Commercial." .................... 20

      B.    It Is Undisputed that CEMA Provides a Private Right of Action. ..................... 22

VII.  PLAINTIFF ALLEGES A WASHINGTON CPA CLAIM ......................................... 22

VIII. PLAINTIFFS' SECONDARY LIABILITY CLAIM................................................... 23

IX.   PLAINTIFF SEEKS TO EXCLUDE EVIDENCE IMPROPERLY SUBMITTED BY DEFENDANT IN SUPPORT OF ITS MOTION TO DISMISS.................................................................................... 23

X.    CONCLUSION ...................................................................................... 24

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
(16-00914) - ii

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

# TABLE OF AUTHORITIES

**Cases**

*Aderhold v. Car2go N.A., LLC,*
No. 13-489, 2014 WL 794802 (W.D. Wash. Feb. 27, 2014) ....................................20

*Aderhold v. Car2go N.A. LLC,*
No. 14-35208, 2016 WL 4709873 (9th Cir. Sept. 9, 2016)................................18, 19

*Andrews v. All Green Carpet & Floor Cleaning Serv.,*
No. 14-00159-ODW(Ex), 2015 WL 3649585 (C.D. Cal. June 11, 2015)..................16

*Baird v. Sabre Inc.,*
995 F. Supp. 2d 1100 (C.D. Cal. 2014) ....................................................................20

*Bennett v. Boyd Biloxi, LLC,*
No. 14-0330, 2015 WL 2131231 (S.D. Ala. May 6, 2015) ........................................19

*Brickman v. Facebook, Inc.,*
No. 16-00751, 2017 WL 386238 (N.D. Cal. Jan. 27, 2017) ........................................ 7

*Buslepp v. B&B Entm't, LLC,*
No. 12-60089, 2012 WL 1571410 (S.D. Fla. May 3, 2012).......................................... 6

*Chesbro v. Best Buy Stores, L.P.,*
No. 11-35784, 2012 WL 4902839 (9th Cir. 2012) .............................................18, 21

*Clark v. Avatar Techs. Phl, Inc.,*
No. H-13-2777, 2014 WL 309079 (S.D. Tex. Jan. 28, 2014) ....................................15

*Cour v. Life360, Inc.,*
No. 16-00805, 2016 WL 4039279 (N.D. Cal. July 28, 2016) ...................................... 2

*Couser v. Pre-paid Legal Servs., Inc.,*
994 F. Supp. 2d 1100 (S.D. Cal. 2014) ..................................................... 13, 15, 16

*Cuellar-Aguilar v. Deggeller Attractions, Inc.,*
812 F.3d 614 (8th Cir. 2015) ...................................................................................... 4

*Daniel v. Five Stars Loyalty, Inc.,*
No. 15-03546, 2015 WL 7454260 (N.D. Cal. Nov. 24 2015) ....................................21

*Duchene v. Onstar, LLC,*
No. 15-13337, 2016 WL 3997031 (E.D. Mich. July 26, 2016) ..................................16

*Duguid v. Facebook, Inc.,*
No. 15-00985, 2016 WL 1169365 (N.D. Cal. Mar. 24, 2016) ..................................... 7

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
(16-00914) - iii

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*Ecological Rights Found. v. Pac. Lumber Co.*,
   230 F.3d 1141 (9th Cir. 2000) ................................................................................. 4

*Epps v. Earth Fare, Inc.*,
   No. 16-08221 (C.D. Cal. Feb. 27, 2017) ................................................................... 7

*Fields v. Mobile Messengers Am., Inc.*,
   No. C 12-05160, 2013 WL 6073426 (N.D. Cal. Nov. 18, 2013)................................16

*Gragg v. Orange Cab Co.*,
   145 F. Supp. 3d 1046 (W.D. Wash. 2015) ........................................... 19, 20, 21, 23

*Gragg v. Orange Cab Co. Inc.*,
   No. 12-0576, 2013 WL 195466 (W.D. Wash. Jan. 17, 2013) ...........................6, 19, 21

*Green v. N. Seattle Cmty. Coll.*,
   No. C06-1456, 2007 WL 709308 (W.D. Wash. Mar. 6, 2007) ....................................24

*Hall v. Norton*,
   266 F.3d 969 (9th Cir. 2001) ................................................................................3, 4

*Halle v. Providence Health & Servs.-Wash.*,
   No. C10-354, 2010 WL 3259699 (W.D. Wash. Aug. 18, 2010) .................................24

*Handlin v. On-Site Manager Inc.*,
   187 Wn. App. 841 (2015)..........................................................................................23

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
   105 Wn. 2d 778 (1986)..............................................................................................23

*Hashw v. Dep't Stores Nat'l Bank*,
   986 F. Supp. 2d 1058 (D. Minn. 2013) ...................................................................... 5

*Hewlett v. Consol. World Travel, Inc.*,
   No. 16-713, 2016 WL 4466536 (E.D. Cal. Aug. 23, 2016) ....................................... 2

*Hickey v. Voxernet LLC*,
   887 F. Supp. 2d 1125 (W.D. Wash. 2012) .................................................................21

*Horowitz v. GC Servs. Ltd. P'ship*,
   No. 14CV2512-MMA RBB, 2016 WL 7188238 (S.D. Cal. Dec. 12, 2016)................ 5

*Iniguez v. The CBE Grp.*,
   969 F. Supp. 2d 1241 (E.D. Cal. 2013) ...................................................................... 5

*Izsak v. Draftkings, Inc.*,
   No. 14-07952, 2016 WL 3227299 (N.D. Ill. June 13, 2016)...................................... 8

*Johnson v. Yahoo!, Inc.*,
   No. 14-2028, 14 CV 2753, 2014 WL 7005102 (N.D. Ill. Dec. 11, 2014)....................................8

*Kauffman v. CallFire, Inc.*,
   141 F. Supp. 3d 1044 (S.D. Cal. 2015) ..................................................................15

*Kazemi v. Payless Shoesource Inc.*,
   No. 09-5142, 2010 WL 963225 (N.D. Cal. Mar. 16, 2010) ...........................................6

*Lardner v. Diversified Consultants Inc.*,
   17 F. Supp. 3d 1215 (S.D. Fla. 2014)......................................................................8

*Leite v. Crane Co.*,
   749 F.3d 1117 (9th Cir. 2014) ...............................................................................2

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ........................................................................................2, 3

*Luna v. Shac, LLC*,
   122 F. Supp. 3d 936 (N.D. Cal. 2015).....................................................................8

*Maier v. J.C. Penney Corp.*,
   No. 13-0163, 2013 WL 3006415 (S.D. Cal. June 13, 2013) .........................................5

*In re Matter of Rules & Regs. Implementing the TCPA of 1991*,
   30 F.C.C. Rcd. 7961 (July 10, 2015).................................................................*passim*

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir.2011) ................................................................................3

*McKenna v. WhisperText*,
   No. 14-00424, 2015 WL 5264750 (N.D. Cal. Sept. 9, 2015)......................................15

*McRae v. Bolstad*,
   101 Wn. 2d 161, 676 P.2d 496 (1984) ...................................................................23

*Mendez v. C-Two Group, Inc.*,
   No. C-13-5914 (N.D. Cal. Apr. 21, 2014)..............................................................15

*Mendia v. Garcia*,
   768 F.3d 1009 (9th Cir. 2014) ..............................................................................4

*Meyer v. Bebe Stores, Inc.*,
   No. 14-00267, 2015 WL 431148 (N.D. Cal. Feb. 2, 2015).........................................2

*Moore v. DISH Network LLC*,
   No. 13-36, 2014 WL 5305960 (N.D. W. Va. Oct. 15, 2014) .......................................8

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
(16-00914) - v

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*Morgan v. Branson Vacation & Travel, LLC*,
    No. CIV-13-188-C, 2013 WL 5532228 (W.D. Okla. Oct. 4, 2013) ............................................16

*Nunes v. Twitter, Inc.*,
    No. 14-cv-02843-VC, 2016 WL 3660526 (N.D. Cal. July 1, 2016) ............................................11

*O'Shea v. All. Sec. LLC*,
    No. SACV 13-01054, 2013 WL 12131275 (C.D. Cal. Nov. 8, 2013) ........................................16

*Payton v. Kale Realty, LLC*,
    164 F. Supp. 3d 1050 (N.D. Ill. 2016) ............................................................................ 10, 11, 15

*Pinkard v. Wal-Mart Stores, Inc.*,
    No. 12-02902, 2012 WL 5511039 (N.D. Ala. Nov. 9, 2012) ....................................................20

*Reichman v. Poshmark, Inc.*,
    No. 16-2359, 2017 WL 436505 (S.D. Cal. Jan. 3, 2017) ......................................................... 5

*Rinky Dink Inc. v. Elec. Merch. Sys. Inc.*,
    No. C13-1347, 2014 WL 5880170 (W.D. Wash. Sept. 30, 2014) ........................................13, 15

*Rinky Dink, Inc. v. Elec. Merch. Sys.*,
    No. C13-1347, 2015 WL 778065 (W.D. Wash. Feb. 24, 2015) ................................................14

*Roberts v. Paypal, Inc.*,
    621 F. App'x 478 (9th Cir. 2015) ..........................................................................................20

*Saunders v. NCO Fin. Sys., Inc.*,
    910 F. Supp. 2d 464 (E.D.N.Y. 2012) ...................................................................................20

*Sherman v. Yahoo! Inc.*,
    150 F. Supp. 3d 1213 (S.D. Cal. 2015) ................................................................................. 8

*Sherman v. Yahoo! Inc.*,
    997 F. Supp. 2d 1129 (S.D. Cal. 2014) .................................................................................20

*Smith v. Securus Techs, Inc.*,
    2015 WL 4636696 (D. Minn. Aug. 4, 2015) .........................................................................15

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ......................................................................................................... 2

*Sterk v. Path, Inc.*,
    46 F. Supp. 3d 813 (N.D. Ill. 2014) ....................................................................................... 6

*Ung v. Universal Acceptance Corp.*,
    No. 15-127, 2016 WL 4132244 (D. Minn. Aug. 3, 2016) ........................................................ 2

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
(16-00914) - vi

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*Van Patten v. Vertical Fitness Grp., LLC*,
  22 F. Supp. 3d 1069 (S.D. Cal. 2014) .........................................................20

*Wash. Envtl. Council v. Bellon*,
  732 F.3d 1131 (9th Cir. 2013) ................................................................... 2

*Weisberg v. Stripe, Inc.*,
  No. 16-00584, 2016 WL 3971296 (N.D. Cal. July 25, 2016) ..................... 7

*Wick v. Twilio Inc.*,
  No. C16-00914, 2016 WL 6460316 (W.D. Wash. Nov. 1, 2016) ...............17

*Wright v. Lyft, Inc.*,
  No. 2:14-00421, 2016 WL 7971290 (W.D. Wash. Apr. 15, 2016)..............21

**Statutes**

47 U.S.C. § 227(a)(1) ...................................................................................... 5

RCW 19.86.020 ...............................................................................................22

RCW 19.190.010 .............................................................................................20

**Other Authorities**

47 C.F.R. § 64.1200(f) ....................................................................................17

Fed. R. Civ. P. 12(b)(1) .................................................................................. 2

Fed. R. Civ. P. 12(d) .......................................................................................24

Fed. R. Civ. P. 12(b)(6) .................................................................................. 2

*In re Rules & Regs. Implementing the TCPA of 1991*,
  27 F.C.C. Rcd. 1830 ....................................................................................17

*In re Rules & Regs. Implementing the TCPA of 1991*,
  31 F.C.C. Rcd. 88 (Jan. 11, 2016)........................................................14, 15

*In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
  18 F.C.C. Rcd. 14014 (2003) .................................................................18, 20

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
(16-00914) - vii

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

# I.    INTRODUCTION

This matter is before the Court on Defendant's Motion to Dismiss, ECF. No. 51, ("Def. Mot.") Plaintiff's Second Amended Complaint, ECF No. 35, ("SAC"), which is nearly identical to Defendant's motion to dismiss Plaintiff's First Amended Complaint. The Court granted Defendant's first motion to dismiss without prejudice and with leave to amend. Plaintiff amended his complaint, and in response, Defendant filed a Rule 11 Motion. On February 23, 2017, the Court denied that motion, holding that Plaintiff's additional factual and legal allegations included in the SAC were "responsive to the Court's order dismissing the earlier complaint." ECF No. 45 a 3. Defendant's motion at bar does not substantively respond to the additional factual and legal allegations added in Plaintiff's SAC, which the Court previously found was based in fact and law under a Rule 11 standard. Now, Defendant moves to dismiss the same complaint which the court previously found to be not "frivolous" on the basis that the very same allegations are not "plausible." The additional factual allegations pled in the SAC, however, more than adequately state non-frivolous, plausible claims. Defendant's motion should be denied.

# II.    PROCEDURAL BACKGROUND

In June 2016, Plaintiff Noah Wick filed a complaint alleging violations of the Federal Telephone Consumer Protection Act ("TCPA") and related Washington statutes, the Washington Consumer Protection Act, RCW §19.86.010 *et seq.* ("CPA"), and the Washington Commercial Electronic Mail Act, RCW § 19.190.020 *et seq.* ("CEMA"). Plaintiff filed an amended complaint and, in November 2016, Defendant filed a motion to dismiss, which was granted. In its order granting Defendant's motion, the Court found that Plaintiff had adequately consented to receive calls and messages because those messages were not "commercial" in nature. Plaintiff filed the SAC, making additional factual allegations on the issue that the communications were commercial under the TCPA. Defendant moved for Rule 11 sanctions after the SAC was filed. The Court denied Defendant's motion (ECF No. 45), noting that Plaintiff's claims have a valid basis in both law and fact. This matter is before the Court on a motion to dismiss that is nearly identical to Defendant's first motion to dismiss

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
(16-00914) - 1

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

and does not address the additional allegations in the SAC.

## III. PLAINTIFF HAS ARTICLE III STANDING

Defendant challenges Plaintiff's Article III standing pursuant to Fed. R. Civ. P. 12(b)(1). Generally, to establish Article III standing, any plaintiff must show (1) he "suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision." *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1139-40 (9th Cir. 2013); *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). "The district court resolves a facial attack [on Rule 12(b)(1) motion] as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." (citation and quotation marks omitted)).

Notably, on this motion to dismiss, Defendant does not dispute that Plaintiff Wick sufficiently alleged injury in fact.[1] Instead, Defendant questions whether his injuries are traceable to the challenged conduct and redressable. However, Plaintiff has alleged multiple concrete tangible and intangible injuries that are traceable to the challenged conduct and redressable. Plaintiff therefore has sufficiently alleged Article III standing.

## A. Plaintiff's Injuries Are Fairly Traceable to Defendant's Conduct.

---

[1] Although Defendant no longer disputes injury in fact, notably courts routinely find that receipt of a single text message is sufficient to confer Article III standing. *See Cour v. Life360, Inc.*, No. 16-CV-00805-TEH, 2016 WL 4039279, at *2 (N.D. Cal. July 28, 2016) (single text message sufficient to confer standing); *see also Meyer v. Bebe Stores, Inc.*, No. 14-CV-00267, 2015 WL 431148, at *1 (N.D. Cal. Feb. 2, 2015) (same); *Ung v. Universal Acceptance Corp.*, No. 15-127, 2016 WL 4132244, at *2 (D. Minn. Aug. 3, 2016) (one call "is enough to clear Article III's low bar for a concrete injury"); *Hewlett v. Consol. World Travel, Inc.*, No. 2:16-713 WBS AC, 2016 WL 4466536, at *3 (E.D. Cal. Aug. 23, 2016) (single TCPA violation sufficient to confer standing).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
(16-00914) - 2

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Plaintiff Wick utilized public records through a reverse white pages look-up to determine that the number from which he received the text message at issue was registered to Twilio. SAC ¶ 46. Despite these public records affirmatively linking the text message to Twilio, Defendant contends that there is no plausible connection between Twilio and the text messages, and that Plaintiff must further allege "how the text was sent, who clicked the send button, and who gave approval to send it" as well as "detail the relationship between Twilio and Crevalor" (Def. Mot. at 8)—information that would be impossible for a plaintiff to allege without discovery. Defendant fails to provide any authority for its contention and misapprehends the pleading standard. If Defendant has information that the reverse lookup was incorrect, it should file a motion for summary judgment (or just call Plaintiff's counsel), rather than argue on a motion to dismiss that Plaintiff's facts as alleged are untrue.

In order to sufficiently plead traceability, a plaintiff must show the injury alleged is "fairly traceable" to the challenged action of the defendant and not the result of "the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560, 112 S. Ct. 2136 (citation and quotation marks omitted). In other words, "plaintiffs must establish a 'line of causation' between defendants' action and their alleged harm that is more than 'attenuated.'" *Maya v. Centex Corp.,* 658 F.3d 1060, 1070 (9th Cir.2011) (citation omitted). But a causal chain "does not fail simply because it has several 'links,' provided those links are 'not hypothetical or tenuous' and remain 'plausibi[le].'" *Id.* Here, Plaintiff specifically alleges that Twilio initiated and sent the text message using an autodialer from a number registered to Twilio, as confirmed by public records and Twilio's own public representations about the scope of services it provides. *See, e.g.*, SAC ¶¶ 39, 78–85. Plaintiff then further details the process through which he alleges Twilio initiated and sent the text message. *See id.* ¶¶ 18–37. Plaintiff's allegations are not based on conjecture or speculation, and establish at least a reasonable probability that Defendant's conduct, and not the wholly independent conduct of Crevalor, caused Plaintiff's injury.

Contrary to Defendant's suggestion, sufficiently pleading causation does not require definitely proving the merits of plaintiff's claims before discovery. *See Hall v. Norton*, 266 F.3d 969, 977 (9th Cir. 2001) (a plaintiff "need not establish causation with the degree of certainty that would be required

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

for him to succeed on the merits, say, of a tort claim"). Indeed, "the purpose of the standing doctrine is to ensure that the plaintiff has a concrete dispute with the defendant, not that the plaintiff will ultimately prevail against the defendant." *Id.* at 976-77; *see also Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1152 (9th Cir. 2000) ("causal connection . . . need not be so airtight at this stage of the litigation as to demonstrate that the plaintiffs would succeed on the merits").

Likewise, if Defendant denies any association with the text message received by Plaintiff, it could have moved for summary judgment under Fed. R. Civ. P. 56, provided the court and the parties with evidence that the phone number from which Plaintiff received the texts was not associated with Twilio, and that it has no association with Crevalor. Defendant's failure to do so speaks for itself.

**B.    Plaintiff's Injuries Are Likely to Be Redressed by this Court.**

Because Plaintiff sufficiently alleged a causal connection, Defendant's argument for redressability is moot. However, the fact that the TCPA provides for statutory damages belies any further argument that Plaintiff's injuries are not redressable here. *See Cuellar-Aguilar v. Deggeller Attractions, Inc.*, 812 F.3d 614, 621 (8th Cir. 2015) (noting courts repeatedly hold that "the availability of statutory damages show[s] that the plaintiffs' injury [is] redressable"). In addition to statutory damages, the injuries alleged here (SAC ¶¶ 66–70) are redressable because he seeks monetary damages for past injury. *See Mendia v. Garcia*, 768 F.3d 1009, 1012 (9th Cir. 2014) ("it's clear that the relief Mendia seeks—an award of monetary damages—would redress the injury he has alleged."). Finally, Plaintiff's request for injunctive relief to prevent ongoing conduct similarly shows the injuries are redressable. SAC at VII(C). Considering all of Plaintiff's factual allegations in the SAC, as well as all reasonable inferences to be drawn from those allegations, Plaintiff has sufficiently pled standing.

**IV.    PLAINTIFF SUFFICIENTLY PLED THE USE OF AN AUTODIALER**

Plaintiff alleges that Defendant used an autodialer:

[T]he calls and text messages . . . were sent using equipment that had the capacity to store telephone numbers retrieved from a database and to dial such numbers, specifically the Twilio APIs and its <Queue> and <Dial> functions. The Twilio API can also be programmed to generate and dial random or sequential numbers. By using such equipment, Twilio and its customers were able to effectively send calls and text

messages simultaneously to thousands of wireless telephone numbers *en masse* without human intervention.

SAC ¶ 82. This allegation is consistent with the definition of an autodialer (or, "ATDS") under the TCPA: "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). This definition was further refined by the Federal Communications Commission ("FCC"): "[D]ialing equipment generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of 'autodialer') *even if it is not presently used for that purpose*, including when the caller is calling a *set list of consumers*." *See In re Matter of Rules & Regs. Implementing the TCPA of 1991*, 30 F.C.C. Rcd. 7961 (July 10, 2015) (hereinafter "2015 FCC Ruling") (emphasis added). "Hence, any equipment that has the requisite 'capacity' is an autodialer and is therefore subject to the TCPA." *Horowitz v. GC Servs. Ltd. P'ship*, No. 14CV2512-MMA RBB, 2016 WL 7188238, at *14 (S.D. Cal. Dec. 12, 2016).

Where, as here, a plaintiff "has pleaded that an ATDS was used to make the calls to his cellular phone[,] . . . **nothing more is required** to state a claim for relief under the TCPA." *Hashw v. Dep't Stores Nat'l Bank*, 986 F. Supp. 2d 1058, 1061 (D. Minn. 2013) (emphasis added); *see also Reichman v. Poshmark, Inc.*, No. 16-CV-2359, 2017 WL 436505, at *5 (S.D. Cal. Jan. 3, 2017) ("[I]t would be unreasonable to require Plaintiff, without the benefit of discovery, to describe the technical details of Defendant's alleged ATDS."); *Iniguez v. The CBE Grp.*, 969 F. Supp. 2d 1241, 1247 (E.D. Cal. 2013) (holding plaintiff need not allege specific facts to support an allegation that a defendant used an autodialer). This pleading standard takes into account the difficulty a TCPA plaintiff faces in being able to know and describe, prior to discovery, the type of calling system defendant utilized. *See Hashw*, 986 F. Supp. 2d at 1061 n.2; *see also Maier v. J.C. Penney Corp.*, No. 13CV0163-IEG (DHB), 2013 WL 3006415, at *2 (S.D. Cal. June 13, 2013).

Although Plaintiff's express allegations that Defendant used an autodialer are sufficient, Plaintiff further pled significant detail supporting a plausible inference that an autodialer was used. Specifically, Plaintiff pled: the time frame in which the text message was sent and the exact dates of

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

receipt (SAC ¶ 39); the characteristics of the message, which are similar to those likely to be sent *en masse* as part of a promotional campaign used to reach a large number of customers (*id.* ¶¶ 38-40, 78-79); the exact words contained in the text messages (*id.* ¶ 39); and the specific Twilio-owned number from which the text messages originated (*id.* ¶ 46). Plaintiff further describes the Twilio equipment and text messaging process. *Id.* ¶¶ 18-37. These detailed allegations about the characteristics of the text message at issue and the use of autodialer equipment support a reasonable inference that an autodialer was used.[2]

In addition, one district court already found that equipment/software similar to that used by Twilio is an autodialer as a matter of law. *See Sterk v. Path, Inc.*, 46 F. Supp. 3d 813, 819 (N.D. Ill. 2014) ("The uploading of call lists … is essentially the same as when a call list is entered by a telemarketer in a database. It is the ultimate calling from the list by the automated equipment that is the violation of the TCPA."). The FCC, too, found a similar system to constitute an autodialer. *See* 2015 FCC Ruling ¶¶ 23–24 ("[V]arious pieces of different equipment and software can be combined to form an autodialer."). Defendant nevertheless argues that (1) where a plaintiff "voluntarily" releases his phone number, there is no plausible inference that an autodialer was used, and (2) Twilio's mass texting program requires human intervention and cannot be an autodialer as a matter of law. Both arguments miss their mark.

First, the manner in which Defendant obtained Plaintiff's phone number has no bearing on whether an autodialer was used. The cases cited by Defendant dismissed TCPA claims because the plaintiffs made only conclusory allegations and the facts suggested that the plaintiffs had specifically opted to receive customized text messages triggered only in response to the plaintiff's specific actions,

---

[2] *See Gragg v. Orange Cab Co. Inc.*, No. 12-0576, 2013 WL 195466, at *3 n.3 (W.D. Wash. Jan. 17, 2013) ("Plaintiffs alleging the use of a particular type of equipment under the TCPA are generally required to rely on indirect allegations such as the content of the message, the context in which it was received, and the existence of similar messages, to raise an inference that an automated dialer was utilized. Prior to the initiation of discovery, courts cannot expect more."); *Kazemi v. Payless Shoesource Inc.*, No. 09-5142, 2010 WL 963225, at *2 (N.D. Cal. Mar. 16, 2010) ("[P]laintiff's description of the received messages as being formatted in SMS short code licensed to defendants, scripted in an impersonal manner and sent en masse supports a reasonable inference that the text messages were sent using an ATDS. This is sufficient to meet federal pleading requirements."); *Buslepp v. B&B Entm't, LLC*, No. 12-60089, 2012 WL 1571410, at *1–2 (S.D. Fla. May 3, 2012) (finding plaintiff's allegation that defendant had used an ATDS, a sufficient factual allegation under *Twombly*, despite plaintiff alleging only the date and content of the phone number and that others were sent the same message without consent).

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

thus indicating that an autodialer was not used. *See Weisberg v. Stripe, Inc.*, No. 16-cv-00584-JST, 2016 WL 3971296, at *4 (N.D. Cal. July 25, 2016) ("the allegations suggest that Stripe's text messages were sent to an individual user of its checkout service and in response to a direct communication from Plaintiff."); *Epps v. Earth Fare, Inc.*, No. 16-08221 at *9 (C.D. Cal. Feb. 27, 2017) (plaintiff alleges, without more, that these messages were sent using an autodialer); *Duguid v. Facebook, Inc.*, No. 15-cv-00985-JST, 2016 WL 1169365, *5 (N.D. Cal. Mar. 24, 2016) ("text messages are targeted to specific phone numbers and are triggered by attempts to log into Facebook accounts associated with those phone numbers.").

Here, unlike in *Weisberg* and *Duguid*, where the plaintiffs specifically opted in to receive text messages from Defendant in direct response to some affirmative action or communication from the plaintiff, Twilio automatically texted Plaintiff Wick to encourage his purchase of the product even after he terminated his search for a free sample product. Further, Plaintiff here does not rely solely on conclusory allegations about the use of an autodialer, and instead alleged specific characteristics of the text message and how Twilio's system initiates the text messages. *See Brickman v. Facebook, Inc.*, No. 16-cv-00751-TEH, 2017 WL 386238, at *3 (N.D. Cal. Jan. 27, 2017) ("content of Facebook's text message, the context of the Facebook's text message, and the existence of similar messages do not preclude a finding that Facebook employed an ATDS to send out the Birthday Announcement Texts.").

Further, the line of cases cited by Defendant does not suggest that the receipt of customized text messages in and of themselves demonstrate that no autodialer was used as a matter of law. As one court recognized, a company may have technology to customize messages while still utilizing an autodialer. *See id.* ("[I]t is plausible that Facebook could have used an ATDS to send out the targeted messages . . . where Brickman alleges Facebook possessed the particular information and technology needed to craft such targeted messages (i.e., cell phone numbers, users' birthdays, friendship connections, etc.).")

Second, Plaintiff specifically alleged that Twilio's equipment permitted text messages to be sent without human intervention. SAC ¶ 82. Contrary to Defendant's argument, the provision of

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

software programming tools, and the incorporation of specific computer code and data into those tools, do not constitute the type of human intervention contemplated by the FCC sufficient to rule out the use of an autodialer. All automated calls (voice or text) require at least some human involvement, from programming the equipment, to turning on the equipment, to uploading lists of numbers, and even drafting the language of a mass distributed promotional text. Indeed, if such human intervention were sufficient to rule out the use of an autodialer, there would be no TCPA claims at all. *See Sherman v. Yahoo! Inc.*, 150 F. Supp. 3d 1213, 1219 (S.D. Cal. 2015) (a human "will always be a but-for cause of any machine's action," but determining whether equipment is an autodialer "requires more than a but-for causation."). Rather, the FCC explained that "[h]ow the human intervention element applies to a particular piece of equipment is specific to each individual piece of equipment, based on how the equipment functions . . . and is therefore a case-by-case determination." 2015 FCC Ruling ¶ 17. As such, consideration of the human intervention element should focus on the equipment used, rather than the programming necessary to create the autodialer system. *See Moore v. DISH Network LLC*, No. 13-CV-36, 2014 WL 5305960, at *13 (N.D. W. Va. Oct. 15, 2014) (finding an autodialer despite human involvement in creating a call list); *Lardner v. Diversified Consultants Inc.*, 17 F. Supp. 3d 1215, 1222 (S.D. Fla. 2014) ("Many other courts . . . have followed the FCC's interpretation that automated dialing systems that automatically dial cell phone numbers from a preprogrammed list . . . are 'automatic telephone dialing systems' under the TCPA."); *see also Sherman*, 150 F. Supp. 3d at 1218 (rejecting "but for" analysis); *Johnson v. Yahoo!, Inc.*, No. 14 CV 2028, 14 CV 2753, 2014 WL 7005102, at *5 (N.D. Ill. Dec. 11, 2014) (same); *Izsak v. Draftkings, Inc.*, No. 14-cv-07952, 2016 WL 3227299, at *5 (N.D. Ill. June 13, 2016) (same).

In addition, determining the type and extent of human intervention is usually a question of fact, and best determined after discovery. *Id.* at *4-5 (issue of human intervention should be considered only after fact discovery into the nature and functionality of the equipment used). The primary case Defendant cites in support of its argument was decided only on summary judgment after the parties had the benefit of discovery. *See Luna v. Shac, LLC*, 122 F. Supp. 3d 936, 940 (N.D. Cal. 2015). Taking the SAC as a whole, and construing all reasonable inferences from Plaintiff's

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    allegations as true, the use of an autodialer was sufficiently pled.

2    **A.  Twilio Initiates Calls and Text Messages Within the Meaning of the 2015 FCC Ruling.**

3            Defendant alleges that "[t]he FCC has defined what it means to be an 'initiator' and Twilio

4    does not fall within that definition." Def. Mot. at 12. To support its assertion, Defendant relies on a

5    single 2015 FCC Ruling. But, in that very ruling, the FCC made clear that "neither the TCPA nor the

6    Commission's rules define 'make' or 'initiate,' nor do they establish specific factors to be considered

7    in determining who makes or initiates a call." 2015 FCC Ruling ¶ 29. And based upon the guidance

8    that the 2015 FCC Ruling *does* provide, Twilio falls squarely within the scope of "initiators" regulated

9    by the TCPA:

10           [The FCC has] "noted that 'initiate' suggests some 'direct connection between a person
             or entity and the making of a call' . . . [which] can include *'tak[ing] the steps necessary*
11           *to physically place a telephone call.'* [But] also can include being *'so involved in the*
             *placing of a specific telephone call' as to be deemed to have initiated it."*
12

13   2015 FCC Ruling ¶¶ 29–30 (emphasis added). Each of these descriptions apply to Twilio's services.

14           **1.  Twilio Takes the "Steps Necessary" to Physically Place Calls and Initiate Text**
15               **Messages.**

16           Twilio takes the "steps necessary to physically place the call." *Id.* As noted in Plaintiff's SAC,

17   the programs that actually send a text (the <SMS> function) or place a call (the <Dial> function) are

18   stored on and executed by Twilio's cloud based servers. *See* SAC ¶ 27. Although Defendant asserts

19   that Twilio's customers write a "client" program that can access those functions, neither the client

20   program nor the customer's computer actually place the call. Only when the <Dial> or <SMS>

21   function, which was coded by Twilio and stored on a Twilio server, is executed by a Twilio computer

22   is a single number dialed.

23           **a.  Twilio is Deeply Involved in Placing Calls and Text Messages.**

24           Twilio is an entity that is "so involved in placing the call as to be deemed to have initiated it."

25   2015 FCC Ruling ¶ 30. As noted in Plaintiff's SAC, Twilio determines what number a text message

26   will come from (SAC ¶ 30), generates the list of numbers a text message will be sent to (*id.* ¶ 27),

27   segments and reassembles the text message itself (*id.* ¶ 32), and determines when the messages will

28

be sent (*id. ¶ 33*). Although Twilio's clients play a role in the process of sending a text message through Twilio's servers by writing a "client program," even that role can be automated using Twilio's Twimlets service to automatically generate a "client program," or Twilio's "Developer Gallery" service to allow a client to hire a programmer to write the "client program" for them.

Twilio takes the message information passed to it from the customer and constructs the packet of information into the standard Short Message Peer-to-Peer ("SMPP") protocol format so it can be sent to the cellular networks. Twilio provides the structure and format of the text, such that Twilio initiates the text message. SAC ¶¶ 29–32. Thus, Plaintiff alleges that Twilio is so involved that the text could not have been sent without Twilio's initiation. Twilio performs optimal routing of messages. Twilio analyzes the "to" destination mobile number and determines to which carrier to initiate/send the outbound message. Each carrier maintains its own traffic requirements for number of simultaneous outbound messages and message throughput. Twilio dynamically controls the rate of outbound traffic and only initiates/sends messages when it does not exceed predefined thresholds for traffic flow to the carriers, which varies among carriers. Therefore, again, Twilio controls if and when to send an outbound text message. *Id. ¶ 33*. Twilio is so involved that it should be deemed to "initiate" the call. *Id. ¶¶ 29–33*.

As such, Twilio is distinguishable from *Payton v. Kale Realty, LLC*, 164 F. Supp. 3d 1050 (N.D. Ill. 2016). In *Payton*, the court considered Voice Shot, a group text messaging service which "does not control any of its subscribers' recipient lists or the content of their messages" and only submits those messages "at the time of the subscriber's choosing." *Id.* at 1057-58. In contrast, here, Twilio generates the recipient list, segments and reassembles the text message itself, and can determine when the text messages will be sent. SAC ¶¶ 27-33. Moreover, Voice Shot does not, as is the case here, provide its users with a software infrastructure and "developer gallery" service which can automate the role of the user or client. Instead, Voice Shot users must take a number of affirmative steps, including:

> (1) manually inputting telephone numbers; or (2) uploading telephone numbers contained on a separate software file, such as an Excel spreadsheet, into their contacts lists. Then, [3] to send a group text message, the subscriber must first input the content

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

of the message they wish to transmit and specify the telephone numbers to which the message will be transmitted.

*Payton*, 164 F. Supp. 3d. at 1054. Twilio's services, in contrast, automate and transfer responsibility for each of these steps to Twilio's software and/or a Twilio developer. Finally, as noted below, *Payton*—like nearly every other case cited in Defendant's motion—was decided upon a motion for summary judgment and, as such, is inappropriately considered in this case before discovery has fully revealed the true nature of Defendant's services.

> **b.** **Twilio Has All Other Characteristics of an "Initiator" Noted in the 2015 FCC Ruling.**

Twilio exhibits other characteristics of an "initiator" noted in the FCC's Ruling, including: (1) whether "a person willfully enables fraudulent spoofing of telephone numbers or assists telemarketers in blocking Caller ID, by offering either functionality to clients" and (2) "whether a person who offers a calling platform service for the use of others has knowingly allowed its client(s) to use that platform for unlawful purposes." 2015 FCC Ruling ¶ 30. As the SAC alleges, Twilio "actively shields the true source of calls it initiates" and offers that functionality to its clients through the Twilio Masked Phone Numbers service. SAC ¶ 31. And, Twilio "contributed to Crevalor's direct violations [of state and federal law] by knowingly, or being willfully blind of Crevalor's intention to use Twilio software and servers to conduct a campaign of sending unsolicited commercial text messages." *Id.* ¶ 117.

> **2.** **The 2015 FCC Ruling Cited by Defendant Is Distinguishable and Non-Binding.**

Even if Defendant is correct regarding the meaning of the 2015 FCC Ruling, it would not warrant dismissal of the SAC. In its ruling, the FCC considered only the applicability of the TCPA to three smart-phone applications—YouMail, TextMe, and Glide—and federal courts have noted that Defendant's "insistence on applying language used by the FCC [in the 2015 FCC Ruling] to discuss TextMe and YouMail disregards the great emphasis the FCC places on the need to consider each case individually, based on the totality of the circumstances presented by that case." *Nunes v. Twitter, Inc.*, No. 14-cv-02843-VC, 2016 WL 3660526, at *4 (N.D. Cal. July 1, 2016). As such, the portions of the 2015 FCC Ruling quoted by the Defendant are taken out of context and consider very different factual

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
(16-00914) - 11

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

circumstances than those presented in the present case.

### a. Twilio is Distinguishable from YouMail.

With one exception noted below (regarding TextMe), every portion of the 2015 FCC Ruling cited in Defendant's motion refers only to YouMail, a smart-phone application that sends a text message when the phone receives voicemail. As noted in the 2015 FCC Ruling, however, YouMail is distinguishable from Twilio:

> YouMail is a reactive and tailored service; in response to a call made to the app user, YouMail simply sends a text message to that caller, and only to that caller. This kind of service differs from the non-consensual calling campaigns over which the TCPA was designed to give consumers some degree of control.

2015 FCC Ruling ¶ 32. Twilio, in contrast: (1) is not reactive because it allows text messages to be sent even when there is no incoming text or voicemail; and (2) permits the creation of a widespread calling campaign of the kind the TCPA was designed to prevent. As such, the portions of 2015 FCC Ruling quoted by Defendant[3] are inapplicable.

### b. Twilio is Distinguishable from TextMe.

The only portion of the FCC Ruling included in Defendant's motion which does not concern YouMail is the below-quoted portion of ¶ 37, which concerns TextMe, another smartphone application that allows two users of the application to text one another:

> [W]e conclude that the app user's actions and choices effectively program the cloud-based dialer to such an extent that he or she is so involved in the making of the call as to be deemed the initiator of the call. [The software provider] is not the maker or initiator of the ... text messages because it is not programming its cloud-based dialer to dial any call, but "merely has some role, however minor, in the causal chain that result in the making of a telephone call."

Def. Mot at 13 (quoting 2015 FCC Ruling ¶ 37). The full context of the quotation, provided below, makes clear this language only concerns the TextMe application:

> While we agree with commenters that TextMe's control of the content of the invitational text message is a reason for concern, and take into account the goals and purposes of the TCPA, we conclude that the app user's actions and choices effectively

---

[3] Def. Mot. at 13 (quoting 2015 FCC Ruling ¶ 25); *id.* at 13–14 (quoting 2015 FCC Ruling ¶¶ 32, 33).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
(16-00914) - 12

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

> program the cloud-based dialer to such an extent that he or she is so involved in the making of the call as to be deemed the initiator of the call. Like YouMail, TextMe is not the maker or initiator of the invitational text messages because it is not programming its cloud-based dialer to dial any call, but "merely ha[s] some role, however minor, in the causal chain that results in the making of a telephone call."

2015 FCC Ruling ¶ 37. But, TextMe, like YouMail, is distinguishable from Twilio. First, the TextMe application relies on the user's own phone, which initiates calls and texts; Twilio initiates the calls from its own cloud-based servers, not the user's phone. Second, unlike Twilio, TextMe is not scalable. It does not permit the creation of a mass-texting campaign of unsolicited advertisements envisioned by the TCPA. TextMe only allows users to manually send text messages to other users of the application, or automatically send a text message to certain contacts in the user's phone inviting them to download the TextMe application. Neither of these functions permit the wide-scale automated advertising that Twilio permits its users to engage in. Moreover, unlike Twilio which initiates calls from its cloud-based servers, it is the user's own phone that actually initiates a TextMe text.

### 3.      Consideration of the 2015 FCC Ruling Is Premature upon a Motion to Dismiss.

Finally, consideration of the 2015 FCC Ruling is premature upon a motion to dismiss. A number of federal courts have, in fact, rejected Defendant's precise argument as inappropriate at this stage. *See, e.g.*, *Couser v. Pre-paid Legal Servs., Inc.*, 994 F. Supp. 2d 1100, 1104-05 (S.D. Cal. 2014) ("[W]ith only pleadings to go on and no discovery . . . it is simply too early in this litigation for the Court to affirmatively conclude that [Defendant] is the middleman it claims. . . . [T]he Court rejects [Defendant]'s argument that [Plaintiff]'s claim should be dismissed based upon the . . . FCC's rulings in administering the statute."); *Rinky Dink Inc. v. Elec. Merch. Sys. Inc.*, No. C13-1347-JCC, 2014 WL 5880170, at *4 (W.D. Wash. Sept. 30, 2014) (denying motion to dismiss in spite of Defendants' reliance on FCC decisions).

## B.      Defendant's Assertion of "Carrier" or "Transmitter" Immunity Is Premature and Inapplicable to Twilio's Services.

Defendant's motion to dismiss relies principally on the argument that it is merely a "common carrier" or "transmitter" of text messages and is, therefore, immune from liability under the TCPA.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
(16-00914) - 13

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Defendant's assertion is inaccurate and premature at this stage in the pleadings.

### 1. Twilio Is Not a Common Carrier or Transmitter.

Defendant correctly argues "[t]he TCPA was intended to 'apply to the persons *initiating* the telephone call or sending the message . . . .'" *Rinky Dink, Inc. v. Elec. Merch. Sys.*, No. C13-1347, 2015 WL 778065, at *4 (W.D. Wash. Feb. 24, 2015). But, as noted above, because the <Dial> and <SMS> functions—which actually initiate phone calls and text messages—are coded, stored, and executed by Twilio, Twilio *is* the entity that *initiates* phone calls and text messages on behalf of its clients, not merely a carrier or transmitter. Indeed, the FCC denied a petition by a text broadcaster, Club Texting, seeking a ruling that text broadcasters, such as Twilio, are not senders of text messages, similar to fax broadcasters which can be regarded as neutral conduits of messages. The FCC denied Club Texting's petition, holding that "granting the Petition would encourage violation of the TCPA because it limits primary responsibility for unsolicited text messages to third-party clients of text broadcasters whose identities are often difficult to determine." *In re Rules & Regs. Implementing the TCPA of 1991*, 31 F.C.C. Rcd. 88, 90 (Jan. 11, 2016). The FCC cited its 2015 Ruling, and decided that the Court must look at the totality of the facts and circumstances surrounding the placing of a particular call to determine if the text message was made in violation of the TCPA. *Id.* at 91.

### 2. Even if Twilio is a Common Carrier, It Is Liable for TCPA Violations.

Even if Twilio is a common carrier within the meaning of the TCPA (which it is not), "[a] common carrier may be held liable for the unlawful activities of its users if it is found that the carrier: (1) exercised a high degree of involvement with the unlawful activity, or (2) had actual notice of an illegal use of its services." *Rinky Dink, Inc.*, 2015 WL 778065 at *7. As noted above, Twilio has an extraordinarily high degree of involvement in the placing of calls and text messages, as well as knowledge of the use of its servers for illegal activity, rendering it liable under the TCPA.

### 3. Whether Twilio Is a Common Carrier Is Premature on a Motion to Dismiss.

Finally, as noted in the case law cited by Defendant, an assessment of whether a software provider is a common carrier is a fact-intensive inquiry that is inappropriate upon a motion to dismiss.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
(16-00914) - 14

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

"Plaintiff should be permitted to conduct discovery to determine whether [Defendant]'s role is as passive as it portrays." *Rinky Dink*, 2014 WL 5880170, at \*4; *see also Couser*, 994 F. Supp. 2d at 1103 ("[Defendant] argues later in its motion that its role 'is akin to a common carrier or software provider that simply receives instructions and transmits based on those instructions without alteration.' This all gives the impression that [Defendant] *is* the caller, or certainly close enough to the caller. Whatever the true and exact relationship between [Defendant] and its customers is, the Court finds it to be too fact-intensive, and certainly too disputed, to be resolved at the motion to dismiss phase in [Defendant]'s favor." (citation omitted)); *In re Rules & Regs. Implementing the TCPA of 1991*, 31 F.C.C. Rcd. 88, at \*9 ("[T]he Commission has concluded that the determination as to who is liable as the person who 'makes' or 'initiates' a particular robocall (including an autodialed text message) requires a fact-specific determination . . . as to any specific text broadcaster."). None of the cases cited in Defendant's motion[4] indicate that the question of "carrier" or "transmitter" liability should be assessed on a motion to dismiss.[5] The Court should not do so here.

## C. Twilio "Initiated" a Call or Text Message to Plaintiff Wick.

Defendant, further, argues that "Plaintiff does not plead that Twilio was an 'initiator' of the communications" he received. Def. Mot. ¶ 16. This is incorrect. The SAC consistently alleges that Twilio initiated the text message in question. *See, e.g.*, SAC ¶ 14 ("On or about February 12, 2016, he received one or two unsolicited calls and a text message initiated by Twilio"); *id.* ¶ 39 ("Immediately afterwards, Plaintiff received a text message that Twilio initiated or caused to be initiated."); *id.* ¶ 79

---

4 *See* Def. Mot. at 12–14 (citing *Smith v. Securus Techs, Inc.*, 2015 WL 4636696 (D. Minn. Aug. 4, 2015) (deciding the issue on summary judgment); *Payton*, 164 F. Supp. 3d at 1059 (deciding whether the Voice Shot service was "highly involved" in sending a message on summary judgment); *Kauffman v. CallFire, Inc.*, 141 F. Supp. 3d 1044 (S.D. Cal. 2015) (same); *McKenna v. WhisperText*, No. 14-cv-00424, 2015 WL 5264750, at \*1 (N.D. Cal. Sept. 9, 2015) (not addressing who "initiated" a call or text, but rather "whether Whisper's text invitations, as alleged, use an automated telephone dialing system [] in violation of the … (TCPA)."); *Clark v. Avatar Techs. Phl, Inc.*, No. H-13-2777, 2014 WL 309079 (S.D. Tex. Jan. 28, 2014) (not addressing the question of who "initiated" a call or text but rather whether violations of the TCPA can be based upon based upon allegations of conspiracy)).

5 The only case included in Defendant's motion that analyzes the question of who "initiates" a call or text message upon a motion dismiss is *Mendez v. C-Two Group, Inc.*, No. C-13-5914 (N.D. Cal. Apr. 21, 2014). Mendez, however, addressed a pleading error not present here: the complaint included no specific allegations against one of two named defendants. As more fully described above, in the present case, Plaintiff's SAC consistently and sufficiently alleges that Twilio initiated the text messages in question.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

("Twilio initiated or caused to be initiated calls, including, but not limited to, the call and text message received by Plaintiff").

And the text message at issue was sent to Plaintiff from a number owned by Twilio. *Id.* ¶ 46 ("The text message originated from the telephone number (702) 800-2853. A reverse white pages look-up of this number shows it is owned by "Twilio VoIP" of Las Vegas, Nevada. Accordingly, Plaintiff believes Twilio initiated or caused to be initiated this call."). Defendant argues that merely alleging that "a telephone number was associated with Twilio" is insufficient to assert a TCPA claim. Def. Mot. at 11. That argument is contrary to precedent. Federal courts have consistently found TCPA liability to lie with the owner of a telephone number or short code used to send an illegal message. *See, e.g.*, *Andrews v. All Green Carpet & Floor Cleaning Serv.*, No. 5:14-cv-00159-ODW(Ex), 2015 WL 3649585, at *4 (C.D. Cal. June 11, 2015) (Plaintiff's "likelihood of success on the merits of her claims is exceptionally high. [Her] in-depth records show that she received numerous calls from numbers purchased and owned by Defendants . . . ."); *Duchene v. Onstar, LLC*, No. 15-13337, 2016 WL 3997031, at *1 (E.D. Mich. July 26, 2016) ("The calls were from telephone number 972-372-1723, a telephone number owned by Defendant.").[6]

Moreover, as noted by the court in *Couser*, whether a defendant "initiated" the text message in question is too fact intensive to be determined on a motion to dismiss. *See Couser*, 994 F. Supp. 2d at 1103 ("[defendant]'s next argument is that, as a matter of fact, it isn't the party that called [plaintiff], and this turns on a rather technical argument about how its service works that is most likely beyond the scope of a motion to dismiss. In any event, the Court is inclined to disagree with it. . . . By [defendant]'s own words, it receives numbers from its customers and it transmits or delivers a recorded message to those numbers. That essentially makes it a caller, at least by some common-sense definition

---

[6] *See also, e.g.*, *Fields v. Mobile Messengers Am., Inc.*, No. C 12-05160 WHA, 2013 WL 6073426, at *1 (N.D. Cal. Nov. 18, 2013)("These messages were sent by five-digit sender numbers ('short codes') allegedly owned by Wise Media."); *O'Shea v. All. Sec. LLC*, No. SACV 13-01054 JVS(JPRx), 2013 WL 12131275, at *1 (C.D. Cal. Nov. 8, 2013) ("Plaintiff alleges these calls came from a telephone 'number owned by Defendants or one of their associated telemarketing agencies acting under Defendants' actual or apparent authority.'"); *Morgan v. Branson Vacation & Travel, LLC*, No. CIV-13-188-C, 2013 WL 5532228, at *1 (W.D. Okla. Oct. 4, 2013) ("Plaintiff began receiving calls to his 6743 number from a telephone number ending in 0780. The 0780 number is owned by Defendant Branson.").

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
(16-00914) - 16

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

of the term, even if the customers are the chief architect of the calls.").

## V.    DEFENDANT FAILED TO OBTAIN LEGAL CONSENT FROM PLAINTIFF THAT COMPLIED WITH THE TCPA AND THE 2012 FCC ORDER

As this Court recognized, "[t]he level of consent required to escape [TCPA] liability depends upon the character of the communication. A text or call that 'includes or introduces an advertisement or constitutes telemarketing' may only be sent with the recipient's 'prior express written consent.' All other texts and calls require only 'prior express consent.'" *Wick v. Twilio Inc.*, No. C16-00914RSL, 2016 WL 6460316, at *2 (W.D. Wash. Nov. 1, 2016) (citations omitted). Based on the allegations in the First Amended Complaint, this Court determined that Twilio's text was not telemarketing and, therefore, "plaintiff consented to the communications at issue when he submitted his telephone number during the Crevalor order process, plaintiff fails to plead a TCPA violation." *Wick,* 2016 WL 6460316, at *3. However, the Court also granted Plaintiff leave to amend his complaint to include additional facts that would address the Court's concerns regarding the text message. Plaintiff's SAC includes additional facts regarding the text itself and the circumstances surrounding its receipt that clarify and demonstrate that the purpose of Twilio's text was telemarketing.[7]

First, Plaintiff was only looking for and responding to an advertisement for a free sample. SAC ¶ 38. He was required to enter his phone number in order to go to a second webpage to obtain the free sample, and did so. *Id*. However, upon reaching the second webpage, Plaintiff was informed that, while the free trial bottle of the nutrient supplement was "sold out," the same bottle was available for purchase. *Id*. Plaintiff then terminated his browsing session and immediately received a text and call requesting that he return to the webpage and finish his order. *Id*. As such, the purpose of Defendant's text could not have been to permit Plaintiff to complete his order for a free trial sample; indeed, no such order could ever be completed. Instead, the purpose of the text was to encourage Plaintiff to go

---

[7] Because the text is telemarketing, prior express written consent is required. Specifically, Twilio must demonstrate it had an agreement in writing with a clear and conspicuous disclosure that by executing the agreement Plaintiff authorized the delivery of telemarking texts using an automatic telephone dialing system, and that entering into the agreement was not a condition of purchase. *See In re Rules & Regs. Implementing the TCPA of 1991*, 27 F.C.C. Rcd. 1830 ¶ 2 (Feb. 15, 2012) ("2012 FCC Order"); 47 C.F.R. § 64.1200(f). Defendant does not dispute that it failed to obtained prior express written consent.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

back to the webpage to purchase a full-price product. Critically, the text included a link that directs consumers to a site where only full-price products can be purchased. *Id.* ¶ 40. Thus, Twilio's text message was made to *encourage the purchase of a product*, which is telemarketing under the FCC's definition. *Id.* ¶¶ 40, 43, 45, 50. The subsequent phone call affirms the purpose of the text because the caller requested that Plaintiff provide his credit card number to purchase a new item, or, obtain a free sample by subscribing to a monthly auto-ship program. *Id.* ¶¶ 38–50.

Second, the SAC includes additional factual allegations that the text and call from Twilio constituted "advertising" and "telemarketing." As detailed above, the SAC also alleges that even if the call and text had elements of both customer service and marketing, under the "dual purpose" analysis provided by the FCC, and adopted by the Ninth Circuit, they are considered an "unsolicited advertisement." *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14098 (2003), adopted by the Ninth Circuit in *Chesbro v. Best Buy Stores*, L.P., 705 F.3d 913, 918 (9th Cir. 2012). SAC ¶ 46. In *Chesbro*, the Ninth Circuit held that "[i]f the call is intended to offer property, goods, or services for sale either during the call, or in the future (such as in response to a message that provides a toll-free number), that call is an advertisement." *Chesbro*, 705 F.3d at 918. As described above, Plaintiff alleged additional facts in the SAC sufficient to demonstrate that Defendant's conduct fits within the existing law and constitutes "telemarketing." In *Chesbro*, the Ninth Circuit instructed courts to evaluate whether a communication constitutes telemarketing "with a measure of common sense." *Id.* Here, based on the additional factual allegations, common sense dictates that the text and call were telemarketing under the TCPA. Twilio had no reason to request Plaintiff's credit card information if not for the current or future sale of products.

The additional facts in the SAC distinguish this case from *Aderhold v. Car2go N.A. LLC*, No. 14-35208, 2016 WL 4709873, at *1 (9th Cir. Sept. 9, 2016), cited in the Court's Order dismissing the First Amended Complaint. In that case, the plaintiff had agreed to the commercial transaction, and had begun to register but did not complete the registration process. Here, in contrast, Plaintiff alleged facts showing that he never agreed to a commercial transaction. Rather, he simply clicked on an

**KELLER ROHRBACK L.L.P**.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

advertisement to obtain a *free* trial bottle. The call and text were for the purpose of beginning a commercial transaction, not completing one, and therefore are distinguishable from *Car2go*.

The additional facts in the SAC are also distinguishable from the facts in *Gragg v. Orange Cab Co.*, 145 F. Supp. 3d 1046, 1049 (W.D. Wash. 2015). In *Gragg*, a "dispatch notification" text was deemed not telemarketing because it plainly did not offer or encourage the purchase of any other goods or services. *See id.* ("[T]he dispatch notification was a customer service related solely to the consumer transaction he had just initiated. . . . . Customers have an interest in being apprised of the status of their orders or known defects in the products purchased: the Court will not impede consumer access to this type of information."). The facts in the SAC, however, clarify that there was no transaction that required any customer service update. More importantly, the facts also clarify that the text message sent by Twilio was not related to an incomplete purchase (no free samples were available and a free sample is not a purchase). As alleged, it instead offered and encouraged the future purchase of products despite the fact that Plaintiff only submitted his number to obtain a free product sample, which was not available.

This case is more similar to *Bennett v. Boyd Biloxi, LLC*, No. 14-0330, 2015 WL 2131231 (S.D. Ala. May 6, 2015), in which the court held that calls offering free tickets constitute telemarketing under the TCPA, because the caller also asked that the recipient visit an associated website "to view all of your offers." *Id*. at *2. The court, applying the common sense rule, stated: "Employing common sense, what possible purpose could the defendant have for such an encouragement other than that of obtaining future sales to the plaintiff of the goods and services being offered?" *Id.* at *3. Here, similarly, Crevalor lured Plaintiff to a website promising a free product and obtained his number. After being informed that the "free sample" was unavailable—but was inexplicably still available for purchase—Plaintiff left. Twilio immediately contacted him through text and phone. What possible purpose could Twilio have for not only texting Plaintiff but calling him within five minutes of the text, to demand that he give his credit card number, other than current or future purchases? There is none. Plaintiff has alleged additional facts and law, to support his claim that the text and call he received was "telemarketing" under the TCPA.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
(16-00914) - 19

**KELLER ROHRBACK L.L.P**.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Even in light of the additional facts alleged in the SAC, Defendant maintains that "the text message he received, notifying him that he did not 'finish the order,' was purely informational; it merely notified him that he had not completed the order process that he initiated." Def. Mot. at 16–17. Yet Defendant does not advance any additional arguments, other than that a conclusory observation that Plaintiff's additional facts are not material. Further, the line of cases Defendant relies upon for support that it obtained appropriate consent apply only the looser consent standard for informational, non-telemarketing texts. Since the text at issue was telemarketing, as described above, these cases are inapposite.[8]

## VI. PLAINTIFF'S SAC SUFFICIENTLY ALLEGES A CEMA VIOLATION

### A. The Text Promoting the Purchase of Products Is "Commercial."

CEMA prohibits any entity from initiating or assisting in the transmission of an "electronic commercial text message." CEMA defines "electronic commercial text message" as a message "sent to promote real property, goods, or services for sale or lease." RCW 19.190.010. "Commercial," in this context, means "sent to promote real property, goods, or services for sale or lease." RCW 19.190.010(5). "Messages that serve both customer service and marketing purposes (such as calls from mortgage brokers notifying customers that interest rates had fallen) are "sent to promote real property, goods, or services for sale or lease" within the meaning of the statute. *Gragg*, 145 F. Supp. 3d at 1049.

> [S]uch messages may inquire about a customer's satisfaction with a product already purchased, but are motivated in part by the desire to ultimately sell additional goods or services. If the call is intended to offer property, goods, or services for sale either during the call, or in the future (such as in response to a message that provides a toll-free number), that call is an advertisement.

*In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. at 14098.

---

8 *See Roberts v. Paypal, Inc.*, 621 F. App'x 478, 478-9 (9th Cir. 2015) (applying prior express consent standard); *Sherman v. Yahoo! Inc.*, 997 F. Supp. 2d 1129, 1130 (S.D. Cal. 2014) (same); *Saunders v. NCO Fin. Sys., Inc.*, 910 F. Supp. 2d 464, 465-6 (E.D.N.Y. 2012) (same); *Van Patten v. Vertical Fitness Grp., LLC*, 22 F. Supp. 3d 1069, 1072 (S.D. Cal. 2014) (same); *Pinkard v. Wal-Mart Stores, Inc.*, No. 12-02902, 2012 WL 5511039, at *1 (N.D. Ala. Nov. 9, 2012) (same); *Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100, 1102 (C.D. Cal. 2014) (same); *Aderhold v. Car2go N.A., LLC*, No. 13-489, 2014 WL 794802, at *1 (W.D. Wash. Feb. 27, 2014) (same).

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Plaintiff received a text message initiated or transmitted by Twilio promoting the purchase of products and as such is "commercial" within the meaning of CEMA. Specifically, Plaintiff received the following message: "Noah, Your order at Crevalor is incomplete and about to expire. Complete your order by visiting http://hlth.co/xDoXEZ." SAC ¶ 39. Defendant's arguments that Plaintiff's message is not commercial are based on theories that this Court has rejected.

First, Defendant argues that the "text does not describe any specific products, services, prices, promotional offers or other solicitations." Def. Mot. at 20. But, as noted by this court in *Gragg v. Orange Cab Co.*, "[n]either the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context." 145 F. Supp. 3d at 1049 (citing *Chesbro v. Best Buy Stores, L.P.*, No. 11-35784, 2012 WL 4902839 at *3-4 (9th Cir. 2012)).

Second, relying on *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, (W.D. Wash. 2012), Defendant asserts that "an electronic text message is never deemed 'commercial' if the property, goods, or services promoted are 'free.'" Def. Mot. at 20. But the "free sample" offered in this case is not actually free; it is a part of an auto-ship program in which the recipient's credit card is authorized to be charged every month until cancelled by the recipient. SAC ¶ 50. Moreover, this court in *Gragg*, distinguished *Hickey* and explained that even a text message offering a free taxi-service application served "to promote or encourage the use of defendants' ... services [and] [u]nder the Ninth Circuit's analysis in *Chesbro*, ... triggered CEMA." 2013 WL 195466, at *4 (W.D. Wash. Jan. 17, 2013); *see also Wright v. Lyft, Inc.*, No. 2:14-CV-00421 MJP, 2016 WL 7971290, at *5 (W.D. Wash. Apr. 15, 2016) ("Defendant contends that, because the $25 ride credit and the Lyft app itself are free, the text message does not "promote real property, goods, or services for sale or lease." It is too narrow a reading of the statute and the intent behind the prohibition. Again, the Court concurs with Judge Lasnik's analysis ... [in] *Gragg*.").

The "bait-and-switch" tactic of offering a non-existent free sample only to promote the purchase of a full-price product also distinguishes this matter from *Daniel v. Five Stars Loyalty, Inc.*, No. 15-cv-03546-WHO, 2015 WL 7454260 (N.D. Cal. Nov. 24 2015). In that case, plaintiff provided his phone number to defendant in order to register for membership in a diners' club. At that point,

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
(16-00914) - 21

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

plaintiff received a message that would enable him to complete the registration process. That communication, however, was designed to enable plaintiff to use the precise service he had just requested and, as such, served a customer service function. Here, the "bait-and-switch" messaging served no such function and was exclusively commercial. The link sent to Plaintiff did not allow him to complete his order for a "free trial" and *only* allowed him to purchase other un-requested full-price products. The message could not serve any "customer service" function because Plaintiff was not yet, and did not intended to become, a customer who bought a product.

## B.    It Is Undisputed that CEMA Provides a Private Right of Action.

CEMA provides a private right of action to parties seeking *injunctive relief*, which Plaintiff has plead in his Complaint. *See* SAC ¶ 119 ("Plaintiff requests both monetary and injunctive relief pursuant to its causes of action"). Defendant argues only that the state Supreme Court, in a case that has already been settled without resolution, might find that monetary relief is not permitted. *See* Def. Mot. at 21. ("In *Gragg IV*, this Court determined that a plaintiff may obtain only injunctive relief under CEMA . . . Shortly thereafter, however, the court stayed the proceedings pending the Supreme Court of Washington's consideration of: . . . whether CEMA provides a plaintiff with a private right of action for damages for a violation of the statute"). As such, Defendant's claims regarding the private right of action available under CEMA do not warrant dismissal. Plaintiff's CEMA claims seeking an injunction should be permitted to proceed and, at most, Plaintiff's CEMA claims seeking monetary damages may be stayed pending a ruling by the Washington State Supreme Court.

## VII.    PLAINTIFF ALLEGES A WASHINGTON CPA CLAIM

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. The citizen suit provision entitles "[a]ny person who is injured in his or her business or property by a violation of [the act] . . . may bring a civil action in superior court to enjoin further violations, to recover the actual damages sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee." RCW 19.86.090. The state Supreme Court has held that, in order to bring a successful claim under the CPA,

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
(16-00914) - 22

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

a private plaintiff "must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn. 2d 778, 780, 719 P.2d 531 (1986). Plaintiff's complaint alleges that Twilio's practice of transmitting unsolicited text messages in and of itself constitutes an unfair or deceptive act or practice occurring in trade or commerce and affecting the public interest within the meaning of the Act. *See* SAC ¶¶ 99–111. Moreover, Defendant's violation of the TCPA and the state CEMA also constitute a *per se* violation of the CPA. *See, e.g.*, *McRae v. Bolstad*, 101 Wn. 2d 161, 165, 676 P.2d 496 (1984); *Handlin v. On-Site Manager Inc.*, 187 Wn. App. 841, 848, 351 P.3d 226 (2015) ("The first [element] may be established by showing that the alleged act constitutes a per se unfair trade practice. A per se unfair trade practice exists when the defendant has violated a statute which has been declared by the legislature to constitute an unfair or deceptive act in trade or commerce.").

Indeed, Washington's federal courts have expressly held that a "CEMA violation ... establishes the first three elements of a CPA claim." *Gragg*, 145 F. Supp. 3d at 1053. Defendant argues that this relationship between CEMA and the CPA would turn "every consumer complaint . . . into a triable violation of the act." Def. Mot. at 24. But this result was expressly provided for by the Washington State Legislature. *See* RCW 19.190.100 ("The legislature finds that the practices covered by this chapter are matters vitally affecting the public interest for the purpose of applying the consumer protection act, chapter 19.86 RCW."). As such, Defendant's arguments are insufficient to warrant dismissal of Plaintiff's CPA claim.

## VIII.   PLAINTIFFS' SECONDARY LIABILITY CLAIM

Defendant makes no arguments that Plaintiffs' Secondary Liability Count (Count IV) should be dismissed. On this basis alone, Defendant's motion to dismiss the entire case should be denied.

## IX.   PLAINTIFF SEEKS TO EXCLUDE EVIDENCE IMPROPERLY SUBMITTED BY DEFENDANT IN SUPPORT OF ITS MOTION TO DISMISS.

Defendant attaches exhibits to its Motion to Dismiss (ECF No. 51-1, 51-2), which are not part of the pleadings and are not properly authenticated. Def. Mot. at 17. These terms and conditions are

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
(16-00914) - 23

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

not part of the SAC's allegations. Defendant's evidence submitted in support of its motion to dismiss should not be considered. Generally, the Court may not consider materials outside the pleadings on a motion to dismiss without converting the motion into one for summary judgment. Fed. R. Civ. P. 12(b). *See Green v. N. Seattle Cmty. Coll.*, No. C06-1456JCC, 2007 WL 709308, at *2 (W.D. Wash. Mar. 6, 2007). The federal rules only "allow" the use of extrinsic evidence if the motion is converted to a summary judgment request and all parties are "given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The Court should not convert this dismissal request into a summary judgment motion. First, there was no "request" to make the conversion—Defendant simply filed extrinsic evidence. This does not comply with both the letter and spirit of Fed. R. Civ. P. 12(d). *Halle v. Providence Health & Servs.-Wash.*, No. C10-354MJP, 2010 WL 3259699, at *2–3 (W.D. Wash. Aug. 18, 2010) (rejecting after the fact request to convert a motion to dismiss to a summary judgment where defendant simply attached the material and did not make a request prior to submission). Second, converting this motion to dismiss to a summary judgment motion would prejudice Plaintiff because Defendant has refused to produce any discovery in this case to date despite having been served with discovery requests and failing to respond to them in a timely manner. Plaintiff requests that the Court not consider Defendants' extrinsic evidence attached to its motion to dismiss.

## X.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully request the Court deny Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint.

DATED this 20th day of March, 2017.

KELLER ROHRBACK, LLP

By *s/ Karin B. Swope*
   *s/ Mark A. Griffin*
Karin B. Swope, WSBA #24015
Mark A. Griffin, WSBA #16296
1201 Third Avenue, Suite 3200
Seattle, WA  98101
Phone: (206) 623-1900
Fax: (206) 623-3384

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
(16-00914) - 24

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Email: mgriffin@kellerrohrback.com
Email: kswope@kellerrohrback.com

ZIMMERMAN REED, LLP
June P. Hoidal (*Pro Hac Vice*)
Behdad C. Sadeghi (*Pro Hac Vice*)
1100 IDS Center
80 South 8th Street
Minneapolis, MN  55402
Tel: (612) 341-0400
Fax: (612)341-0844
Email: June.Hoidal@zimmreed.com

*Attorneys for Plaintiff*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, causing it to be served on all registered users.

KELLER ROHRBACK, LLP

By *s/ Karin B. Swope*
Karin B. Swope, WSBA #24015

**KELLER ROHRBACK L.L.P**.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384