**UNITED STATES DISTRICT COURT,
WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| NOAH WICK on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TWILIO INC.,<br><br>Defendant. | Civil Action No. 2:16-cv-00914<br><br>**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>**NOTE ON MOTION CALENDAR: March 24, 2017** |

**[ORAL ARGUMENT REQUESTED]**

DEFENDANT'S REPLY
Case No. 2:16-cv-00914

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ....................................................................................................................... 1

ARGUMENT ............................................................................................................................... 1

I.  PLAINTIFF LACKS ARTICLE III STANDING AND HIS CLAIMS SHOULD BE DISMISSED UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1) ............ 1

II. PLAINTIFF FAILS TO STATE A TCPA CLAIM AGAINST TWILIO BECAUSE HE HAS NOT PLAUSIBLY ALLEGED THAT TWILIO USED AN ATDS ..................................................................................................................................... 2

III. PLAINTIFF'S RELEASE OF HIS TELEPHONE NUMBER ESTABLISHED CONSENT FOR THE ONE TEXT HE RECEIVED ........................................................ 6

IV. PLAINTIFF HAS FAILED TO PLEAD THAT TWILIO "INITIATED" THE SINGLE TEXT MESSAGE HE ALLEGES HE RECEIVED ........................................... 8

V. PLAINTIFF'S CEMA CLAIM SHOULD BE DISMISSED BECAUSE HE DOES NOT ALLEGE THAT THE TEXT WAS A COMMERCIAL COMMUNICATION .................................................................................................... 11

VI. PLAINTIFF FAILS TO PLEAD A CLAIM UNDER THE WASHINGTON CPA ......... 12

CONCLUSION .......................................................................................................................... 12

DEFENDANT'S REPLY
Case No. 2:16-cv-00914

i

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Aderhold v. car2go N.W. LLC*,
　No. 13-cv-00489, 2014 WL 794802 (W.D. Wash. Feb. 27, 2014)............................................7

*Daniel v. Five Stars Loyalty, Inc.*,
　No. 15-cv-03546-WHO, 2015 WL 7454260 (N.D. Cal. Nov. 24 2015) ............................... 7-9

*Duguid v. Facebook, Inc.*,
　No. 15-cv-00985-JST, 2016 WL 1169365 (N.D. Cal. Mar. 24, 2016).............................. 4-5, 9

*Epps v. Earth Fare, Inc.*,
　No. 2:16-cv-08221 (C.D. Cal. Feb. 27, 2017) ....................................................... 1, 3, 5-6, 8

*Flores v. Adir Int'l, LLC*,
　No. 15-cv-00076-AB, 2015 WL 4340020 (C.D. Cal. July 15, 2015)......................................4, 9

*Gragg v. Orange Cab Co.*,
　145 F. Supp. 3d 1046 (W.D. Wash. 2015)...............................................................................12

*Hashw v. Dept. Stores Nat. Bank*,
　986 F. Supp. 2d 1058 (D. Minn. 2013)................................................................................. 4-5

*Hickey v. Voxernet LLC*,
　887 F. Supp. 2d 1125 (W.D. Wash. 2012)...............................................................................12

*Kauffman v. CallFire, Inc.*,
　141 F. Supp. 3d 1044 (S.D. Cal. 2015)............................................................................. 10-11

*Lujan v. Defenders of Wildlife*,
　504 U.S. 555 (1992)...................................................................................................................1

*Mendez v. C-Two Group, Inc.*,
　No. C-13-5914-EMC (N.D. Cal. Apr. 21, 2014). ......................................................................9

*Rinky Dink, Inc. v. Elec. Merch. Sys.*,
　No. 13-1347-JCC, 2015 WL 778065 (W.D. Wash. Feb. 24, 2015) ........................................11

*Roberts v. PayPal, Inc.*,
　621 Fed. App'x 478 (9th Cir. 2015) ..........................................................................................6

DEFENDANT'S REPLY
Case No. 2:16-cv-00914

ii

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

# **TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Sherman v. Yahoo! Inc.*,
   997 F. Supp. 2d 1129 (S.D. Cal. 2014) ...................................................................................6

*Washington Envtl. Council v. Bellon*,
   732 F.3d 1131 (9th Cir. 2013) .................................................................................................2

*Weisberg v. Stripe, Inc.*,
   No. CV 16-00584 JST, 2016 WL 3971296 (N.D. Cal. Jul. 25, 2016) .............................. 3-5, 9

*Wick v. Twilio Inc.*,
   No. C16-00914RSL, 2016 WL 6460316 (W.D. Wash. Nov. 1, 2016) ................................6, 8


**STATUTES & CONSTITUTIONAL PROVISIONS**

47 U.S.C. § 227 (Telephone Consumer Protection Act or "TCPA") ................................... *passim*

Washington Consumer Protection Act ("CPA") ...................................................................... *passim*

Washington State Commercial Electronic Mail Act ("CEMA") ........................................... *passim*


**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(1) .............................................................................................................1

*In re Rules and Regulations Implementing the TCPA*, CG Docket No. 02-278, Declaratory
   Ruling and Order, 30 FCC Rcd. 7961 (rel. Jul. 10, 2015) (*"TCPA Declaratory Ruling"*) . 9-10

*In re Rules and Regulations Implementing the TCPA*, 7 FCC Rcd. 8752 (1992) ...........................6

DEFENDANT'S REPLY
Case No. 2:16-cv-00914

iii

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

## INTRODUCTION

Plaintiff's opposition to Twilio's motion to dismiss still wholly fails to plead facts sufficient to establish a violation of the TCPA, CEMA, or CPA. He cannot escape the fact that he interacted *solely* with Crevalor, against whom he does not bring suit, and that he consented to receiving the one and only message from Crevalor by providing his phone number to the website while aiming to obtain Crevalor's dietary supplement. Dissolving each element of a TCPA claim to an unsupported alternative narrative cannot circumvent that the actual facts contained in Plaintiff's third complaint fall far from stating a claim for relief. If this were the case, no TCPA case could ever survive a motion to dismiss, which is clearly not the law in this Circuit as evidenced by this Court's earlier ruling, the recent *Earth Fare* case issued by the Central District of California, and a myriad of other cases in this Circuit and others. This Court has before it an easy decision—it should order the same dismissal with prejudice because Plaintiff has failed to plead additional facts sufficient to establish a violation of federal or state law.

## ARGUMENT

### I. PLAINTIFF LACKS ARTICLE III STANDING AND HIS CLAIMS SHOULD BE DISMISSED UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1).

Despite Plaintiff's assertions, his injury is not "fairly traceable" to Twilio's conduct. Pl. Opp. to Mtn. to Dismiss SAC at 3 ("Opp.") (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). For all the detail he provides about Twilio's API *in general*, the only connection he alleges between the single text message he received and Twilio is a "reverse white-pages look-up"—which he does nothing to further explain in his second amended complaint ("SAC"), other than nonchalantly alleging this undisclosed "reverse look-up" contains "public records." Opp. at 3. But this creates no causal connection, and thus no standing, and provides no credibility to whatever system he says connects Twilio to his grievance with Crevalor. Plaintiff instead assumes ownership because this vague system results in Twilio after a "reverse look-up."

DEFENDANT'S REPLY
Case No. 2:16-cv-00914

1

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

Even assuming the validity of this system, the fact that Twilio's name comes up as connecting this number does nothing to establish Twilio's role in initiating the message. So, the connection between Twilio and this text is based solely in remote speculation that, because Twilio provides certain services to its customers (none of which establish an ATDS, discussed § II, *infra*) it must be doing the same here because a "reverse look-up" names Twilio. No amount of cut-and-paste extractions from Twilio's website and API can "fairly trace" the causal connection Plaintiff alleges. His argument that he cannot provide more detail without further discovery is misguided. Twilio does not ask that Plaintiff *prove* his connection claim. *See* Opp. at 3. It squarely asserts that, assuming the truth of the facts alleged, there simply is not causal connection establishing standing. Twilio has identified numerous flaws in Plaintiff's fractured chain of causation, *see* Mot. to Dismiss SAC at 8 ("Mot."), especially that he does not allege any relationship between Twilio and Crevalor. Instead, Plaintiff brings this case against Twilio, despite Crevalor's constant presence. Thus, Plaintiff does not plead a causal connection.

Furthermore, Plaintiff fails to meet Article III's redressability requirement. *See* Mot. at 8. He fails to plead a causal link between the *specific* text message and Twilio's alleged conduct, thus he has not sufficiently pleaded redressability. *See Washington Envtl. Council v. Bellon*, 732 F.3d 1131, 1146 (9th Cir. 2013). Regardless of the remedies under the TCPA, they cannot redress Plaintiff's "injuries" because he has brought suit against Twilio, not Crevalor. Therefore, his SAC should be dismissed for lack of Article III standing.

## II. PLAINTIFF FAILS TO STATE A TCPA CLAIM AGAINST TWILIO BECAUSE HE HAS NOT PLAUSIBLY ALLEGED THAT TWILIO USED AN ATDS.

Plaintiff has not—and cannot—plausibly allege that Twilio utilized an ATDS, and therefore Twilio is immune from liability under the TCPA. Plaintiff received only a *single* text message after submitting his phone number to Crevalor's website—he was not a "victim" of

DEFENDANT'S REPLY
Case No. 2:16-cv-00914

2

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

Case 2:16-cv-00914-RSL   Document 56   Filed 03/24/17   Page 7 of 18

repeated messages from a party with which he had no prior interaction. Plaintiff voluntarily released his phone number to Crevalor. Even if his claim that he did not do so to purchase a product is true, he still willingly gave his number and thus reasonably should have expected to be contacted by Crevalor in the future. *See* § III, *infra*. And here, the single text message he received from Crevalor merely informed him that he had not completed his order.

More importantly, courts in the Ninth Circuit have said definitively that "text messages sent in response to a 'voluntary release of a user's phone number' do not support a plausible inference that an ATDS was used." *Epps v. Earth Fare, Inc.*, No. 2:16-cv-08221, at *9 (C.D. Cal. Feb. 27, 2017) (dismissing TCPA case based on the plaintiff's "voluntary opt-in to the text messages"). The voluntary release of a number to a website does not plausibly indicate the presence of an ATDS—rather it suggests "direct targeting that is inconsistent with the sort of random or sequential number generation required for an ATDS." *Weisberg v. Stripe, Inc.*, No. CV 16-00584 JST, 2016 WL 3971296, at *3 (N.D. Cal. July 25, 2016). Simply put, Plaintiff *voluntarily* released his number to Crevalor. He later received one—and only one—text message informing him that his order was incomplete. He was directly targeted for something *he* initiated and with contact information *he* gave willingly. Plaintiff may not have completed Crevalor's online form so that he could receive further messages, but he easily could have declined to give his number. Instead, "Plaintiff's voluntary opt-in to the text message[] is inconsistent with h[is] allegation that an ATDS was used." *Earth Fare*, No. 2:16-cv-08221, at *9.

Furthermore, Plaintiff asserts that he properly alleged Twilio's use of an autodialer in the "calls and text messages" he received because Twilio's equipment "has the capacity" to meet the definition of an ATDS. Opp. at 4-5 (citing SAC ¶ 82). The mere capacity of Twilio's equipment to potentially autodial numbers—which Twilio denies—neither establishes that an ATDS was used for the single text, nor does it establish a claim for relief under the TCPA in the Ninth Circuit.

DEFENDANT'S REPLY  
Case No. 2:16-cv-00914

3

BADGLEY MULLINS TURNER PLLC  
19929 Ballinger Way NE, Suite 200  
Seattle, WA 98155  
TEL 206.621.6566  
FAX 206.621.9686

Never mind that Plaintiff received *one* text message that was "reverse looked-up" to connect to Twilio, and *one* voice telephone call of which he inexplicably fails even to try to connect to Twilio. Plaintiff is plainly incorrect that he need only plead that an ATDS was used.

District courts within the Ninth Circuit have recently held that pleading that ATDS was used, without more, is insufficient to state a TCPA claim. *Weisberg*, 2016 WL 3971296, at *4 (quoting *Duguid v. Facebook, Inc.*, No. 15-cv-00985-JST, 2016 WL 1169365, at *5 (N.D. Cal. Mar. 24, 2016)) (dismissing a complaint that "plainly alleges that the text[s] . . . were sent using an ATDS that 'has the capacity to store or produce telephone numbers to be called'" because plaintiff "has not plausibly alleged that the text[s] . . . were sent randomly to him by an ATDS").

*Duguid*, *Weisberg*, and other district courts have concluded that factual pleadings suggesting that text messages have been targeted to specific phone numbers do "not suggest that [messages have been sent] en masse to randomly or sequentially generated numbers" such to constitute ATDS. *Duguid*, 2016 WL 1169365, at *5. "Where . . . a 'plaintiff's own allegations suggest direct targeting that is inconsistent with the sort of random or sequential number generation required for an ATDS,' courts conclude that the allegations are insufficient to state a claim for relief under the TCPA." *Id.* (citing *Flores v. Adir Int'l, LLC*, No. 15-cv-00076-AB, 2015 WL 4340020, at *4 (C.D. Cal. July 15, 2015). Just last year, the *Weisberg* Court ordered that an ATDS had not been sufficiently alleged where allegations stated that the plaintiff received a personal text message about processing payments only after submitting personal information into a company's website. Pleading that the message characteristics are similar to *en masse* messages does nothing to rectify the fact that this message was directed specifically at Plaintiff after he submitted his personal information to Crevalor's website.

First, Plaintiff argues that *Hashw v. Dept. Stores Nat. Bank* supports his contention that he can broadly allege, without pleading any particularity, that defendant "used an ATDS." 986 F.

DEFENDANT'S REPLY
Case No. 2:16-cv-00914

4

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

Supp. 2d 1058, 1060 (D. Minn. 2013). This position runs counter to law in the Ninth Circuit, would open the floodgates to meritless cases, and would subject defendants to never-ending, costly discovery. Additionally, *Hashw* included numerous factual allegations that far surpass those brought here. There, the plaintiff alleged that "he received 112 calls over a relatively short period of time," the calls "related to his debt and/or telemarketing," and he alleged that "his number was obtained from a credit bureau or a 'skip trace.'" Unlike the factual allegations brought here, *Hashw* did not involve a personally tailored message that constituted a response to a personal inquiry about a product "order" made online, and no evidence showed that Hashw voluntarily submitted his personal information to the sender of the communications he received.

Also, Plaintiff claims he provided "significant detail" beyond merely asserting the use of an ATDS. Opp. at 5. However, the message's time frame, content, phone number, and "*en masse*" characteristics and any general description of Twilio's offerings still do not match the factual allegations of *Hashw* nor do they do anything to overcome his *voluntary* submission of his phone number to Crevalor. Plaintiff alleges a single text that is far more isolated and personally targeted than the messages in *Weisberg* and *Duguid.* His own allegations make clear that this was not a case of bulk dialing or ATDS use. Rather, he received the text from Crevalor in response to his website inquiry regarding the Crevalor product. The *personal* response that he received, a *single text*, referred to *his* "order" using *his* name, "Noah." SAC ¶ 39. Instead, these allegations show that the text was targeted to Plaintiff's "specific phone number[] in response to [his] voluntary release of [the] phone number." *Weisberg,* 2016 WL 3971296, at *4 (holding that a single text message sent "in response to the voluntary release of a user's phone number" on a website does not constitute ATDS); *Earth Fare,* No. 2:16-cv-08221, at *9. Thus, Plaintiff has failed to sufficiently plead that Twilio used an ATDS, and his case should be dismissed.

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

### III. PLAINTIFF'S RELEASE OF HIS TELEPHONE NUMBER ESTABLISHED CONSENT FOR THE ONE TEXT HE RECEIVED.

This Court has already concluded that Plaintiff consented to the text message he allegedly received, and it can easily find so again given the fact that Plaintiff's alternative facts do nothing to negate this consent when coupled with the support in the *Earth Fare* holding. *See Wick v. Twilio Inc.*, No. C16-00914RSL, 2016 WL 6460316 (W.D. Wash. Nov. 1, 2016). Plaintiff's TCPA challenge is independently foreclosed by the fact that he provided express consent to receive the text in this case. The "details" he adds to his SAC merely explain his dissatisfaction with the *Crevalor* website running out of a free product, after he had already given *Crevalor*'s website his personal information. Under the TCPA, it is no matter that Crevalor ran out of the product. He gave his personal information to the website and received a message informing him that he had not completed the order he initiated. *See* Mot. at 16-19.

The FCC has made clear that "persons who knowingly release their phone number have consented to be called at the number which they have given, absent instructions to the contrary." *In re Rules and Regulations Implementing the TCPA*, 7 FCC Rcd. 8752, 8769 ¶ 31 (1992). And "federal courts have consistently concluded that when a customer provides a company his or her phone number in connection with a transaction, he or she consents to receiving calls about that transaction." *Sherman v. Yahoo! Inc.*, 997 F. Supp. 2d 1129, 1133 (S.D. Cal. 2014). Indeed, despite Plaintiff's mischaracterization of the FCC's current position, courts continue to affirm the validity of the FCC's express consent standard. *See, e.g.*, *Roberts v. PayPal, Inc.*, 621 Fed. App'x 478, 479 (9th Cir. 2015) (affirming that the plaintiff expressly consented to receiving texts from PayPal by providing his cellular number while accessing the PayPal website). Thus, there can be no TCPA liability where the plaintiff consented to receive the communication at issue. Here, Plaintiff voluntarily provided his number when he accessed the Crevalor website to obtain a free

DEFENDANT'S REPLY
Case No. 2:16-cv-00914

6

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

sample. SAC ¶ 38. Therefore, he expressly consented to be contacted about his Crevalor order, and he accordingly cannot state a claim under the TCPA as a matter of law.

Plaintiff attempts to prevent dismissal of this complaint by asserting additional facts about the purpose for which he visited the *Crevalor* website and input his information. But these new facts do not show that the communication at issue in this case constituted telemarketing. The fact that he was responding to an advertisement for a free sample, Opp. at 17, does not negate the fact that the terms of service for the free sample included explicit details about the program for which he would sign up by entering his information. *See* Mot. at 17, Ex. B. The fact that, *after* Plaintiff entered his number, he terminated his order when the product was sold out, Opp. at 17, does not negate the fact that the message he received was entirely informational, telling him his order was "incomplete and about to expire." SAC ¶ 39. The fact that the text also linked to the full-price purchase of the product, Opp. at 18, does not negate Plaintiff initiating contact with *Crevalor* (not Twilio), which alerted *Crevalor* to his number.

Plaintiff's conclusory characterization of the text message as "telemarketing," however, is plainly incorrect. "A text sent solely for the purpose of allowing the recipient to complete a registration process that he or she initiated shortly before receiving the text is not telemarketing." *Daniel v. Five Stars Loyalty*, No. 15-cv-03546-WHO, 2015 WL 7454260, at *4 (N.D. Cal. Nov. 24, 2015); *see also Aderhold v. Car2go N.W., LLC*, No. 13-cv-00489, 2014 WL 794802, at *9 (W.D. Wash. Feb. 27, 2014) (finding "no indication that the text was intended for anything other than . . . to permit [plaintiff] to complete [his] registration.").

Here, Plaintiff voluntarily accessed the Crevalor webpage and began the process of registering. The text at issue was sent to Plaintiff in direct and immediate response to his actions, with the intention of allowing him to complete the registration order that he initiated. SAC ¶¶ 38-39. Plaintiff's additions in his SAC, do not absolve Plaintiff of (a) his choice to provide his contact

information, (b) the visible terms of service on the page where he gave his number, and (c) the text of the message allowing him to complete the order he started. "To the extent that it could be reasonably inferred . . . that the text's purpose was also to 'encourage future purchases[,]' that purpose is simply too attenuated to make the text telemarketing." *Daniel*, 2015 WL 7454260, at *4. The text here is plainly not telemarketing within the meaning of the statute. So, the requirement of express written consent does not apply. Plaintiff fails to plead new facts that could possibly contradict this Court's holding that Plaintiff expressly consented to be contacted. *See Wick*, 2016 WL 6460316, at *2 ("'[A]n individual who knowingly provides her telephone number to another party without limiting instructions has [given] her prior express consent to receive calls at that number from that party.'") (quoting *Daniel*, 2015 WL 7454260, at *6); *see also* Mot. at 16-19. On this basis alone, Plaintiff's SAC should be dismissed.

**IV.  PLAINTIFF HAS FAILED TO PLEAD THAT TWILIO "INITIATED" THE SINGLE TEXT MESSAGE HE ALLEGES HE RECEIVED.**

Even if Plaintiff could sufficiently allege Article III standing, the use of an ATDS, and a lack of express consent, his TCPA claim should still be dismissed for his failure to plead initiation. *See* Mot. at 11-16. No amount of detail about Twilio's API or its business cures the fundamental defect of Plaintiff's TCPA claim: the *only* possible connection between Twilio and the text—a "reverse look-up"—establishes no basis that Twilio initated the text. Assuming the validity of this vague, yet "public record," look-up, Opp. at 11, the FCC is abundantly clear: only the *initiators* of calls or messages are liable, "not [the party] that transmits the call or messages and that is not the originator or controller of the content of the call of the message." *See* 47 U.S.C. § 227 (b)(1)(A).

Plaintiff wholly miscontrues the FCC's 2015 order to suggest that the that the FCC has not defined "initiate," Opp. at 9, for transmitters.[1] The FCC weighed the cases of *YouMail*, *TextMe*,

---

[1] Plaintiff bases his argument that Twilio is not a transmitter solely on a general description of its business, not on any

DEFENDANT'S REPLY
Case No.  2:16-cv-00914

8

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

and *Glide*, to clarify that mere transmitters of communications are not call initiators. Indeed, the 2015 FCC ruling noted that, in *2013*, neither its statute nor rules defined "initiate." *See In re Rules and Regulations Implementing the TCPA*, CG Docket No. 02-278, Declaratory Ruling and Order, 30 FCC Rcd. 7961, 7982, ¶ 27 (rel. Jul. 10, 2015) ("*TCPA Declaratory Ruling*").[2] The FCC was clear: software applications that exercise "no discernible involvement in deciding whether, when, or to whom [a message] is sent, or what such [message] says," are not subject to TCPA liability. *TCPA Declaratory Ruling*, at 7981 ¶ 32. Twilio does none of the above and thus is not an "initiator" under the TCPA. unsubstantiated

In 2015, the FCC analyzed the services of platform application providers that were significantly more connected to the transmission of their users' texts than is Twilio with regard to its customers' communications. The FCC held that YouMail and TextMe were *not* "initiators" of the communications. It ruled that YouMail was not an initiator of messages, and is thus not subject to TCPA liability, even though it *inserted some of its own content* into users' texts. *TCPA Declaratory Ruling*, at 7982, ¶ 33. The FCC concluded that even "controlling [the] small portion of the content of the [message] was insufficient to change [its] determination that the app user, and not YouMail, [was] the maker of the call." *Id.* Similarly, it considered the services of TextMe, which actually *authored* the text messages sent to its users' friends, but only after *the users* took several affirmative steps to approve the transmission, including determining whether to invite all, some, or none of their contacts to receive messages. *Id.* at 7983, ¶84. Even though in TextMe's

---

plausible tie between Twilio's API and the message at issue. Opp. at 14. The attenuated link is a vague "reverse look-up" that merely mentions Twilio—it does nothing to establish that Twilio sent *this specific message*.

[2] Plaintiff also asserts that consideration of the FCC ruling is inappropriate at the motion to dismiss stage. Opp. at 13. However, the *Earth Fare* court expressly considered the 2015 FCC ruling in its decision dismissing the plaintiff's complaint without leave to amend. *Earth Fare*, No. 2:16-cv-08221, at *7. In general, numerous courts have dismissed TCPA claims at the motion to dismiss stage. *See, e.g., Weisberg*, 2016 WL 3971296; *Duguid*, 2016 WL 1169365; *Flores*, 2015 WL 4340020; *Daniel*, 2015 WL 7454260; *Mendez v. C-Two Group, Inc.*, No. C-13-5914-EMC (N.D. Cal. Apr. 21, 2014) (dismissing an action against software provider because plaintiff failed to plausibly allege that defendant controlled the initiation of its customers' messages).

DEFENDANT'S REPLY
Case No. 2:16-cv-00914

9

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

case, the software provider composed the sent messages, the FCC still determined that the application's *users* controlled whether to send messages. Thus the users—not TextMe—were the "initiators" of the messages. *Id.* at 7984. Similar to YouMail and TextMe, users of Twilio's services must take numerous steps to determine what, when, and to whom messages are sent. Unlike those providers, Twilio *does not control any aspect of the composition* of its users' texts or calls. Its role in the causal chain of transmission is even further removed from its user's communications than these software providers that are exempt from TCPA liability.

The FCC's 2015 ruling also provided the example of Glide, a service transmitter that was determined to be an "initiator" because it was "so involved in [the initiation of the messages] to be deemed to have made or initiated them." *Id.* at 7983. However, as the FCC recognized, Glide's connection to the transmitted texts at issue was starkly different from Twilio's current role in message transmission. Glide automatically sent texts to all of its users' contacts the moment the users downloaded the service, unless they opted out. *Id.* at 7982–83. Unlike Glide, Twilio does not compose messages or transmit them in a way that would indicate Twilio is "so involved" as to be deemed an "initiator." *Id.* at 7981–84; *see also Kauffman v. CallFire, Inc.*, 141 F. Supp. 3d 1044, 1048 (S.D. Cal. 2015) (evaluating the FCC's examples in holding that a platform service provider was not an initiator). Like these providers deemed immune from TCPA liability, Twilio provides a communications transmission platform. Mere transmission is not actionable under the TCPA. Plaintiff cannot be permitted to sue every entity in the call flow in the hopes of surviving a motion to dismiss and sorting it all out later after costly discovery.

Plaintiff does not plead any facts to indicate that Twilio was "so involved" as to be deemed an initiator of *this specific text message*—he merely describes Twilio's general systems. The sole possible connection between Twilio (let alone any specific aspect of its API) and the text message at issue is an unverifiable "reverse look-up." Instead, Plaintiff still does not provide any additional

DEFENDANT'S REPLY
Case No. 2:16-cv-00914

10

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

facts connecting Twilio to the message or the call he allegedly received. Merely adding details about Twilio's systems or the date and content of the message does not mean Twilio was involved in "selecting the content, timing, and recipients" of the message or call, as is required by law to support TCPA liability. *Kauffman*, 141 F. Supp. 3d at 1050. Twilio's users control the content, timing, and recipients of the texts they send. The pages of excerpts from Twilio and Crevalor's website do nothing to combat the reality that, regarding this specific text message at issue, Twilio did not control the content, timing, and recipient of this message. In fact, Plaintiff voluntarily provided his information to Crevalor—a non-party to this suit—and initiated contact with Crevalor through a web order form, after which he received a message to simply return to complete his order. In the absence of actual allegations showing "a high degree of involvement" in the making of a call, or "actual notice of an illegal use and failure to take steps to prevent [illegal] transmissions"—of which Plaintiff here pleads none—service providers are not deemed to have initiated the messages. *Rinky Dink, Inc. v. Elec. Merch. Sys*, No. 13-1347-JCC, 2015 WL 778065, at *7 (W.D. Wash. Feb. 24, 2015) (citation omitted).

Finally, Plaintiff's opposition suggests that Twilio had "knowledge of the use of its servers for illegal activity." Opp. at 14. But he pleads no facts to connect Twilio to Crevalor. Indeed, Plaintiff has not alleged that Crevalor has had any communications with Twilio regarding Twilio's API or text communications. Inexplicably, Plaintiff failed to bring Crevalor into this case when he filed any of his three complaints. Accordingly, Plaintiff's SAC should be dismissed because he has not sufficiently pleaded that Twilio initiated this text message.

### V. PLAINTIFF'S CEMA CLAIM SHOULD BE DISMISSED BECAUSE HE DOES NOT ALLEGE THAT THE TEXT WAS A COMMERCIAL COMMUNICATION.

The text at issue is plainly not commercial. CEMA only applies if the text would be understood as "intend[ing] to offer property, goods, or services for sale either during the

DEFENDANT'S REPLY  
Case No. 2:16-cv-00914

11

BADGLEY MULLINS TURNER PLLC  
19929 Ballinger Way NE, Suite 200  
Seattle, WA 98155  
TEL 206.621.6566  
FAX 206.621.9686

[communication], or in the future." *Gragg v. Orange Cab Co.*, 145 F. Supp. 3d 1046, 1048 (W.D. Wash. 2015). A text is never deemed "commercial" if the property, goods, or services promoted are "free." *See Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1132–33 (W.D. Wash. 2012). Plaintiff's commercial characterization of the text fails because the it does not describe any specific products, services, prices, or other solicitations. SAC ¶ 39 ("Noah, Your order at Crevalor is incomplete and about to expire. Complete your order by visiting . . ."). The text is plainly a follow-up to "an order" that "is incomplete," and thus it is not "commercial" as a matter of law. So, Plaintiff does not state a claim under CEMA.

## VI. PLAINTIFF FAILS TO PLEAD A CLAIM UNDER THE WASHINGTON CPA.

Plaintiff does not sufficiently plead that Twilio engaged in an "unfair" act or practice, that the public interest is implicated, and that he suffered injury to his business or property as a result of the text at issue. The only relevant fact that Plaintiff has alleged directly against Twilio in connection with the actual communication is that he received one text from a number associated with Twilio in an unidentified database. This single claim is plainly insufficient to plead an "unfair" practice. But even if the message was sufficient for a CPA violation, Plaintiff invited the text—thus it was not "unsolicited." For the same reason, the alleged personalized communications do not broadly impact the citizens of Washington State to the degree required to constitute a matter of "public interest." Indeed, nothing in Plaintiff's SAC regarding his receipt of the text suggests "unfair" practices by Twilio within the meaning of the CPA.

## CONCLUSION

For the foregoing reasons, Twilio respectfully requests that the Court grant its Motion to Dismiss Plaintiff's Second Amended Complaint in its entirety.

DEFENDANT'S REPLY
Case No. 2:16-cv-00914

12

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

| | | |
|---|---|---|
| 1 | Dated:  March 24, 2017 | Respectfully submitted, |
| 2 | | /s/  Duncan C. Turner_____ |
| | | Duncan C. Turner, WSBA #20957 |
| 3 | | BADGLEY-MULLINS LAW GROUP PLLC |
| 4 | | 19929 Ballinger Way NE, Suite 200 |
| | | Shoreline, WA 98155 |
| 5 | | Telephone:  (206) 621-6566 |
| | | Facsimile:  (206) 621-9686 |

Michael B. Hazzard (*pro hac vice*)
Sarah C. Pomeroy (*pro hac vice*)
Dylan L. Jacobs (*pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC  20001-2113
Telephone:  (202) 879-3829
Facsimile:  (202) 626-1700
Counsel for Defendant,
TWILIO INC.

DEFENDANT'S REPLY
Case No.  2:16-cv-00914

13

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

# CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of March, 2017, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, causing it to be served on all registered users.

Respectfully submitted,

/s/ Duncan C. Turner
**Duncan C. Turner**, WSBA #20957
BADGLEY-MULLINS LAW GROUP PLLC
Ballinger Way NE, Suite 200
Shoreline, WA 98155
Telephone:  (206) 621-6566
Facsimile:  (206) 621-9686
Counsel for Defendant,
TWILIO INC.

DEFENDANT'S REPLY
Case No.  2:16-cv-00914

1

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686