UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NOAH WICK, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TWILIO INC.,<br><br>Defendant. | Case No. C16-00914RSL<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT |

This matter comes before the Court on "Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint." Dkt. # 51. Plaintiff alleges that he received an unsolicited text message and phone call immediately after he attempted to obtain a free sample of a product on the web address http://crevalor.com. Plaintiff alleges that defendant Twilio, Inc., initiated the unsolicited communications and asserts claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, the Washington State Commercial Electronic Mail Act ("CEMA"), RCW 19.190.060, and the Washington Consumer Protection Act ("CPA"), RCW 19.190.060. Defendant seeks dismissal of all of plaintiff's claims on the grounds that plaintiff lacks standing and has failed to state plausible claims for relief under each of the three statutes.

The question for the Court on a motion to dismiss is whether the facts alleged in the complaint sufficiently state a "plausible" ground for relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS- 1

> A claim is facially plausible when the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that the defendant is liable for the
> misconduct alleged. Plausibility requires pleading facts, as opposed to conclusory
> allegations or the formulaic recitation of elements of a cause of action, and must
> rise above the mere conceivability or possibility of unlawful conduct that entitles
> the pleader to relief.

Somers v. Apple, Inc., 729 F.3d 953, 959-60 (9th Cir. 2013) (internal quotation marks and citations omitted). All well-pleaded allegations are presumed to be true, with all reasonable inferences drawn in favor of the non-moving party. In re Fitness Holdings Int'l, Inc., 714 F.3d 1141, 1144-45 (9th Cir. 2013). If the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate. Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1041 (9th Cir. 2010).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] the Court finds as follows:

**A. STANDING**

The judicial power of the federal courts extends to "Cases" and "Controversies" pursuant to Article III, Sec. 2 of the United States Constitution. In order to give meaning to those limitations, courts have developed the doctrine of standing, which makes clear that the role of the courts is "neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies." Maldonado v. Morales, 556 F.3d 1037, 1044 (9th Cir. 2009). Standing "is built on separation-of-powers principles [and] serves to prevent the judicial process from being used to usurp the powers of the political branches." Clapper v. Amnesty Int'l USA, 568 U.S. __, 133 S. Ct. 1138, 1148 (2013).

To establish the existence of an Article III case or controversy, plaintiff must show that "(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual and

---

[1] The Court has not considered the terms and conditions defendant submitted with its motion: those documents do not form the basis of plaintiff's claims and are outside the pleadings.
  The Court finds that this matter can be decided on the papers submitted. Defedant's request for oral argument is therefore DENIED.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS- 2

imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). Twilio argues that plaintiff failed to allege facts giving rise to a plausible inference that his injuries (receiving an unsolicited text message and call) are fairly traceable to Twilio. The Court finds that there is an actual case or controversy and that plaintiff has standing to seek the remedies available under the law. If the facts are as plaintiff alleges, Twilio made, initiated, and/or caused communications which violated the law. Plaintiff identified Twilio as the sender of at least one of the communications by performing an on-line public records search.[2] Taking the allegations as true, plaintiff has sufficiently alleged a justiciable controversy between the parties that can be resolved by the Court. Defendant's standing objection is overruled.

**B. TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C. § 227**

The TCPA makes it unlawful to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone . . . ." 47 U.S.C. § 227(b)(1)(A)(iii). A text message constitutes a "call" for the purposes of the TCPA. Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 954 (9th Cir. 2012). Defendant seeks dismissal of the TCPA claim because (1) the allegations regarding the use of an automatic telephone dialing system ("ATDS") are deficient, (2) plaintiff has not raised a plausible inference that Twilio initiated the text message or call, and (3) plaintiff consented to the text message and call.

---

[2] To the extent defendant is arguing that the reverse white pages look-up site plaintiff used had bad data and that Twilio is not, in fact, associated with the phone number from which the offending text message was sent, it is challenging the truth of the allegations contained in the complaint. Such arguments should be raised in a summary judgment motion rather than a motion to dismiss.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS- 3

**1. Use of an ATDS**

Twilio argues that, because plaintiff received a single text message after providing his phone number to an on-line retailer, his allegations fail to raise a plausible inference that the message was sent using an ATDS. If plaintiff's claims rested solely on the allegations Twilio mentions, it might be right. But Twilio ignores most of the allegations regarding how its software and platform operates. Plaintiff alleges that Twilio's communications service allows clients to create text messaging content to be stored on Twilio's hosted platform and that Twilio uses the stored content to automatically build and send text messages to specified numbers. Dkt. # 35 at ¶¶ 19-20. The built messages can be sent to phone numbers provided by the client or Twilio's platform can generate a list of numbers to dial. Dkt. # 35 at ¶ 27. Plaintiff also alleges that Twilio sends tens of millions of text messages and/or calls to cell phones using its computer programs. Dkt. # 35 at ¶ 5. Equipment that has the capacity, meaning the potential ability, to store or produce telephone numbers to be called is an autodialer even if that capacity is not currently being exploited. In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 30 FCC Rcd. 7961, 7975-76, ¶ 19 (rel. July 10, 2015) (hereinafter, "2015 TCPA Declaratory Ruling"). Plaintiff alleges facts regarding Twilio's program and its capabilities that support an inference that its computer programs are capable of automatically dialing stored or generated lists of numbers.

Twilio argues that, even if its system were capable of bulk dialing, plaintiff has not alleged that it could do so without human intervention because a third party drafted the message content, transmitted the target phone number, and decided when to send the message. As described in the Second Amended Complaint, however, Twilio's system has the potential ability to automatically send a pre-recorded message to thousands of numbers in a short period of time. That is the classic description of an autodialer. 2015 TCPA Declaratory Ruling, 30 FCC Rcd. at 7973, ¶ 14. The facts that a human originally drafted/recorded the message, supplied the customer list, or, for that matter, created Twilio's platform do not alter the plausible inference that Twilio's system has the capacity to dial numbers (*i.e.*, to perform the function that makes it

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS- 4

an autodialer) without the need for human intervention. See Sterk v. Path, Inc., 46 F. Supp.3d 813, 819 (N.D. Ill. 2014) ("It is the ultimate calling from the list by the automated equipment that is the violation of the TCPA.").

**2. Initiated the Text Message or Call**

The TCPA and its implementing rules make it unlawful for a person to "make" or "initiate" a call that violates the Act. 47 U.S.C. § 227(b)(1)(A); 47 C.F.R. § 64.1200(a)(1). Neither term is defined. The Federal Communications Commission ("FCC") has concluded that "a person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call, and generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." In the Matter of the Joint Petition Filed by Dish Network, LLC, 28 FCC Rcd. 6574, 6583, ¶ 26 (rel. May 9, 2013) (hereinafter "2013 DISH Declaratory Ruling"). The FCC recognizes that merely offering a good or service for sale does not mean that a retailer initiates the marketing calls for that product. If, however, the seller acts as its own telemarketer or is "so involved in the placing of a specific telephone call as to be directly liable for initiating it – by giving the third party specific and comprehensive instructions as to timing and the manner of the call, for example," the distinction between seller and telemarketer disappears. 2013 DISH Declaratory Ruling, 28 FCC Rcd. at 6583, ¶ 27. A seller may also be liable for calls placed by a third-party telemarketer under federal common law principles of agency, including apparent authority and ratification. 2013 DISH Declaratory Ruling, 28 FCC Rcd. at 6584, ¶ 28.

The FCC was subsequently asked whether entities that provide software applications or platforms that facilitate calling are considered the makers or initiators of hosted calls for TCPA purposes. The answer: it depends. "[W]e look to the totality of the facts and circumstances surrounding the placing of a particular call to determine: 1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA." 2015

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS- 5

TCPA Declaratory Ruling, 30 FCC Rcd. at 7980, ¶ 30.[3] Some of the factors used to evaluate an entity's involvement in placing the call include:

– the extent to which the provider/host controls the messaging

– the extent to which the provider/host controls the timing or sending of the message;

– the extent to which the provider/host controls the recipient list;

– the extent to which the provider/host "willfully enables fraudulent spoofing of telephone numbers;"

– the extent to which the provider/host assists customers in blocking Caller ID;

– whether the provider/host knowingly allows its customers to use the platform in a way that violates the TCPA;

– whether the service or platform is purely reactive in nature, sending messages as proscribed and arranged by the customer.

2015 TCPA Declaratory Ruling, 30 FCC Rcd. at 7980-84, ¶¶ 30-37.

The FCC applied this fact-based analysis to software application developers and collect call services in 2015. In response to a petition filed by YouMail, the FCC found that the developer of a communications app that "exercises no discernible involvement in deciding whether, when, or to whom an auto-reply is sent, or what such an auto reply says, [and does not] perform related functions, such as pre-setting options in the app, that physically cause auto-replies to be sent" does not initiate the reply messages sent through its app. 2015 TCPA Declaratory Ruling, 30 FCC Rcd. at 7981, ¶ 32. The FCC determined that YouMail's addition of a link providing identifying information and an opt out feature did not change the reactive and

---

[3] The FCC identified the intent of Congress when enacting the TCPA as the protection of consumers from the nuisance, invasion of privacy, cost, and inconvenience that autodialed and prerecorded calls generate. Congress determined that "banning such calls, except when made for an emergency purpose or when the called party consents to receiving the call, 'is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.' Congress therefore put the responsibility for compliance with the law directly on the party that 'makes' or 'initiates' the automated and prerecorded message calls." 2015 TCPA Declaratory Ruling, 30 FCC Rcd. at 7979*80, ¶ 29.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS- 6

tailored nature of YouMail's service. Because the customer controlled whether a reply message would be sent, the bulk of the message, and the recipients, the user of the app initiated the text messages. 2015 TCPA Declaratory Ruling, 30 FCC Rcd. at 7982, ¶ 33. In contrast, a software application developer that programmed its app to send solicitations to numbers in its customer's contact list "makes or initiates the invitational text message by taking the steps physically necessary to send each invitational text message or, at a minimum, is so involved in doing so as to be deemed to have made or initiated them." 2015 TCPA Declaratory Ruling, 30 FCC Rcd. at 7983, ¶ 35 (discussing Glide). The third app developer, Text Me, provided a service the functionality of which improved with the number of users. It therefore encouraged its users to send canned invitational messages to friends and family. Although TextMe drafted the message, the user ultimately decided whether the text message was sent, when it was sent, and to whom. The FCC determined that "TextMe is not the maker or initiator of the invitational text messages because it is not programming its cloud-based dialer to dial any call . . . ." 2015 TCPA Declaratory Ruling, 30 FCC Rcd. at 7984, ¶ 37. When considering the operations of collect calling services, the FCC noted that the person who dials the number he or she is trying to reach – or who calls the operator or collect calling service and provides the number – initiates the call even though the recipient first hears a recorded message regarding payment options for the call. 2015 TCPA Declaratory Ruling, 30 FCC Rcd. at 7986, ¶ 40. The user of the collect calling service is the one who physically places the call, provides the number, and controls the timing of the call and the content if the called party accepts the charges. The FCC considered the communication a single process initiated by the caller: the collect calling service simply facilitated a call initiated by another. Id.

Contrary to Twilio's argument, the FCC has not created a blanket rule immunizing from TCPA liability cloud-based service providers that transmit third-party content. Rather, the totality of the facts and circumstances surrounding the call must be considered when determining whether the customer and/or the host initiated the call. For purposes of this motion, the allegations of the Second Amended Complaint provide the operative facts and must be taken as

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS- 7

true. Twilio fails to acknowledge, much less address, many of plaintiff's allegations, instead asserting that "[p]laintiff merely alleges that [he] found Twilio's name in a reverse lookup directory." Dkt. # 51 at 19. Plaintiff, for his part, relies heavily on allegations regarding what Twilio's software program is able to do, not what Twilio actually did to send the text message at issue here. Allegations regarding the ability of Twilio's cloud-based servers to add content to messages (*e.g.*, the weather forecast in San Francisco), to generate a list of numbers to dial, and to generate and deliver automated speech messages do not seem to have any applicability to the message plaintiff received and are irrelevant to this analysis.

Nevertheless, there are allegations regarding Twilio's operations that, taking all inferences in favor of plaintiff, apply to the message at issue here and would support a finding that Twilio initiated the text message. As an initial matter, plaintiff alleges that Twilio's system was programmed to dial his number and send the offending text message. With regards to message content, plaintiff alleges that Twilio creates (either automatically or through its "Developer Gallery") messages for its customers and/or chops and reassembles content provided by customers to make it more palatable to carriers. Dkt. # 35 at ¶ 28 and ¶ 32. Plaintiff alleges that Twilio determines what number a message will be sent from in order to prevent messages from being filtered or rejected and to mask the source of the calls it initiates. Dkt. # 35 at ¶¶ 29-31. Plaintiff alleges that Twilio chooses the order and timing of messages to ensure that the rate at which they are received by the carrier stays below the carrier's spam filter threshold. Dkt. # 35 at ¶ 33. Finally, plaintiff alleges that Twilio knows that its platform technology can be used to automatically send tens of thousands of text messages that violate the TCPA, has bragged that its customers have been able to spam mobile phones using its platform, and has failed to require its customers to certify that they are complying with the TCPA. Dkt. # 35 at ¶¶ 36-37. Taken together, these allegations suggest that Twilio's services are not purely reactive in nature, but that it is an active participant in developing the message the recipient ultimately receives, controlling the initiation of the message (including line selection and timing) to avoid spam filters and hide the source of the call, and allowing, if not promoting, unsolicited text message

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS- 8

campaigns on its platform. These allegations may ultimately be disproven, but that is not the issue on a motion to dismiss. Plaintiff has raised a plausible inference that Twilio could be held liable as the initiator of the text message he received.

However, plaintiff's allegations regarding the telephone call he received are insufficient to raise a plausible inference that Twilio initiated that call. Plaintiff alleges only that, immediately after he left Crevalor's website, he received a phone call from a woman who aggressively pushed him to order his free product and requested his credit card information. The call lasted approximately three minutes, and the background noise gave plaintiff the impression that the woman was in a "call center." Dkt. # 35 at ¶ 47. Plaintiff does not identify the caller's telephone number and does not allege that he performed a reverse white pages look-up that connected Twilio to the call. Nor does his description of Twilio's business model and platform technology suggest that it operates call centers or otherwise give rise to an inference that Twilio was in any way connected with the call. Plaintiff has failed to adequately allege a TCPA claim against Twilio with regards to the phone call.

**3. Consent**

The TCPA excludes from its general prohibition against communications using an ATDS any communication "made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). The implementing regulations establish the type of consent necessary to avoid TCPA liability. A text or call that "includes or introduces an advertisement or constitutes telemarketing" may only be sent with the recipient's "prior express written consent." 47 C.F.R. § 64.1200(a)(2). Non-telemarketing texts and calls require only "prior express consent." 47 C.F.R. § 64.1200(a)(1).

On February 12, 2016, plaintiff received a text message that read: "Noah, Your order at Crevalor is incomplete and about to expire. Complete your order by visiting http://hlth.co/xDoXEZ." Dkt. # 35 at ¶ 39. The FCC defines telemarketing as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12)

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS- 9

(2013). In <u>Chesbro v. Best Buy Stores, L.P.</u>, 705 F.3d 913, 918 (2012), the Ninth Circuit called for a "common sense" approach to whether a communication amounts to telemarketing. Messages "whose purpose is to facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into with the sender are not advertisements." <u>Aderhold v. car2go N.A. LLC</u>, 668 Fed. Appx. 795, 796 (9th Cir. 2016) (quoting In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 21 FCC Rcd. 3787, 3812, ¶ 49 (rel. Apr. 6, 2006) (hereinafter, "2006 TCPA Declaratory Ruling")).

The Court previously concluded that the text message plaintiff received was not telemarketing because the message related to an order plaintiff had initiated. In his Second Amended Complaint, plaintiff provides additional allegations regarding his interaction with Crevalor's website and copies of the two webpages he visited. A review of the allegations and attached exhibits shows that plaintiff entered his identifying information (name, address, phone number, and email), agreed to the offer's terms and conditions, and clicked on the "Rush My Order" button before closing the webpage. Whatever his subjective intent regarding making a purchase, the text message he received was aimed at completing a commercial transaction that he had initiated and for which he had provided his phone number. <u>See</u> 2006 TCPA Declaratory Ruling, 21 FCC Rcd. at 3813, ¶ 49 ("A travel itinerary for a trip a customer has agreed to take <u>or is in the process of negotiating</u> is not an unsolicited advertisement.") (emphasis added). Thus, the Court again concludes that the text message plaintiff received does not constitute telemarketing. Because plaintiff consented to the communications at issue when he submitted his telephone number as part of Crevalor's ordering process, plaintiff fails to plead a TCPA violation.

**C. Commercial Electronic Mail Act ("CEMA"), RCW 19.190.060**

CEMA provides that "[n]o person conducting business in the state may initiate or assist in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident for cellular telephone or pager service . . . ." RCW 19.190.060(1). CEMA defines "commercial electronic text message" as a message "sent to promote real property,

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS- 10

goods, or services for sale or lease." RCW 19.190.010(3). Washington state courts have not yet interpreted this provision. Because the TCPA's prohibition against unsolicited communications advertising property, goods, or services is substantially similar to the CEMA prohibition, the Court applies the federal interpretations of the TCPA when considering this claim. Chesbro, 705 F.3d at 919 (turning to federal case law regarding the TCPA when interpreting the Washington Automatic Dialing and Announcing Device Act ("WADAD")); Gragg v. Orange Cab Co., Inc., 2013 WL 195466, at *4 (W.D. Wash. Jan. 17, 2013) (finding that despite differences in word choice, both CEMA and WADAD regulate communications that promote or encourage commercial transactions and that their interpretation should, absent controlling state decisions, be guided by the administrative and judicial interpretations of the TCPA). For all of the reasons set forth above, the Court finds that the text message plaintiff received was not sent to promote the purchase of goods outside the negotiation plaintiff had already initiated. Plaintiff has therefore failed to plead a CEMA claim.

**D. Consumer Protection Act ("CPA"), RCW 19.190.060**

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. To the extent plaintiff has alleged that the transmission of an electronic commercial text message in violation of CEMA is a per se violation of the CPA (Dkt. # 35 at ¶ 101), plaintiff has failed to adequately allege a CEMA violation and may not, therefore, pursue a derivative CPA claim. To the extent plaintiff has alleged that transmitting a solicitation to a cell phone without consent is an unfair or deceptive act (Dkt. # 35 at ¶ 102), it offers no legal or factual basis for such an assertion. Where, as here, the cell phone solicitation is not barred by CEMA, plaintiff must raise a plausible inference that the message was somehow unfair or deceptive. He has not done so. Therefore, plaintiff has failed to plead a CPA claim.

**E. Secondary Liability**

Plaintiff's claims for secondary liability under the TCPA, CEMA and CPA based on Crevalor's violations of those statutes fail as a matter of law. Plaintiff has not alleged that

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS- 11

Crevalor is liable under those statutes, either in a conclusory fashion or through factual allegations. He has not, for example, alleged that Crevalor initiated the offending call and cannot overcome the finding that he consented to the offending communications when he provided his phone number. To the extent plaintiff may have alleged violations of the CPA related to Crevalor's "bait and switch" scheme, plaintiff alleges no facts from which one could infer that Twilio could be held liable for those wrongs.

**F. Attorney's Fees**

In denying defendant's motion for sanctions under Rule 11, the Court held in abeyance plaintiff's request for fees as the prevailing party. Dkt. # 45 at 5. The Court reiterates that plaintiff properly availed himself of the opportunity to amend his complaint, asserting additional allegations that were relevant to the issue of consent and raising challenging issues of law. Defendant has nevertheless prevailed on the second motion to dismiss, and the Court declines to award fees for what turned out to be a Pyrrhic victory.

For all of the foregoing reasons, defendant's motion to dismiss (Dkt. # 51) is GRANTED.

Dated this 12th day of July, 2017.

*[signature]*

Robert S. Lasnik
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS- 12